Michael J. DiMattia (MJD-0473)
Philip A. Goldstein (PAG-0908)
McGuireWoods LLP
1345 Avenue of the Americas, 7th Floor
New York, NY 10105
(212) 548-2100
(212) 548-2150 (fax)
mdimattia@mcguirewoods.com
pagoldstein@mcguirewoods.com

Dana L. Rust (Virginia State Bar No. 28408) (*pro hac vice* motion to be filed)
Edward M. Eakin, III (Virginia State Bar No. 70964) (*pro hac vice* motion to be filed)
McGuireWoods LLP
901 East Cary Street
Richmond, Virginia  23219
(804) 775-1000
(804) 775-1061(fax)
drust@mcguirewoods.com
jeakin@mcguirewoods.com

*Counsel for Defendants Advanced Armament Corporation, LLC &*
*Remington Arms Company, LLC*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RANDOM VENTURES, INC., | ) | **ECF Case** |
| KEVIN BRITTINGHAM, and | ) | |
| LYNSEY THOMPSON, | ) | Case No. 12 CV 6792 (KBF)(GWG) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ANSWER & COUNTERCLAIM** |
| | ) | |
| ADVANCED ARMAMENT CORP., LLC, and | ) | |
| REMINGTON ARMS COMPANY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

Advanced Armament Corp., LLC ("AAC") and Remington Arms Company, LLC

("Remington," and collectively with AAC, "Defendants"), by counsel, hereby answer Plaintiffs

Random Ventures, Inc.'s ("Random Ventures"),[1] Kevin Brittingham's ("Brittingham"), and

---

[1] Random Ventures was formerly known as Advanced Armament Corp., Inc.  For ease of
reference, Defendants also refer to Advanced Armament Corp., Inc. throughout this Answer and
Counterclaim as Random Ventures.

Lynsey Thompson's ("Thompson," and collectively with Random Ventures and Brittingham, "Plaintiffs"), Complaint as follows:

<u>**NATURE OF CLAIMS**</u>

1.     Defendants deny the allegations in Paragraph 1 of the Complaint and state that AAC lawfully terminated the employment of Brittingham and Thompson.

2.     Defendants admit the allegations in the first two sentences of Paragraph 2 of the Complaint and state that the purchase was governed by, among other things, the terms of the written Asset Purchase Agreement ("APA"), which speak for themselves. To the extent any allegation in Paragraph 2 is inconsistent with the APA, such allegation is denied. Defendants also admit that AAC entered into various agreements with Brittingham, Random Ventures, and Thompson in connection with the acquisition referenced in Paragraph 2 and that the payments referenced therein were conditional. Defendants deny that Random Ventures is "Brittingham's company." Defendants deny the remaining allegations in Paragraph 2.

3.     Defendants admit that in connection with the acquisition of Random Ventures, AAC entered into separate employment agreements with Brittingham and Thompson governing their employment post closing and that these agreements speak for themselves. To the extent any allegation in Paragraph 3 of the Complaint is inconsistent with these agreements, Defendants deny such allegation.

4.     Defendants deny the allegations in Paragraph 4 and aver that they gave Brittingham and Thompson multiple opportunities to save their jobs after it discovered that they had repeatedly violated the terms of their employment agreements.

5.     Defendants deny the allegations in Paragraph 5 of the Complaint and deny the relevance of the cited cases.

6. Defendants deny the allegations in Paragraph 6 of Complaint. Defendants further state that AAC lawfully terminated Brittingham's employment after his serious and repeated failure to comply with federal firearms laws, AAC's compliance policies, his employment contract and the terms of his written probation and other written employment-related documents. Additionally, on or about January 24, 2012, AAC lawfully terminated Thompson's employment after she had failed to cooperate in the course of an internal investigation related to Brittingham's repeated violations of laws and regulations and AAC policies pertaining to the possession, receipt, transfer, handling and storage of firearms at AAC's facility.

7. To the extent Paragraph 7 of the Complaint sets forth factual allegations against any of the Defendants, such allegations are denied.

## PARTIES

8. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 8 of the Complaint.

9. Defendants admit the allegations in Paragraph 9 of the Complaint

10. Defendants admit the allegations in Paragraph 10 of the Complaint.

11. Defendants admit the allegations in Paragraph 11 of the Complaint.

12. Defendants admit the allegations in Paragraph 12 of the Complaint.

## JURISIDICTION AND VENUE

13. Defendants admit the allegations in Paragraph 13 of the Complaint.

14. Defendants admit the allegations in Paragraph 14 of the Complaint.

## STATEMENT OF FACTS

### Purchase Agreement and Goodwill Agreement

15.     In response to Paragraph 15 of the Complaint, Defendants admit that Brittingham founded Advanced Armament Corp., Inc. (now known as Random Ventures) and at the time AAC acquired Random Ventures, Brittingham was the sole shareholder of that entity. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 15 of the Complaint.

16.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the first two sentences of Paragraph 16 of the Complaint, except that at that the time AAC acquired Random Ventures, AAC had knowledge that Random Ventures manufactured silencers.  The third sentence of Paragraph 16 is vague and ambiguous, and therefore, must be denied.

17.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 17 of the Complaint.

18.     Defendants admit only that the Remington representatives had discussions with Brittingham regarding the potential sale of Random Ventures and that neither Remington nor Freedom Group manufactured Random Ventures silencers prior to the acquisition.  Defendants deny the remaining allegations in Paragraph 18 of the Complaint.

19.     Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 19 of the Complaint.

20.     Defendants admit the allegations in Paragraph 20 of the Complaint, except for the allegation that "the Parent Companies formed AAC" which is denied on the grounds that such terms are vague and ambiguous.

21.     Defendants admit the allegations in Paragraph 21 of the Complaint and aver that the APA speaks for itself.

22.     In response to the allegations in Paragraph 22 of the Complaint, Defendants state that the APA speaks for itself. To the extent any allegation in Paragraph 22 of the Complaint is inconsistent with the APA or any related agreement, such allegation is denied.

23.     In response to the allegations in Paragraph 23 of the Complaint, Defendants state that the APA speaks for itself. To the extent any allegation in Paragraph 23 of the Complaint is inconsistent with the APA or any related agreement, such allegation is denied.

24.     In response to the allegations in Paragraph 24 of the Complaint, Defendants state that the APA speaks for itself. To the extent any allegation in Paragraph 24 of the Complaint is inconsistent with the APA or any related agreement, such allegation is denied.

25.     In response to the allegations in Paragraph 25 of the Complaint, Defendants state that the APA speaks for itself. To the extent any allegation in Paragraph 25 of the Complaint is inconsistent with the APA or any related agreement, such allegation is denied.

26.     In response to the allegations in Paragraph 26 of the Complaint, Defendants state that the APA speaks for itself. To the extent any allegation in Paragraph 26 of the Complaint is inconsistent with the APA or any related agreement, such allegation is denied.

27.     Defendants admit the allegations in Paragraph 27 of the Complaint.

28.     In response to the allegations in Paragraph 28 of the Complaint, Defendants admit that AAC and Brittingham executed a Personal Goodwill Acquisition Agreement (the "Goodwill Agreement"), the terms of which speak for themselves. To the extent any allegation in Paragraph 28 of the Complaint is inconsistent with the Goodwill Agreement or any related agreement, such allegation is denied.

29.     In response to the allegations in Paragraph 29 of the Complaint, Defendants state that the Goodwill Agreement speaks for itself.  To the extent any allegation in Paragraph 29 of the Complaint is inconsistent with the Goodwill Agreement or any related agreement, such allegation is denied.

30.     In response to the allegations in Paragraph 30 of the Complaint, Defendants state that the Goodwill Agreement speaks for itself.  To the extent any allegation in Paragraph 30 of the Complaint is inconsistent with the Goodwill Agreement or any related agreement, such allegation is denied.

31.     In response to the allegations in Paragraph 31 of the Complaint, Defendants state that the Goodwill Agreement speaks for itself.  To the extent any allegation in Paragraph 31 of the Complaint is inconsistent with the Goodwill Agreement or any related agreement, such allegation is denied.

32.     In response to the allegations in Paragraph 32 of the Complaint, Defendants state that the APA and Goodwill Agreement speak for themselves.  To the extent any allegation in Paragraph 32 of the Complaint is inconsistent with the APA, the Goodwill Agreement, or any related agreement, such allegation is denied.

33.     Defendants admit the allegations in Paragraph 33 of the Complaint.

34.     In response to the allegations in Paragraph 34 of the Complaint, Defendants state that the APA and Goodwill Agreement speak for themselves.  To the extent any allegation in Paragraph 34 of the Complaint is inconsistent with the APA, the Goodwill Agreement, or any related agreement, such allegation is denied.  Defendants lack knowledge or information sufficient to form a belief truth of the remaining allegations in Paragraph 34 of the Complaint.

**Brittingham Employment Agreement**

35.     Defendants admit that Brittingham had certain knowledge and relationships which made him an appropriate person to serve as President of AAC following the acquisition. Defendants deny the remaining allegations in Paragraph 35 of the Complaint.

36.     In response to the allegations in Paragraph 36 of the Complaint, Defendants admit that Brittingham and AAC entered into an employment agreement (the "Brittingham Employment Agreement") and that the APA and the Brittingham Employment Agreement speak for themselves.  To the extent any allegation in Paragraph 36 of the Complaint is inconsistent with the APA, the Brittingham Employment Agreement, or any related agreement or other documents, such allegation is denied.  Further answering, Defendants state that in January 2011, Brittingham was stripped of his title as President of AAC, demoted, had his pay reduced and was placed on probation after it was determined that he had violated AAC's compliance policies and federal firearms laws, such violations constituting a basis to terminate him for cause at that time.

37.     In response to the allegations in Paragraph 37 of the Complaint, Defendants state that the Brittingham Employment Agreement speaks for itself.  To the extent any allegation in Paragraph 37 of the Complaint is inconsistent with the Brittingham Employment Agreement or any related agreement, such allegation is denied.  Defendants admit that Brittingham reported to Schauble.

38.     In response to the allegations in Paragraph 38 of the Complaint, Defendants state that the Brittingham Employment Agreement speaks for itself.  To the extent any allegation in Paragraph 38 of the Complaint is inconsistent with the Brittingham Employment Agreement or any related agreement, such allegation is denied.

39.     In response to the allegations in Paragraph 39 of the Complaint, Defendants state that the Brittingham Employment Agreement speaks for itself.  To the extent any allegation in Paragraph 39 of the Complaint is inconsistent with the Brittingham Employment Agreement or any related agreement, such allegation is denied.

40.     In response to the allegations in Paragraph 40 of the Complaint, Defendants state that the Brittingham Employment Agreement speaks for itself.  To the extent any allegation in Paragraph 40 of the Complaint is inconsistent with the Brittingham Employment Agreement or any related agreement, such allegation is denied.

41.     In response to the allegations in Paragraph 41 of the Complaint, Defendants state that the Brittingham Employment Agreement speaks for itself.  To the extent any allegation in Paragraph 41 of the Complaint is inconsistent with the Brittingham Employment Agreement or any related agreement, such allegation is denied.

42.     Defendants admit the allegations in Paragraph 42 of the Complaint.

## AAC's Business

43.     In response to Paragraph 43 of the Complaint, Defendants admit that following the Purchase, as that term is defined in the Complaint, Brittingham became President of AAC and he assumed the duties of this position as set forth in the Brittingham Employment Agreement.  Defendants admit that AAC conducted research and development.  The third sentence of Paragraph 43 of the Complaint is vague and ambiguous and, therefore, must be denied.  Defendants aver that all AAC employees, including Brittingham, were subject to and expected to comply with federal firearms laws, regulations and AAC policies pertaining to the possession, receipt, transfer, handling and storage of firearms at AAC's facility.  Defendants deny the remaining allegations in Paragraph 43.

44.     The first two sentences of Paragraph 44 of the Complaint are vague and ambiguous and, therefore, they must be denied.  In response to the final sentence of Paragraph 44, Defendants admit that after the Purchase, as that term is defined in the Complaint, Brittingham reported to Jason Schauble.  To the extent any further response is required to Paragraph 44, Defendants deny any such allegations.

45.     Defendants admit only that Brittingham was suspended without pay for approximately one month, and could have been fired for cause, after he procured and possessed an antique silencer in violation of federal firearms statutes, regulations and AAC policy, and because of other violations of AAC rules, including keeping a loaded gun in his office near a refrigerator where he kept tequila and bringing his personal firearms to AAC and not maintaining control over them while they were on AAC's premises.  Defendants deny the remaining allegations and further aver that as the senior compliance officer at AAC, Brittingham understood the governing statutes, regulations and policies but willfully chose to ignore them. Defendants further aver Brittingham issued a written apology for his misconduct, acknowledged that future conduct of a similar nature would not be tolerated, executed a term sheet in connection with his reinstatement at AAC, accepted a demotion in pay, responsibilities and job title, agreed to be placed on probation for a period of 12 months, and agreed to the terms of an amended employment agreement.  In his apology, Brittingham wrote "There are many policies, practices, information requirements, and expectations that I have not paid enough attention to and for that I apologize."

46.     Defendants deny the allegations in Paragraph 46 of the Complaint and aver that Brittingham's employment was not terminated so that he would have a second chance to

demonstrate he had the ability to comply with the law and AAC policies and earn the payouts referenced in paragraphs 23 and 29 of the Complaint, an opportunity which he squandered.

47.     Defendants admit that on January 9, 2011, Brittingham's suspension ended, but aver he was reinstated with a one year probation and he was stripped of his responsibility for managing AAC's compliance program because of his acknowledged deficiencies.  Brittingham's probation contained several terms including a requirement that he undergo compliance training that he not bring his personal firearms to AAC without the written permission of the Chief Human Resources Officer and not commit additional compliance violations.   Brittingham subsequently violated these and other probation terms, leading to his termination for cause.

48.     Defendants deny the allegations in Paragraph 48 of the Complaint.

**The Purported Amended Brittingham Agreement**

49.     In response to the allegations in Paragraph 49 of the Complaint, Defendants admit that on or about January 9, 2011, AAC presented Brittingham with various documents including an amended employment agreement that would govern his post-suspension employment at AAC. Brittingham was required to execute this amended employment agreement as a condition of returning to work following his suspension.   Additionally, Brittingham signed an "Acknowledgement" and a "Term Sheet" which included terms surrounding his probation and reinstatement.  To the extent any further response is required to Paragraph 49, Defendants deny the allegations therein.

50.     In response to the allegations in Paragraph 50 of the Complaint, Defendants admit that Brittingham was stripped of his title President of AAC and demoted from President to Founder as a result of his compliance violations and related misconduct.  Defendants further admit the existence of a valid and binding amendment to the Brittingham Employment

Agreement (the "Amended Brittingham Employment Agreement") and that the terms of that agreement speak for themselves. To the extent any allegation in Paragraph 50 of the Complaint is inconsistent with the Amended Brittingham Employment Agreement or any related agreement, such allegation is denied.

51. In response to the allegations in Paragraph 51 of the Complaint, Defendants admit Brittingham's pay and bonus potential were reduced because of his compliance violations and related misconduct and state that the Amended Brittingham Employment Agreement speaks for itself. To the extent any allegation in Paragraph 51 of the Complaint is inconsistent with the Amended Brittingham Employment Agreement or any related agreement, such allegation is denied.

52. In response to the allegations in Paragraph 52 of the Complaint, Defendants state that the Amended Brittingham Employment Agreement speaks for itself. To the extent any allegation in Paragraph 52 of the Complaint is inconsistent with the Amended Brittingham Employment Agreement or any related agreement, such allegation is denied.

53. In response to the allegations in Paragraph 53 of the Complaint, Defendants state that the Amended Brittingham Employment Agreement speaks for itself. To the extent any allegation in Paragraph 53 of the Complaint is inconsistent with the Amended Brittingham Employment Agreement or any related agreement, such allegation is denied.

54. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 54 of the Complaint as they apply to Brittingham. Defendants deny the remaining allegations in Paragraph 54.

55. Defendants deny that Brittingham rejected the terms of the Amended Brittingham Employment Agreement. Further answering, Defendants state that Brittingham assented to and

ratified the terms of the Amended Brittingham Employment Agreement through his actions and conduct.

**Brittingham's Termination**

56.    Defendants deny the allegations in Paragraph 56 of the Complaint.

57.    In response to Paragraph 57 of the Complaint, Defendants admit that a compliance audit was conducted at AAC in September 2011. Defendants deny all remaining allegations in Paragraph 57 of the Complaint and aver that the audit revealed that Brittingham had committed additional violations of federal firearms laws, compliance violations and violations of the terms of his probation, and was counseled once again regarding these deficiencies.

58.    In response to Paragraph 58 of the Complaint, Defendants admit that AAC entered into a contract with the U.S. Naval Surface Warfare Center and the terms of that agreement speak for itself. To the extent any allegation in Paragraph 58 of the Complaint is inconsistent with that agreement or any related agreement, such allegation is denied. Defendants deny all remaining allegations in Paragraph 58 and aver that at the same time, because of Brittingham's mistakes, an additional, related contract with the U.S. Naval Surface Warfare Center worth approximately $24 million was lost.

59.    In response to Paragraph 59 of the Complaint, Defendants state that any income earned by AAC would presumably impact the "Cumulative Adjusted EBITDA" target, as that term is defined in the APA. Answering further, Defendants state that Brittingham's mistakes on the bid referenced in Paragraph 58 of the Complaint, resulted in a AAC losing approximately $24 million in additional revenue. To the extent any further response is required to Paragraph 59 of the Complaint, Defendants deny all remaining allegations contained therein.

60.     In response to Paragraph 60 of the Complaint, Defendants admit that on or about October 21, 2011, a follow-up compliance audit was conducted at AAC.  Defendants deny the remaining allegations in Paragraph 60 of the Complaint and aver Brittingham committed additional violations of federal firearms laws, compliance violations and violations of the terms of his probation, and was counseled again regarding these deficiencies.

61.     Defendants deny the allegations in Paragraph 61 of the Complaint.

62.     Defendants deny the allegations in Paragraph 62 of the Complaint.

63.     Defendants deny the allegations in Paragraph 63 of the Complaint.

64.     In response to the allegations in Paragraph 64 of the Complaint, Defendants admit that AAC terminated Brittingham's employment on or about December 21, 2011, via letter to Brittingham from Scott Blackwell (the "Brittingham Termination Letter"), and Defendants admit the existence of the Brittingham Termination Letter.  Defendants deny all remaining allegations in Paragraph 64.

65.     With respect to Paragraph 65 of the Complaint, Defendants admit that there were armed security guards present for Mr. Brittingham's termination, in part because Mr. Brittingham had previously violated AAC rules by keeping loaded weapons in his office near his tequila.

66.     In response to the allegations in Paragraph 66 of the Complaint, Defendants state that the Brittingham Termination Letter speaks for itself.  To the extent any allegation in Paragraph 66 of the Complaint is inconsistent with the Brittingham Termination Letter, such allegation is denied.

67.     Defendants deny the allegations in Paragraph 67 and aver that the grounds for terminating Brittingham for cause were true and correct.

68.     Defendants deny the allegations in Paragraph 68.

69.     Defendants deny the allegations in Paragraph 69 and aver they gave Brittingham multiple opportunities to save his job and earn the referenced payouts, but he squandered these opportunities through his reckless behavior and flagrant disregard of federal firearms laws, company policies, the terms of his employment agreements and the terms of other employment-related documents.

70.     In response to the allegations in Paragraph 70 of the Complaint, Defendants admit that counsel for Brittingham communicated with defense counsel concerning the reasons as to why AAC terminated Brittingham's employment and that defense counsel responded to these inquiries and that the contents of these communications speak for themselves. Defendants deny the remaining allegations in Paragraph 70 of the Complaint.

71.     Defendants deny the allegations in Paragraph 71 of the Complaint.

72.     The first sentence of Paragraph 72 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny. Defendants deny the remaining allegations in Paragraph 72 of the Complaint.

73.     Defendants deny the allegations in Paragraph 73 of the Complaint.

**Thompson Employment Agreement**

74.     Defendants admit the allegations in Paragraph 74 of the Complaint that Thompson worked for Random Ventures and remained employed by AAC following the purchase but lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 74 of the Complaint.

75. In response to the allegations in Paragraph 75 of the Complaint, Defendants admit that following the Purchase, AAC employed Thompson. The remaining allegations in Paragraph 75 are vague and ambiguous, and therefore, must be denied.

76. In response to the allegations in Paragraph 76 of the Complaint, Defendants admit that Thompson and AAC entered into an employment agreement (the "Thompson Employment Agreement") and that the Thompson Agreements speaks for itself. To the extent any allegation in Paragraph 76 of the Complaint is inconsistent with the Thompson Employment Agreement, the APA, or any related agreement, such allegation is denied.

77. In response to the allegations in Paragraph 77 of the Complaint, Defendants state that the Thompson Employment Agreement speaks for itself. To the extent any allegation in Paragraph 77 of the Complaint is inconsistent with the Thompson Employment Agreement or any related agreement, such allegation is denied.

78. In response to the allegations in Paragraph 78 of the Complaint, Defendants state that the Thompson Employment Agreement speaks for itself. To the extent any allegation in Paragraph 78 of the Complaint is inconsistent with the Thompson Employment Agreement or any related agreement, such allegation is denied.

79. In response to the allegations in Paragraph 79 of the Complaint, Defendants state that the Thompson Employment Agreement speaks for itself. To the extent any allegation in Paragraph 79 of the Complaint is inconsistent with the Thompson Employment Agreement or any related agreement, such allegation is denied.

80. Defendants admit the allegations in Paragraph 80 of the Complaint.

## The Purported Amended Thompson Agreement

81.     In response to the allegations in Paragraph 81 of the Complaint, Defendants admit that in December 2010, AAC suspended Thompson for her failure to ensure that compliance policies at AAC were adhered to by Brittingham, failure to cooperate in a company investigation and other related violations.  Defendants deny the remaining allegations in Paragraph 81.

82.     Defendants deny the allegations in Paragraph 82 of the Complaint.  Further answering, Defendants state that after the conclusion of Thompson's suspension, AAC continued to employ her to give her a second chance to save her job.  Defendants deny the remaining allegations in Paragraph 82 of the Complaint.

83.     Defendants admit the allegations in Paragraph 83 of the Complaint and also admit the existence of an amendment to Thompson's Employment Agreement (the "Amended Thompson Employment Agreement").  Further answering, Defendants state that AAC conditioned Thompson's return to work on her execution of the Amended Thompson Employment Agreement, a written "Acknowledgement" that future conduct of a similar nature would not be tolerated, a "Term Sheet" in connection with her reinstatement at AAC, as well as a reduction in pay and duties and twelve months probation.

84.     In response to the allegations in Paragraph 84 of the Complaint, Defendants state that the Amended Thompson Employment Agreement speaks for itself.  To the extent any allegation in Paragraph 84 of the Complaint is inconsistent with the Amended Thompson Employment Agreement or any related agreement, such allegation is denied.

85.     In response to the allegations in Paragraph 85 of the Complaint, Defendants state that the Amended Thompson Employment Agreement speaks for itself.  To the extent any

allegation in Paragraph 85 of the Complaint is inconsistent with the Amended Thompson Employment Agreement or any related agreement, such allegation is denied.

86. In response to the allegations in Paragraph 86 of the Complaint, Defendants state that the Amended Thompson Employment Agreement speaks for itself. To the extent any allegation in Paragraph 86 of the Complaint is inconsistent with the Amended Thompson Employment Agreement or any related agreement, such allegation is denied.

87. In response to the allegations in Paragraph 87 of the Complaint, Defendants state that the Amended Thompson Employment Agreement speaks for itself. To the extent any allegation in Paragraph 87 of the Complaint is inconsistent with the Amended Thompson Employment Agreement or any related agreement, such allegation is denied.

88. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the first sentence of Paragraph 88 of the Complaint as they apply to Thompson. Defendants deny the remaining allegations in Paragraph 88.

89. Paragraph 89 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

### Thompson's Termination

90. Defendants deny the allegations in Paragraph 90 of the Complaint.

91. In response to the allegations in Paragraph 91 of the Complaint, Defendants admit that AAC continued to gather facts related to Brittingham's employment at AAC and, as part of this fact gathering and in anticipation of litigation from Brittingham, Mr. Rust interviewed Thompson. Defendants state that Thompson, who was the most senior on-site employee at AAC was advised in advance that Company counsel wanted to interview her, and she voluntarily agreed to the interview. The purpose of the interview was to gather facts in anticipation of

litigation by Brittingham and provide legal advice to Defendants, not to discipline Thompson. As the interview began, Thompson asked if she could record the interview. Mr. Rust agreed. As the interview progressed, Mr. Rust, who did not bring recording equipment with him, asked if he could have the recording and prepare a transcript of it. Thompson agreed. The contents of the interview were privileged and confidential and Mr. Rust so advised Thompson during and after the interview. To the extent any further response is required from Defendants to Paragraph 91, Defendants deny the remaining allegations contained in same.

92.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 92 of the Complaint.

93.     Defendants admit that Mr. Rust asked Thompson that she provide him a copy of the recording so that he could have it transcribed and aver that she agreed to do so. Defendants further aver that Thompson later changed her mind and refused to provide a copy of the recording. Thereafter, Mr. Rust suggested that Thompson give the recording to a forensic computer expert retained by the Defendants to safeguard while Thompson reconsidered her decision. Thompson refused and suggested that she give the recording to her attorney. Mr. Rust declined this option because it would not safeguard the privileged and confidential communication. Mr. Rust subsequently learned that Ms. Thompson's attorney is Jason D'Cruz, who is also representing Mr. Brittingham. Defendants obviously did not want the privileged and confidential communication, made in anticipation of litigation by Brittingham, to be given to Brittingham's counsel. Defendants deny the remaining allegations in Paragraph 93.

94.     In response to the allegations in Paragraph 94 of the Complaint, Defendants state that on or about January 24, 2012, via letter, Thompson's employment with AAC was terminated (the "Thompson Termination Letter"). Answering further, Defendants state that the Thompson

Termination Letter speaks for itself and Defendants admit that it exists. To the extent any allegation in Paragraph 94 of the Complaint is inconsistent with the Thompson Termination Letter, such allegation is denied. Defendants also aver that before Thompson's termination, AAC received an anonymous hotline complaint that Thompson, a coworker and Brittingham were conspiring against the Company to start another company using AAC's intellectual property. Pursuant to its normal protocols, Thompson was interviewed about the allegations by her supervisor and a human resources representative. She denied involvement in the alleged conspiracy, but admitted sending Brittingham frequent text messages after his termination. AAC requested to review the text messages to confirm that Thompson was not complicit in the alleged conspiracy, but she refused to provide them. Thompson also refused once again to provide the recording of her meeting with Mr. Rust. She was warned a refusal to produce the recording would constitute a failure to cooperate in a company investigation and this was grounds for terminating her employment for cause. Notwithstanding the warning, she refused to produce the recording and was terminated at that time. The different ways in which she failed to cooperate in company investigations included her refusal to produce the recording of her meeting with Mr. Rust and her refusal to provide the text messages she exchanged with Mr. Brittingham after his termination.

95. In response to the allegations in Paragraph 95 of the Complaint, Defendants state that the Thompson Termination Letter speaks for itself. To the extent any allegation in Paragraph 95 of the Complaint is inconsistent with the Thompson Termination Letter, such allegation is denied. Defendants also deny the allegations contained in the second sentence of Paragraph 95.

96. Defendants deny the allegations in Paragraph 96 of the Complaint.

97. Defendants deny the allegations in Paragraph 97 of the Complaint.

98. Defendants deny the allegations in Paragraph 98 of the Complaint and aver they gave Thompson multiple opportunities to save her job.

99. In response to the allegations in Paragraph 99 of the Complaint, Defendants admit that counsel for Thompson communicated with defense counsel concerning the reasons as to why AAC terminated Thompson's employment and that defense counsel responded to these inquiries and that the contents of these communications speak for themselves. Defendants deny the remaining allegations in Paragraph 99 of the Complaint.

100. In response to the allegations in Paragraph 100 of the Complaint, Defendants deny that Thompson is entitled to receive reimbursement of business expenses as alleged therein or unpaid vacation.

101. The first sentence of Paragraph 101 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny. Defendants deny the allegations contained in the second sentence of Paragraph 101 of the Complaint.

## COUNT I
### (Breach of Brittingham Employment Agreement – against AAC)

102. In response to Paragraph 102 of the Complaint, Defendants incorporate by reference and restate their responses to Paragraphs 1 through 101.

103. Paragraph 103 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

104. Defendants deny the allegations in Paragraph 104 of the Complaint.

105. Defendants deny the allegations in Paragraph 105 of the Complaint.

106. Defendants deny the allegations in Paragraph 106 of the Complaint.

107. Defendants deny the allegations in Paragraph 107 of the Complaint.

108.     Defendants deny the allegations in Paragraph 108 of the Complaint.

109.     Defendants deny the allegations in Paragraph 109 of the Complaint.

110.     Defendants deny the allegations in Paragraph 110 of the Complaint.

## COUNT II
**(Breach of Asset Purchase Agreement – Anticipatory Repudiation – against AAC)**

111.     In response to Paragraph 111 of the Complaint, Defendants incorporate by reference and restate their responses to Paragraphs 1 through 110.

112.     Paragraph 112 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

113.     Defendants deny the allegations in Paragraph 113 of the Complaint.

114.     Defendants deny the allegations in Paragraph 114 of the Complaint.

115.     Paragraph 115 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

116.     Defendants deny the allegations in Paragraph 116 of the Complaint.

117.     Defendants deny the allegations in Paragraph 117 of the Complaint.

## COUNT III
**(Breach of Asset Purchase Agreement – against AAC)**

118.     In response to Paragraph 118 of the Complaint, Defendants incorporate by reference and restate their responses to Paragraphs 1 through 117.

119.     Paragraph 119 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

120.     Defendants deny the allegations in Paragraph 120 of the Complaint.

121.     Defendants deny the allegations in Paragraph 121 of the Complaint.

122.     In response to the allegations in Paragraph 122 of the Complaint, AAC states that the APA speaks for itself.  To the extent any allegation in Paragraph 122 of the Complaint is inconsistent with the APA, such allegation is denied.

123.     Defendants deny the allegations in Paragraph 123 of the Complaint.

124.     Defendants deny the allegations in Paragraph 124 of the Complaint.

**COUNT IV**
**(Breach of Asset Purchase Agreement – Covenant of Good Faith and Fair Dealing – against AAC)**

125.     In response to Paragraph 125 of the Complaint, Defendants incorporate by reference and restate their responses to Paragraphs 1 through 124.

126.     Paragraph 126 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

127.     Defendants deny the allegations in Paragraph 127 of the Complaint.

128.     In response to the allegations in Paragraph 128 of the Complaint, Defendants state that the APA speaks for itself.  To the extent any allegation in Paragraph 128 of the Complaint is inconsistent with the APA, such allegation is denied.  Defendants also deny that they have breached the APA with respect to any Plaintiff to this action and further deny the existence of an implied covenant of good faith and fair dealing.

129.     Defendants deny the allegations in Paragraph 129 of the Complaint.

130.     In response to the allegations in Paragraph 130 of the Complaint, Defendants state that the APA speaks for itself.  To the extent any allegation in Paragraph 130 of the Complaint is inconsistent with the APA, such allegation is denied.  Defendants also deny that they have breached that APA with respect to any Plaintiff to this action and deny an indemnification obligation.

131.    Defendants deny the allegations in Paragraph 131 of the Complaint.

132.    Defendants deny the allegations in Paragraph 132 of the Complaint.

## COUNT V
**(Breach of Goodwill Agreement – Anticipatory Repudiation – against AAC)**

133.    In response to Paragraph 133 of the Complaint, Defendants incorporate by reference and restate their responses to Paragraphs 1 through 132.

134.    Paragraph 134 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

135.    Defendants deny the allegations in Paragraph 135 of the Complaint.

136.    Defendants deny the allegations in Paragraph 136 of the Complaint.

137.    Paragraph 137 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

138.    Defendants deny the allegations in Paragraph 138 of the Complaint.

139.    Defendants deny the allegations in Paragraph 139 of the Complaint.

## COUNT VI
**(Breach of Goodwill Agreement – against AAC)**

140.    In response to Paragraph 140 of the Complaint, Defendants incorporate by reference and restate their responses to Paragraphs 1 through 139.

141.    Paragraph 141 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

142.    Defendants deny the allegations in Paragraph 142 of the Complaint.

143.    Defendants deny the allegations in Paragraph 143 of the Complaint.

144.    Defendants deny the allegations in Paragraph 144 of the Complaint.

145.    Defendants deny the allegations in Paragraph 145 of the Complaint.

## COUNT VII
**(Breach of Goodwill Agreement - Covenant of Fair Dealing – against AAC)**

146.     In response to Paragraph 146 of the Complaint, Defendants incorporate by reference and restate their responses to Paragraphs 1 through 145.

147.     Paragraph 147 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

148.     Defendants deny the allegations in Paragraph 148 of the Complaint.

149.     In response to the allegations in Paragraph 149 of the Complaint, Defendants state that the Goodwill Agreement speaks for itself.  To the extent any allegation in Paragraph 149 of the Complaint is inconsistent with the Goodwill Agreement, such allegation is denied.

150.     Defendants deny the allegations in Paragraph 150 of the Complaint.

151.     Defendants deny the allegations in Paragraph 151 of the Complaint.

152.     Defendants deny the allegations in Paragraph 152 of the Complaint.

## COUNT VIII
**(Suit on Guaranty – Obligations under Asset Purchase Agreement – against Remington)**

153.     In response to Paragraph 153 of the Complaint, Defendants incorporate by reference and restate their responses to Paragraphs 1 through 152.

154.     Paragraph 154 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

155.     In response to the allegations in Paragraph 155 of the Complaint, Defendants state that the APA speaks for itself.  To the extent any allegation in Paragraph 155 of the Complaint is inconsistent with the APA, such allegation is denied.

156.     In response to the allegations in Paragraph 156 of the Complaint, Defendants state that the APA speaks for itself.  To the extent any allegation in Paragraph 156 of the Complaint is inconsistent with the APA, such allegation is denied.

157.     Defendants deny the allegations in Paragraph 157 of the Complaint.

158.     Defendants deny the allegations in Paragraph 158 of the Complaint.

159.     Paragraph 159 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.  To the extent a response is required, Defendants deny the allegations in Paragraph 159.

160.     Paragraph 160 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.  To the extent a response is required, Defendants deny the allegations in Paragraph 160.

## COUNT IX
**(Suit on Guaranty – Obligations under Goodwill Agreement - against Remington)**

161.     In response to Paragraph 161 of the Complaint, Defendants incorporate by reference and restate their responses to Paragraphs 1 through 160.

162.     Paragraph 162 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

163.     In response to the allegations in Paragraph 163 of the Complaint, Defendants state that the APA and the Goodwill Agreement speak for themselves.  To the extent any allegation in Paragraph 163 of the Complaint is inconsistent with the Goodwill Agreement and/or the APA, such allegation is denied.

164.     In response to the allegations in Paragraph 164 of the Complaint, Defendants state that the Goodwill Agreement speaks for itself.  To the extent any allegation in Paragraph 164 of the Complaint is inconsistent with the Goodwill Agreement, such allegation is denied.

165. Defendants deny the allegations in Paragraph 165 of the Complaint.

166. Defendants deny the allegations in Paragraph 166 of the Complaint.

167. Paragraph 167 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny. To the extent a response is required, Defendants deny the allegations in Paragraph 167.

168. Paragraph 168 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny. To the extent a response is required, Defendants deny the allegations in Paragraph 168.

### COUNT X
**(Declaratory Judgment – Dissolution of Restrictive Covenants
Burdening Brittingham – against AAC)**

169. In response to Paragraph 169 of the Complaint, Defendants incorporate by reference and restate their responses to Paragraphs 1 through 168.

170. Defendants deny the allegations in Paragraph 170 of the Complaint.

171. In response to Paragraph 171 of the Complaint, Defendants state that the Brittingham Termination Letter speaks for itself and confirm that the restrictive covenants are enforceable.

172. In response to Paragraph 172 of the Complaint, Defendants deny any unlawful or wrongful conduct with respect to Brittingham and/or Random Ventures. To the extent Paragraph 172 of the Complaint sets forth factual additional allegations against any of the Defendants, such allegations are denied.

173. Paragraph 173 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

174. Paragraph 174 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny. To the extent a response is required, Defendants deny the allegations in Paragraph 174.

175. Paragraph 175 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny. To the extent a response is required, Defendants deny the allegations in Paragraph 175.

176. In response to Paragraph 176 of the Complaint, Defendants deny any unlawful or wrongful conduct with respect to Brittingham and/or Random Ventures. Further answering, Defendants state that the restrictive covenants contained in the APA and the Brittingham Employment Agreement are valid and enforceable. To the extent Paragraph 176 of the Complaint sets forth factual additional allegations against any of the Defendants, such allegations are denied.

177. Paragraph 177 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

178. Defendants deny the allegations in Paragraph 178 of the Complaint.

**COUNT XI**
**(Declaratory Judgment and Injunctive Relief – Dissolution of Restrictive Covenants Burdening Brittingham – against AAC)**

179. In response to Paragraph 179 of the Complaint, Defendants incorporate by reference and restate their responses to Paragraphs 1 through 178.

180. Defendants deny the allegations in Paragraph 180 of the Complaint.

181. In response to Paragraph 181 of the Complaint, Defendants state that the Brittingham Termination Letter speaks for itself and confirm that the restrictive covenants are enforceable.

182.     In response to Paragraph 182 of the Complaint, Defendants deny any unlawful or wrongful conduct with respect to Brittingham and/or Random Ventures. To the extent Paragraph 182 of the Complaint sets forth factual additional allegations against any of the Defendants, such allegations are denied.

183.     Paragraph 183 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

184.     Paragraph 184 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny. To the extent a response is required, Defendants deny the allegations in Paragraph 184. Paragraph 184 does not set forth any allegations against Remington; however, to the extent the allegations in Paragraph 184 are alleged against Remington, such allegations are denied.

185.     Paragraph 185 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny. To the extent a response is required, Defendants deny the allegations in Paragraph 185.

186.     To the extent Paragraph 186 of the Complaint alleges that any Defendant has acted unlawfully with respect to Brittingham and/or Random Ventures, such allegations are denied. Further answering, Defendants state that the covenants contained in the APA and the Brittingham Employment Agreement are valid and enforceable. Defendants deny that Brittingham and Random Ventures are entitled to the relief they seek in Count XI of the Complaint.

187.     In response to Paragraph 187 of the Complaint, Defendants deny any unlawful or wrongful conduct with respect to Brittingham and/or Random Ventures. Further answering, Defendants state that the restrictive covenants contained in the APA and the Brittingham

Employment Agreement are valid and enforceable. To the extent Paragraph 187 of the Complaint sets forth factual additional allegations against any of the Defendants, such allegations are denied.

188. Defendants deny the allegations in Paragraph 188 of the Complaint.

189. Defendants deny that Brittingham and Random Ventures are entitled to any of the relief they request in Paragraph 189 of the Complaint and subsections (A), (B), and (C) set forth therein. Further answering, Defendants deny any unlawful or wrongful conduct with respect to Brittingham and/or Random Ventures.

190. Defendants deny that Brittingham is entitled to any of the relief he requests in Paragraph 190 of the Complaint. Further answering, Defendants deny any unlawful or wrongful conduct with respect to Brittingham.

191. Paragraph 191 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

192. Defendants deny the allegations in Paragraph 192 of the Complaint.

<u>COUNT XII</u>
**(Breach of Thompson Employment Agreement – against AAC)**

193. In response to Paragraph 193 of the Complaint, Defendants incorporate by reference and restate their responses to Paragraphs 1 through 192.

194. Paragraph 194 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

195. Defendants deny the allegations in Paragraph 195 of the Complaint.

196. Defendants deny the allegations in Paragraph 196 of the Complaint.

197. Defendants deny the allegations in Paragraph 197 of the Complaint.

198. Defendants deny the allegations in Paragraph 198 of the Complaint.

199.    In response to the allegations in Paragraph 199 of the Complaint, Defendants state that the Amended Thompson Employment Agreement is a valid and enforceable contract. Further answering, Defendants deny the allegations in Paragraph 199 of the Complaint.

200.    Defendants deny the allegations in Paragraph 200 of the Complaint.

201.    Defendants deny the allegations in Paragraph 201 of the Complaint.

## COUNT XIII
### (Declaratory Judgment – Dissolution of Restrictive Covenants
### Burdening Thompson – against AAC)

202.    In response to Paragraph 202 of the Complaint, Defendants incorporate by reference and restate their responses to Paragraphs 1 through 201.

203.    Defendants deny the allegations in Paragraph 203 of the Complaint.

204.    In response to Paragraph 204 of the Complaint, Defendants state that the Thompson Termination Letter speaks for itself and confirm that the restrictive covenants are enforceable.  To the extent any allegation in Paragraph 204 of the Complaint is inconsistent with the Thompson Termination Letter, such allegation is denied.

205.    In response to Paragraph 205 of the Complaint, Defendants deny any unlawful or wrongful conduct with respect to Thompson.  To the extent Paragraph 205 of the Complaint sets forth factual additional allegations against any of the Defendants, such allegations are denied.

206.    Paragraph 206 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

207.    Paragraph 207 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny. To the extent a response is required, Defendants deny the allegations in Paragraph 207.

208.    In response to Paragraph 208 of the Complaint, Defendants deny any unlawful or wrongful conduct with respect to Thompson. Further answering, Defendants state that the restrictive covenants contained in the Thompson Employment Agreement are valid and enforceable. To the extent Paragraph 208 of the Complaint sets forth factual additional allegations against any of the Defendants, such allegations are denied.

209.    Paragraph 209 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

210.    Defendants deny the allegations in Paragraph 210 of the Complaint.

## COUNT XIV
**(Declaratory Judgment and Injunctive Relief– Dissolution of Restrictive Covenants Burdening Thompson – against AAC)**

211.    In response to Paragraph 211 of the Complaint, Defendants incorporate by reference and restate their responses to Paragraphs 1 through 210.

212.    Defendants deny the allegations in Paragraph 212 of the Complaint.

213.    In response to Paragraph 213 of the Complaint, Defendants state that the Thompson Termination Letter speaks for itself and confirm that the restrictive covenants are enforceable. To the extent any allegation in Paragraph 213 of the Complaint is inconsistent with the Thompson Termination Letter, such allegation is denied.

214.    In response to Paragraph 214 of the Complaint, Defendants deny any unlawful or wrongful conduct with respect to Thompson. To the extent Paragraph 214 of the Complaint sets forth factual additional allegations against any of the Defendants, such allegations are denied.

215.    Paragraph 215 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

216.     Paragraph 216 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny; to the extent a response is required, Defendants deny the allegations in Paragraph 216.

217.     To the extent Paragraph 217 of the Complaint alleges that any Defendant has acted unlawfully with respect to Thompson, such allegations are denied.  Further answering, Defendants state that the covenants in the Thompson Employment Agreement are valid and enforceable.  Defendants deny that Thompson is entitled to the relief she seeks in Count XIV of the Complaint.

218.     In response to Paragraph 218 of the Complaint, Defendants deny any unlawful or wrongful conduct with respect to Thompson.  Further answering, Defendants state that the restrictive covenants in the Thompson Employment Agreement are valid and enforceable.  To the extent Paragraph 218 of the Complaint sets forth factual additional allegations against any of the Defendants, such allegations are denied.

219.     Defendants deny the allegations in Paragraph 219 of the Complaint.

220.     Defendants deny that Thompson is entitled to any of the relief she requests in Paragraph 220 of the Complaint and subsections (A), (B), and (C) set forth therein.  Further answering, Defendants deny any unlawful or wrongful conduct with respect to Thompson.

221.     Defendants deny that Thompson is entitled to any of the relief she requests in Paragraph 221 of the Complaint.  Further answering, Defendants deny any unlawful or wrongful conduct with respect to Thompson.

222.     Paragraph 222 of the Complaint calls for a legal conclusion which Defendants are not required to admit or deny.

223.     Defendants deny the allegations in Paragraph 223 of the Complaint.

224. Defendants deny all allegations except as expressly admitted above.

225. Defendants deny that Plaintiffs are entitled to judgment or any of the other relief requested in their Prayer for Relief.

## DEFENSES

### First Defense

AAC lawfully terminated Brittingham's employment, with cause, in December 2011 after it repeatedly counseled him concerning his failures to adhere to federal firearms laws and regulations, as well as AAC's compliance policies concerning the possession, receipt, transfer, handling and storage of firearms at AAC's facility in Georgia. AAC first discovered that Brittingham had committed serious compliance violations in 2010. Among other things, he unlawfully possessed an antique silencer, brought his personal weapons to AAC without maintaining control over them and kept a loaded shotgun in the office near his tequila. Following an investigation, and as a result of this non-compliance, AAC suspended Brittingham's employment, demoted him, and reduced his pay. AAC also stripped Brittingham of all management responsibility over its compliance policies. Brittingham apologized for his policy infractions, and acknowledged in writing his many mistakes but pleaded for an opportunity to return to work and earn his payouts. AAC gave him that second chance and permitted him to return to work in January 2011 subject to various terms, including a requirement that he never bring his personal firearms to AAC without obtaining the written approval of the Chief Human Resources Officer. Notwithstanding his second chance, Brittingham subsequently proceeded to violate applicable laws, policies and agreements concerning the possession, receipt, transfer, handling and storage of firearms. The firearms industry is heavily regulated, and Brittingham is well-versed in the various laws and regulations

applicable to firearms manufacturers and owners (which includes suppressors or "silencers"), yet he chose to ignore them. He also resisted efforts put in place at AAC to ensure compliance with the law. Finally, on the eve of his termination, he brought a personal machine gun to AAC in violation of federal law, AAC policy and the terms of his probation and then tried to cover it up by manipulating an AAC surveillance camera. Based on these actions and others, Brittingham's claims against the defendants are barred, and AAC had valid reasons to terminate Brittingham's employment for cause under both the Brittingham Employment Agreement, the Amended Brittingham Employment Agreement and the terms of his probation.

AAC lawfully terminated Thompson after she failed to cooperate in company investigations. Thompson had been previously suspended in part because she failed to cooperate in the company investigation in 2010 which resulted in Brittingham's suspension. In 2012, she once again failed to cooperate in a company investigation when she refused to turn over a tape recording she made of an interview with counsel for Defendants who interviewed her in anticipation of this litigation by Brittingham and for the purpose of gathering facts to assist him in providing Defendants with legal advice. She also refused to turn over text messages between her and Brittingham exchanged after Brittingham's termination. Based on these actions and others, Thompson's claims against Defendants are barred, and AAC had valid reasons to terminate Thompson's employment for cause under both the Amended Thompson Employment Agreement and the Thompson Employment Agreement.

**Second Defense**

AAC lawfully terminated Brittingham's employment for cause, as that term is defined in the Brittingham Employment Agreement and the Amended Brittingham Employment Agreement.

### Third Defense

Brittingham and Random Ventures failed to perform all of their duties and obligations under the APA, the Brittingham Employment Agreement, the Amended Brittingham Employment Agreement, and the Goodwill Agreement. Therefore, Brittingham's and Random Ventures's purported claims for contractual damages under the APA, the Brittingham Employment Agreement, the Amended Brittingham Employment Agreement, and the Goodwill Agreement are barred.

### Fourth Defense

The Amended Brittingham Employment Agreement is a binding and enforceable contract, and the restrictive covenants contained therein are also enforceable. To the extent the Court finds that the Amended Brittingham Employment Agreement is not a binding and enforceable contract, the Brittingham Employment Agreement is a valid and enforceable agreement.

### Fifth Defense

Brittingham and Random Ventures is not entitled to any relief requested in the Complaint, including but not limited to punitive damages, because AAC's and Remington's actions were not malicious, egregious, in bad faith, or in willful or reckless indifference to any legal rights of Brittingham and Random Ventures. Additionally, the Complaint and each cause of action therein fail to state claims sufficient to entitle any Plaintiff to an award of compensatory or punitive damages.

### Sixth Defense

Brittingham and Random Ventures were not injured in the manner or to the extent alleged.

### Seventh Defense

Brittingham and Random Ventures are not entitled to attorneys' fees, costs, or expenses.

### Eighth Defense

Brittingham's claims are barred by the doctrine of unclean hands.

### Ninth Defense

AAC lawfully terminated Thompson's employment for cause, as that term is defined in the Thompson Employment Agreement and the Amended Thompson Employment Agreement.

### Tenth Defense

Thompson failed to perform all of her duties and obligations under the Thompson Employment Agreement and the Amended Thompson Employment Agreement. Therefore, Thompson's purported claims for contractual damages under the Thompson Employment Agreement and/or the Amended Thompson Employment Agreement are barred.

### Eleventh Defense

The Amended Thompson Employment Agreement is a binding and enforceable contract.

### Twelfth Defense

Thompson is not entitled to any relief requested in the Complaint, including but not limited to punitive damages, because AAC's and Remington's actions were not malicious, egregious, in bad faith, or in willful or reckless indifference to any legal rights of Thompson. Additionally, the Complaint and each cause of action therein fail to state claims sufficient to entitle any Plaintiff to an award of compensatory or punitive damages.

### Thirteenth Defense

Thompson was not injured in the manner or to the extent alleged.

**Fourteenth Defense**

Thompson is not entitled to attorneys' fees, costs, or expenses.

**Fifteenth Defense**

Thompson's claims are barred by the doctrine of unclean hands.

**Sixteenth Defense**

Because AAC has not acted unlawfully with respect to Brittingham and Random Ventures, Remington is not obligated to perform pursuant to the guarantee set forth in the APA and/or the Goodwill Agreement.

**Seventeenth Defense**

The restrictive covenants contained in the APA, the Brittingham Employment Agreement, the Amended Brittingham Employment Agreement, the Thompson Employment Agreement, and the Amended Thompson Employment Agreement are valid and enforceable.

**Eighteenth Defense**

Brittingham's and Random Ventures's purported breach of contract claims under the APA, the Goodwill Agreement, the Brittingham Employment Agreement, and the Amended Brittingham Employment are barred because Brittingham and Random Ventures were the first parties thereto to breach their obligations under the foregoing agreements.

**Nineteenth Defense**

Thompson's purported breach of contract claims under the Thompson Employment Agreement and the Amended Thompson Employment are barred because Thompson was the first party thereto to breach her obligations under the foregoing agreements.

### Twentieth Defense

Brittingham and Random Ventures have breached the APA and as a result have a duty to indemnify AAC.

### Twenty-First Defense

Defendants reserve the right to assert as a defense, should the facts upon completion of discovery establish it, that some or all of any of the Plaintiffs' claims or any of their demands for relief are barred or otherwise not actionable because of the after-acquired evidence doctrine.

### Twenty-Second Defense

Defendants reserve the right to assert or rely upon any other affirmative or further defenses established through the course of discovery.

### <u>AAC'S COUNTERCLAIM AGAINST BRITTINGHAM AND RANDOM VENTURES</u>

AAC sets forth the following as its Counterclaim against Brittingham and Random Ventures.

1.	While employed by AAC, Brittingham frequently purchased equipment and then sought and received reimbursement for the expenses he incurred for this equipment. Upon information and belief, Brittingham often kept the equipment for which he had obtained reimbursement and then used it for his personal benefit, primarily on his farm in northern Georgia. Such items include but are not limited to:

    a.	5 guns;

    b.	a crossbow;

    c.	a hunting sight;

    d.	a rest used with a crossbow;

    e.	a sight used with a bow or crossbow;

f.   a bow carrier known as a BowBat;

g.   miscellaneous supplies (arrow quiver, buckle strap);

h.   arrow shafts;

i.   4 cameras;

j.   a gun used for research and development;

k.   an outdoor heater and "range supplies";

l.   night-vision scopes; and

m.   ammunition.

2.      AAC, having paid for the property, is the lawful owner. AAC has repeatedly requested that Brittingham return the items and has provided him with a list of the property that belongs to AAC. Brittingham misrepresented that he no longer possessed the property and has refused to return any of the property. Upon information and belief, Brittingham continues to have custody or control of this property.

3.      Pursuant to Article 1, Section 1.1(1) of the APA, AAC purchased, among other things, all of the Inventory, as the APA defines that term, from Random Ventures, including "each of the Firearms, Firearm components and other equipment set forth on Schedule 1.1(l) (the "**Purchased Firearms**")." The Purchased Firearms included "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication."

4.      In connection with AAC's acquisition of the Purchased Firearms under the APA, Brittingham and Random Ventures represented in Article 2, Section 2.1, Article 3, Sections 3.1

3.2 of the APA that they each had full authority to enter into that agreement, including the sale and transfer of the Purchased Firearms to AAC.

5.     Article 6, Section 6.9(f) of the APA required Random Ventures to apply to the Federal Bureau of Alcohol, Tobacco and Firearm ("ATF") for the transfer and registration of all the Purchased Firearms, including approximately 526 silencers which currently remain registered to Random Ventures or Brittingham.

6.     In Article 3, Section 3.9 and Article 6, Section 6.9 of the APA, Random Ventures and Brittingham represented that they had the necessary permits and licenses to transfer the Purchased Firearms to AAC.

7.     Despite the requirements of the APA, after the closing date of the APA, neither Brittingham nor Random Ventures took the steps necessary to effectuate the transfer of approximately 526 silencers as provided for in Article 1, Section 1.1(l) and Article 6, Section 6.9 of the APA.

8.     The transfer of firearms is regulated by ATF.  To effectuate the transfer of silencers to AAC, Brittingham and Random Ventures needed either: a) to complete an ATF Form 3 and possess a current Special Occupational Taxpayer ("SOT") stamp which permits a tax-free transfer of the silencers; or b) to complete an ATF Form 4 without a current SOT stamp for a tax paid transfer and pay approximately $105,200 in taxes on approximately 526 silencers.

9.     On August 14, 2012, Brittingham arrived at AAC premises after substantial discussions and negotiations regarding the transfer of the silencers.  Brittingham represented he was there for the purpose of transferring approximately 526 silencers to AAC.  AAC asked if Brittingham had a current SOT stamp to determine if a tax free transfer could occur through the use of the AFT Form 3.  Brittingham misrepresented that he had a current SOT stamp when he

knew this was untrue.  He executed ATF Form 3's for the transfer of the 526 silencers knowing that the transfer could not occur unless he had a current SOT stamp.  To date, he has neither obtained a current SOT stamp nor paid the taxes due on a tax paid transfer.

10.    As a result, Brittingham and Random Ventures have failed to convey the 526 silencers to AAC in breach of the APA.  AAC has notified Brittingham of this breach.  AAC has continued its efforts to complete the transfer of the silencers, but to date, Brittingham and Random Ventures, Inc. have continued to breach their obligations under the APA.

11.    AAC has fully performed its obligations under the APA.

## COUNT I:  CONVERSION

12.    AAC restates and incorporates by reference Paragraphs 1 through 11 of this counterclaim as if the same were set forth fully herein.

13.    Brittingham has acted without authorization in retaining the property for which he was reimbursed by AAC.

14.    AAC is the rightful owner of the property in question.

15.    AAC has made a demand that Brittingham return the subject property to AAC.

16.    Brittingham has refused AAC's demand.

17.     As a direct and proximate result of the foregoing, AAC has suffered damages on account of Brittingham's tortious conduct in an amount to be determined at trial

## COUNT II:  BREACH OF CONTRACT

18.    AAC restates and incorporates by reference Paragraphs 1 through 17 of the Counterclaim as if the same were set forth fully herein.

19.    The APA is a valid and enforceable contract, and the parties thereto exchanged adequate consideration in connection with that agreement.

20. AAC performed all of the duties and obligations required of it under the APA.

21. Brittingham's and Random Venture's conduct described herein constitutes a breach of their obligations under the APA to transfer ownership of certain assets, including approximately 526 silencers, to APA and to maintain a current SOT stamp to effectuate such transfer or to pay all taxes due on such transfer.

22. As a direct and proximate result of the foregoing, AAC has suffered damages in an amount to be determined at trial.

23. Because Brittingham's and Random Venture's actions were malicious, willful and deliberate, and demonstrated a conscious disregard for AAC's interests, AAC is also entitled to an award of punitive damages.

WHEREFORE, having answered Plaintiffs' Complaint, Defendants respectfully request that the Court enter judgment in favor of Defendants, dismiss all claims against them with prejudice, award Defendants their costs and reasonable attorneys' fees in connection with the Complaint, and allow Defendants such other and further relief as the Court may deem just and proper.

WHEREFORE, AAC also respectfully prays and demands:

A.     that judgment be entered in AAC's favor and against Brittingham under Count I of the Counterclaim set forth above;

B.     that AAC be awarded compensatory damages, as well as interest and expenses, in connection with Count I in an amount to be determined at trial;

C.     that judgment be entered in AAC's favor and against Brittingham and Random Ventures under Count II of the Counterclaim set forth above;

D.      that AAC be awarded compensatory and punitive damages, as well as interest and expenses, in connection with Count II in an amount to be determined at trial;

E.      alternatively, that AAC be awarded an injunction requiring Brittingham and Random Ventures to reestablish their status as Special Occupational Taxpayers or alternatively pay all taxes due and owing on a tax paid transfer and to take any and all other actions necessary to effectuate transfer of ownership of approximately 526 silencers to AAC, including the payment of all costs associated therewith;

F.      that AAC be awarded its attorneys' fees and costs associated with the Counterclaim; and

G.      that AAC recover all such further relief as this Court deems just and proper.

Dated:  October 3, 2012
     New York, New York

Respectfully submitted,
s/ Michael J. DiMattia
By: Michael J. DiMattia (MJD 0473)
Philip A. Goldstein (PAG 0908)
McGuireWoods LLP
1345 Avenue of the Americas, 7th Floor
New York, New York 10105-0106
(212) 548-2100
mdimattia@mcguirewoods.com
pagoldstein@mcguirewoods.com

Dana L. Rust (*pro hac vice* motion to be filed)
Edward M. Eakin, III (*pro hac vice* motion to be filed)
McGuireWoods LLP
901 East Cary Street
Richmond, Virginia  23219
(804) 775-1000
drust@mcguirewoods.com
eeakin@mcguirewoods.com

*Counsel for Defendants*

42080801_4