**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| RANDOM VENTURES, INC., | ) | **ECF Case** |
| KEVIN BRITTINGHAM, and | ) | |
| LYNSEY THOMPSON, | ) | Case No. 12 CV 6792 (KBF)(GWG) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ADVANCED ARMAMENT CORP., LLC, and | ) | |
| REMINGTON ARMS COMPANY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO SEVER**

Dana L. Rust (*pro hac vice*)
Edward M. Eakin, III (*pro hac vice*)
Michael J. DiMattia
Philip A. Goldstein
McGuireWoods LLP
1345 Avenue of the Americas, 7th Floor
New York, New York 10105-0106
O: (212) 548-2100
F: (212) 548-2150
drust@mcguirewoods.com
eeakin@mcguirewoods.com
mdimattia@mcguirewoods.com
pagoldstein@mcguirewoods.com

*Counsel for Defendants Advanced Armament Corp., LLC and*
*Remington Arms Company, LLC*

## INTRODUCTION

Plaintiffs' Opposition Memorandum glosses over the vastly different reasons for AAC's decision to terminate the employment of Kevin Brittingham ("Brittingham") and Lynsey Thompson ("Thompson") and instead focuses on immaterial examples of commonality between them.  Furthermore, Plaintiffs all but ignore Brittingham's claims regarding an $8 million earn out Brittingham seeks in this lawsuit when these allegations took center stage in the Complaint. Now, because it is expedient for purposes of this motion, Plaintiffs ask the Court to overlook Brittingham's central case theme (that Cerberus fired him to avoid the $8 million payment and this is Cerberus' standard business practice in its acquisitions) because quite frankly, Thompson does not have a part in this play.  *See* Complaint ¶¶ 2-6.

## ARGUMENT

### A.    Plaintiffs' Claims Should Be Severed Under FRCP 20 and 21

#### (1)    Brittingham's Termination Bears No Relation to Thompson's Termination.

Fundamentally, this case is about whether AAC had good cause to terminate Brittingham and good cause to terminate Thompson, and AAC dismissed Brittingham and Thompson for different reasons following separate and distinct chains of events.  Brittingham was terminated after numerous and egregious compliance violations related to ATF regulations and federal firearms statutes.  Thompson was fired a month later for failing to cooperate in investigations. Thus, analyzing whether Brittingham and Thompson will recover damages from AAC will depend on two sets of unrelated facts and entirely dissimilar circumstances.  While Plaintiffs list some similarities among Brittingham and Thompson, they are largely irrelevant and the differences Plaintiffs' brief omits are glaring.  It really does not matter that Brittingham and Thompson worked together before the sale of AAC and that they both had agreements which

permitted that they be terminated for cause.  Whether such cause existed is of great relevance and, as stated above, the reasons for the cause-based terminations could not be more different. Simply put, their claims in this action do not arise out of the same transaction or occurrence and should be severed.

Plaintiffs' brief also omits any meaningful discussion of Brittingham's $8 million earn out, but it is incontrovertible that this earn out is the driving force behind his lawsuit.  According to Brittingham, the defendants concocted a pretextual reason to fire him to avoid this payment. Brittingham goes further, alleging that it was Cerberus' standard business practice to structure acquisitions with earn out provisions and then remove the sellers' founders without good cause solely to avoid the earn outs.  In paragraph 5 of the Complaint, he cites to three cases involving a Cerberus-owned company, Dyncorp, as evidence of this standard business practice.  Unlike Brittingham, Thompson has no earn out potential.  She was not a party to the APA and has no Goodwill Agreement.  She was not paid any sum at closing for the sale of the business, nor was she eligible for any residual payments tied either to her individual performance or the performance of the business post-sale.  She has a simple employment agreement providing an annual salary that could have been terminated by AAC without cause for less than $100,000. The savings associated with this relatively modest amount clearly do not fit within Brittingham's grand theory of the case.

Based upon these dramatic distinctions, the Court should sever the claims of Brittingham and Thompson under FRCP 20 and 21 and the controlling case law.  *Klimaski v. Paraxel Int'l*, 2005 U.S. Dist. LEXIS 6403 (E.D. Pa. Apr. 4, 2005), is instructive.  In *Klimaski*, three former employees of Paraxel alleged they were terminated in retaliation for reporting activities protected by the Sarbanes-Oxley Act.  The court, on a motion to consolidate filed by the individual

plaintiffs under FRCP 42(a), held that "joinder of the three parties is not warranted because the circumstances of each party's termination are factually distinct." *Id.* at *10. Critical to this holding was the court's conclusion that a "determination of whether Defendant Paraxel discharged [the three individual plaintiffs] in retaliation for reporting activities protected by the Sarbanes Oxley Act requires a *separate analysis of each party's work performance, qualifications, and the actions taken against him*." *Id.* (emphasis added). In addition, the court also noted that "[s]ignificantly, the facially plausible justifications offered by Defendant for each party's termination are unique," and that in "determining whether these proffered justifications are merely pretextual, a fact finder would need to independently analyze [two of the plaintiffs'] employment contracts and the nature of their outside interests, as well as [the third plaintiff's] job performance and work history. *Id.* at **10-11.

Similarly, in *America's Collectibles Network, Inc. v. Chase Paymentech, LLC*, 2008 U.S. Dist. LEXIS 110063 (E.D. Tenn. Sept. 24, 2008), the court granted the defendants' motion to sever. In that case, one of the claims involved alleged misappropriation of funds, but the other concerned whether an insurance carrier had breached an insurance contract. *Id.* at **10-11. Finding that the "degree of commonality [was] relatively weak," the court noted that because the claims at issue "would involve different legal questions," the "arguably common questions of fact would not go toward *the core of the respective claims*." *Id.* at *11.

The reasoning applied by the courts in *Klimaski* and *America's Collectibles* also applies here. To determine whether AAC's breached its contractual obligations to Brittingham will require a factual and legal analysis that is entirely separate and distinct from the analysis required with respect to Thompson's claims. This is especially evident based on AAC's "facially plausible," but altogether different, reasons for dismissing Brittingham and Thompson.

3

**(2)    Brittingham's Claims for Relief Differ from Thompson's Claims for Relief**

Plaintiffs also cannot deny that the damages Brittingham seeks dwarf those sought by Thompson.  Plaintiffs' selective omission of Brittingham's claimed $8 million earn out arising under the APA and the Goodwill Agreement further demonstrates this fundamental difference from Thompson's claims under her employment agreement.  Again, Thompson's employment agreement limits her damages to twelve months of salary, which was $98,000.

It also is significant that AAC has a counterclaim against Brittingham for return or the value of property Brittingham has converted.  This includes over 500 silencers, several guns, ammunition, a crossbow, a night vision scope, and other items.  The witnesses and other evidence that Defendants will use to prosecute the counterclaim (and Brittingham will use to defend the claim) have no bearing on, or relation to, Thompson.  If the claims are not severed, she and the other witnesses will be bystanders to this counterclaim.

**(3)    The Cases on Which Plaintiffs' Rely Are Distinguishable.**

Plaintiffs cite several cases in support of their argument that the claims should not severed,[1] but all of these cases are easily distinguished because even though the plaintiffs in those cases "were discriminated against by different people at different times," the plaintiffs "were treated in a similar manner because of a protected characteristic . . . ."  *Tardd v. Brookhaven Nat'l Lab.*, 2007 U.S. Dist. LEXIS 34378, at *29 (E.D.N.Y. May 8, 2007).  That is not the case here.  Brittingham and Thompson have brought breach of contract claims, not employment discrimination claims.  Their claims against AAC are wholly distinct and arise under separate sets of circumstances based upon the individual grounds for their terminations

---

[1] (Pl.'s Memo. in Opp. at 9).

and there is no overarching federal statute protecting them from termination based upon their race, gender, age or other protected characteristic.

By way of example, in *Todaro v. Siegel Fenchel*, 2008 U.S. Dist. LEXIS 17894 (E.D.N.Y. Mar. 3, 2008), the plaintiffs claimed, among other things, gender, pregnancy, and sex-based pay discrimination.  They asserted that there was a "policy of discrimination against females generally, and more specifically, pregnant employees," at a small, single office law firm. *Id.* at **7-8 (E.D.N.Y. Mar. 3, 2008).  The court denied the defendants' motion to sever because the underlying facts supporting the plaintiffs' allegations of unlawful discrimination were similar.  Namely, the plaintiffs "contend[ed] that because they became pregnant and had children, [the defendant law firm] denied them pay increases or reduced their salary and terminated their employment." *Id.* at *8.  Likewise, in *Puricelli v. CNA Ins. Co*., an age discrimination case, the plaintiffs both allegedly "received poor or borderline performance evaluations, and the basis for those evaluations was the same."  In addition, both of the plaintiffs were allegedly demoted and replaced by younger employees. *Puricelli v. CNA Ins. Co*., 185 F.R.D. 139, 142-43(N.D.N.Y. 1999).  Finally, in *Fong v. Rego Park Nursing Home*, the Court declined to sever the claims because the plaintiffs alleged that they were all subjected to unlawful, strict scrutiny and punishment by their employer, but employees of other ethnic backgrounds and ages were not similarly treated.  1996 U.S. Dist. LEXIS 222289, at **8-9 (E.D.N.Y 1996).

Here, Brittingham and Thompson do not allege discrimination based upon some shared trait, such as gender, race or age, in violation of federal employment discrimination statutes, such as Title VII or the ADEA.  The minor similarities between Brittingham's and Thompson's claims do not overcome the numerous differences, the claims should, therefore, be severed.

**(4)     The Issues in Dispositive Motions and at Trial Will Be Different and Will Involve Different Witnesses**

The issues on summary judgment for Thompson's claim will be simple, involve discrete facts and not require any analysis of ATF regulations or federal firearms statutes, or the terms of the APA and the Goodwill Agreement.  Brittingham's claims will require reference to these laws and agreements and will likely result in far lengthier briefs.  Additionally, many of the witnesses who will testify about Thompson's claims will differ from those who will testify about Brittingham's claims.  The list of witnesses in connection with Thompson's claims (primarily Oralia Johnson and John Day), and their testimony, will be short, and will focus on the specific reasons why AAC dismissed Thompson.  There is no need for these witnesses to be present at trial while the parties present their evidence pertaining to Brittingham's termination.

The list of witnesses with knowledge of relevant facts with respect to Brittingham's claims will differ.  Furthermore, these individuals will offer testimony related to federal firearms law, AAC's compliance policies, AAC's EBITA, and the value of AAC's property that Brittingham has converted.  In addition, AAC will put on additional fact evidence in support of its counterclaim stemming from Brittingham's breach of the APA.

Plaintiffs' reference to the Rule 26(a)(1) initial disclosures served in this action is unavailing and assumes that everyone listed in the disclosures will offer testimony about all issues in the case.  Simply because a person may have knowledge about Brittingham and Thompson does not automatically mean that this person will be called as a witness in connection with their claims.  Rule 26(a)(1) makes this clear by requiring parties to reveal individuals "likely to have discoverable information" that it "*may* use to support its claims or defenses." Initial disclosures are not trial witness lists, and thus, their contents are not outcome determinative on a motion to sever.  *See Pangerl v. Ehrlich*, 2007 U.S. Dist. LEXIS 19502, at

6

*11 (D. Ariz. Mar. 2, 2007) (noting in a motion to transfer case that overlap amongst individuals listed in the parties initial disclosures "does not suggest a duplication of resources given the distinguishing set of facts underlying both cases"); *Alessi*, 2008 U.S. Dist. LEXIS 10442, at *5 (overlap of witnesses not sufficient to outweigh reasons to sever).  Thus, the contents of the parties' initial disclosures do not mandate that the Motion to Sever should be denied.

(5)    **The Documentary Evidence Will Differ.**

Plaintiffs also mistakenly assert that because Brittingham and Thompson worked together before the sale of the business, entered into employment agreements with AAC and received similar documentation after their suspensions, there is significant commonality between their respective claims.   Again, their work history before the sale of the business is of little or no relevance.  The fact that each could be terminated for cause under their employment agreements is neither surprising nor unique.  What is unique is the contrasting reasons why AAC terminated their employment, the contractual earn out provisions for Brittingham (but not Thompson) and the remedies sought by each, and these facts require that the claims be severed.  With respect to Brittingham, the evidence in his case will relate primarily to whether he complied with federal firearms statutes and regulations, AAC compliance policies, the terms of his written probation and the terms of the APA and the Goodwill Agreement.  These documents will have little or no relevance to Thompson's claim.  Additionally, AAC believes that trying Brittingham's claims and the counterclaim will encompass several days of testimony and exhibits.  However, Thompson's claim and the defenses to it could likely be presented in a matter of hours.

(6)    **Defendants Will Suffer Prejudice if the Claims Are Not Severed.**

While FRCP 20 and 21 do not require a showing of prejudice, Defendants will unquestionably suffer prejudice if the case is not severed.  In particular, their witnesses will be

greatly inconvenienced, especially since those who will offer testimony in Thompson's case will likely be required to be present at the courthouse during trial when there is little or no chance they will be called.  Moreover, severing Thompson's claims will make them easier to address adjudicate.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' collective allegations should be severed for purposes of dispositive motions and trial into two separate actions—one with Brittingham and his company, Random Ventures, as the plaintiffs, and the other with Thompson.  By severing their claims in such a manner, Plaintiffs and Defendants will be afforded a properly individualized assessment of their claims, defenses and alleged damages, while confusion to the Court will be minimized.  Finally, severing these claims will also avoid undue prejudice to the parties and their respective witnesses and preserve judicial economy.  Defendants therefore respectfully request that their Motion be granted.

Respectfully submitted,

s/ Michael J. DiMattia
By: Michael J. DiMattia
Philip A. Goldstein
McGuireWoods LLP
1345 Avenue of the Americas, 7th Floor
New York, New York 10105-0106
(212) 548-2100
mdimattia@mcguirewoods.com
pagoldstein@mcguirewoods.com

Dana L. Rust (*pro hac vice*)
Edward M. Eakin, III (*pro hac vice*)
McGuireWoods LLP
901 East Cary Street
Richmond, Virginia  23219
(804) 775-1000
drust@mcguirewoods.com
eeakin@mcguirewoods.com
*Counsel for Defendants*

8