**Edward M. Eakin, III**
Direct: 804.775.1153

eeakin@mcguirewoods.com
Direct Fax: 804.440.7730

March 19, 2013

**Via E-Mail & Federal Express**

Hon. Katherine B. Forrest
United States District Court
Southern District of New York
500 Pearl Street, Room 730
New York, New York 10007



```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAR 2 7 2013
```

    Re:    **Random Ventures, Inc., et al. v. Advanced Armament Corp., LLC, et al.**
             **Case No. 12-cv-6792 (KBF)(GWG)**

Dear Judge Forrest:

      We write concerning Plaintiffs' objection to AAC's Rule 34 Request for Entry Onto Land or Other Property for Inspection. The purpose of this inspection is to review Mr. Brittingham's gun collection to see if he currently possesses any firearms or related equipment covered by AAC's counterclaim. **We ask that you order that the inspection proceed on March 21 or 25, 2013.** During our March 12, 2013 conference call, the Court advised that it was generally inclined to grant the Rule 34 request to inspect provided that Defendants took appropriate measures to safeguard Mr. Brittingham's privacy. Accordingly, the same day, Defendants notified plaintiffs' counsel that: "We seek to inspect only those areas in which Mr. Brittingham keeps his weapons, etc. (i.e., other items listed in the request to inspect) and will adhere to the judge's instructions in this regard. Please let us know in advance where he stores his guns and other items. In addition, any photographs taken during the inspection will be of the firearms/items only." **(Ex. A)**. We have repeatedly provided opposing counsel with dates for the inspection, in addition to the name of the individual we have chosen to conduct the inspection. **(Ex. B)**. AAC does not seek to harass Mr. Brittingham.

      Last Friday evening, opposing counsel notified us that Mr. Brittingham was standing on his objections to the inspection, which were not timely served. **(Exs. C & D)**. We conferred with opposing counsel by phone concerning this matter on March 18, 2013, and we spoke with your law clerk, Mr. Shulman, concerning this matter earlier today. We understand that Mr. Brittingham will argue that the inspection should take place, if at all, after his deposition or that we should serve interrogatories in lieu of an inspection. However, opposing counsel has previously represented that Mr. Brittingham does not recall to whom he returned the items covered by AAC's counterclaim, and AAC has served an Interrogatory addressing the property at issue and received nothing more than vague and incomplete answers. Mr. Brittingham is

March 19, 2013
Page 2

stonewalling AAC's legitimate attempts to discover relevant information in the case, and AAC's inspection should be allowed.

Prior to his termination, Mr. Brittingham submitted expense reports in connection with various items he purchased for his alleged use in connection with AAC's business. Many of these items were acquired for use at "The Farm," a "division of AAC" that Mr. Brittingham set up to use for hunting trips and other marketing purposes. (*See* **Ex. E**). Upon information and belief, Mr. Brittingham owns The Farm; it is a separate piece of property from AAC's manufacturing facility in Lawrenceville, Georgia, and it is not his primary residence.

After AAC terminated Mr. Brittingham's employment, it conducted a detailed inventory of its facility in Lawrenceville in an attempt to locate certain property for which Mr. Brittingham personally received reimbursement but failed to return to AAC. AAC was unable to locate several items, including at least five guns. Long before this litigation ensued, AAC made repeated, detailed inquiries to Mr. Brittingham regarding several items for which he received reimbursement but did not return to AAC after he was terminated. In response to these inquiries, Mr. Brittingham provided ambiguous, and sometimes differing, responses to AAC.

For instance, we sent a letter to Mr. D'Cruz on February 3, 2012. In that letter, defense counsel stated that AAC had reconciled expense reports that Mr. Brittingham previously submitted with its inventory. (**Ex. F at 2**). This reconciliation demonstrated that AAC was not in possession of several items for which Mr. Brittingham received reimbursement. In response, opposing counsel requested that AAC forward a list of items and equipment for which AAC contends Mr. Brittingham was reimbursed. (**Ex. G**). Through his attorney, Mr. Brittingham stated that he "believes that any firearms for which he received reimbursement are in the possession of AAC." (*Id.* **at 2**). Accordingly, on February 15, 2012, AAC provided Mr. Brittingham with a detailed list of items for which Mr. Brittingham received reimbursement. (**Ex. H**).

Two days later, opposing counsel admitted that Mr. Brittingham had some of the items—tree stands and hunting targets—but stated "the remaining items should be in AAC's possession, not Mr. Brittingham's." (**Ex. I**). On February 24, 2012, opposing counsel stated that "AAC has all of the remaining items listed in the enclosure to defense counsel's February 15, 2012 letter," but provided no further explanation in this regard. (**Ex. J at 2**).

On March 22, 2012, defense counsel made a further inquiry regarding the items at issue, particularly the firearms, stating:

> Regarding the firearms and other items Mr. Brittingham claims not to possess, your vague assertion that the 'remaining listed items should be in AAC's possession,' is untrue. Your client purchased the items. He then sought reimbursement for them. With some limited exceptions, to the best of our knowledge, AAC never had physical possession of these items. Rather, it appears they were always kept by Mr. Brittingham, even after he obtained reimbursement

March 19, 2013
Page 3

> for them.  If Mr. Brittingham claims he returned the items, he needs to provide
> specific details about when he returned them and to whom, but we have no reason
> to believe that ever occurred.

**(Ex. K at 4)**.  We also provided detailed information to Mr. Brittingham demonstrating that (i)
Mr. Brittingham had logged some of the guns at issue onto his personal FFL; (ii) the guns had
never appeared on AAC's bound book; or (iii) that the guns were not present in AAC's facility.
**(Id.)**.  In response to this detailed information provided by AAC, Mr. Brittingham stated through
his attorney on April 24, 2012: "[A]s to the five (5) guns for which Mr. Brittingham was
allegedly reimbursed but has failed to return to AAC, Mr. Brittingham maintains these are in
possession of AAC.  He does not recall the identity of each person to whom he returned the
guns." **(Ex. L)**.  No further response or explanation as to the guns has been provided.

Interrogatory 21 served on Mr. Brittingham by AAC asks him to identify those items for
which he received reimbursement and removed from AAC's premises from June 11, 2011 to the
present.  Rather than provide a substantive answer, Mr. Brittingham simply referred to the
foregoing letters counsel exchanged and referenced a few items he recently returned to AAC.
Mr. Brittingham's answers served on January 31 and February 20, 2013, state, in pertinent part:

> 1/31/13:  AAC delivered Bass Pro tree stands and MGM targets to Brittingham's
> farm for AAC use during his employment. . . .
> 2/20/13:  Mr. Brittingham states that he has produced correspondence with Dana
> Rust concerning the subject matter of this interrogatory.

Otherwise, he has provided no specific response to this Interrogatory or explanation whatsoever
as to the location of the other property at issue.  **(Ex. M)**.

During the 30(b)(6) deposition of AAC on January 31, 2013, AAC witness Darin
Stafford testified that AAC had been unable to locate several items for which Mr. Brittingham
received reimbursement.  Opposing counsel questioned Mr. Stafford as to whether certain
Remington employees had ever been to The Farm or if AAC had any eyewitness testimony that
the items were located in his possession.  This line of questioning has opened the door to the
Rule 34 inspection request.  **(Ex. N at 37-46)**.  Accordingly, AAC served a Rule 34 property
inspection request concerning the items at issue in the counterclaim and a few other weapons
related to the litigation on February 4, 2013.  **(Ex. O)**.

On March 6, 2013, AAC notified Plaintiffs that it had secured a well-known third party
attorney who is extremely well-versed in firearms to conduct the inspection.  **(Ex. B)**.  On March
11, 2013, 35 days after AAC had served its request, Mr. Brittingham served 8 objections to
AAC's request.  Contrary to these objections, AAC does have good cause to conduct the
inspection because it was Mr. Brittingham who sought reimbursement for many of the items at
issue.  Amazingly, Mr. Brittingham objected on the grounds that the information could be
obtained by serving an Interrogatory; however, he has yet to properly answer AAC Interrogatory
21.  In addition, AAC's inspection request is narrowly tailored to those items set forth in the

March 19, 2013
Page 4

counterclaim, in addition to two more guns. We have repeatedly requested dates for the inspection and out of courtesy to Mr. Brittingham, attempted to work out the dates instead of unilaterally selecting a date and including it in our Rule 34 request. We have assured opposing counsel that we do not seek to intrude into areas where Mr. Brittingham does not store the weapons and other equipment at issue, and we have asked him to show us where he keeps his firearms. AAC is agreeable to Mr. Brittingham bringing any property he has retained to this location as part of the inspection so as to limit its intrusion. Furthermore, based on Mr. Brittingham's non-responsiveness to date, we expect that questioning him in his deposition about these items will be a waste of AAC's time because he has already said that he does not remember what happened to the various items. Therefore, we request that the Court order the inspection to proceed.

**We request that AAC be permitted to conduct an inspection of the areas in which Mr. Brittingham keeps his firearms and other items set forth in our Rule 34 Request for Entry Onto Land or Other Property. We also request that the inspection take place on March 21 or 25, 2013.** If necessary, Defendants are willing to participate in a conference call with the Court to discuss these matters further.

Respectfully submitted,

_____/s/_____
Edward M. Eakin, III
McGuireWoods LLP
901 East Cary Street
Richmond, Virginia 23219
(804) 775-1000
(804) 775-1061 (fax)
drust@mcguirewoods.com
jeakin@mcguirewoods.com

*Counsel for Defendants Advanced Armaments Corp., LLC and Remington Arms Company, LLC*

cc:   R. Jason D'Cruz, Esq.
      Leslie J. Nordin, Esq.
      Robert A. O'Hare, Jr., Esq.

*Ordered:*
*Post to docket.*

Ken B. Forrest
HON. KATHERINE B. FORREST
UNITED STATES DISTRICT JUDGE

*March 27, 2013*

## Eakin, Jeb

| | |
|---|---|
| **From:** | Eakin, Jeb <jeakin@mcguirewoods.com> |
| **Sent:** | Tuesday, March 12, 2013 4:49 PM |
| **To:** | Leslie J. Nordin; Rust, Dana |
| **Cc:** | Jason D'Cruz; 'Robert O'Hare'; Catharine B. Wooten; Schwartz, Micah B. |
| **Subject:** | RE: Brittingham and Thompson Depositions [MMM-mmmdms1.23998.78053] |

Jason and Leslie:

In response to your message and with respect to some of the other matters addressed during our call with the court earlier today—

1. Please let us know if Mr. Brittingham and Ms. Thompson are available for their depositions on March 27 and 28, respectively. The 29th is Good Friday, and we would prefer not to take depositions on that date.

2. Please let us know if Random Ventures is available to be deposed on April 3rd.

3. We will start working on getting available dates for Stevens, Love, Mustian, Williams, and Ronchi, but as you know Ronchi will require a subpoena. Please let us know the names of the other one or two witnesses you would like to depose so we may begin working on their dates.

4. We propose that the Rule 34 property inspection take place on March 21st or 25th. We seek to inspect only those areas in which Mr. Brittingham keeps his weapons, etc. (i.e., other items listed in the request to inspect) and will adhere to the judge's instructions in this regard. Please let us know in advance where he stores his guns and other items. In addition, any photographs taken during the inspection will be of the firearms/items only.

5. Nardelli's deposition date remains the 22nd, Cofield's deposition date remains the 26th, and we will make the rest of the witnesses available after the depositions of your clients.

6. With respect to our subpoena to AT&T, we propose that any texts that are personal and embarrassing be turned over to a partner in our firm and a partner in your firm. Thereafter, both of these neutrals will review the texts and remove those that are personal and embarrassing. If there are any disputes about which texts should be turned over, the neutrals will submit them to the Court for in camera review. As part of this process, we will agree to let AT&T know to release the text messages to the neutrals at the same time.

Thank you.

Jeb

---

**From:** Leslie J. Nordin [mailto:lnordin@mmmlaw.com]
**Sent:** Tuesday, March 12, 2013 4:17 PM
**To:** Rust, Dana; Eakin, Jeb
**Cc:** Jason D'Cruz; 'Robert O'Hare'; Catharine B. Wooten
**Subject:** Brittingham and Thompson Depositions [MMM-mmmdms1.23998.78053]

Dana,

Lynsey Thompson is available for her deposition on March 28, 2013 and Kevin Brittingham is available on March 29, 2013. Please confirm that these dates will work and that the depositions will take place at our offices in Atlanta.

Thanks.

Leslie

Leslie J. Nordin
Of Counsel, Employment Law Group



EXHIBIT
A

Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
(404) 495-8476 (direct dial)
lnordin@mmmlaw.com

For information on Morris, Manning & Martin, LLP, please visit our Web site at http://www.mmmlaw.com. This e-mail message and its attachments are for the sole use of the designated recipient(s). They may contain confidential information, legally privileged information or other information subject to legal restrictions. If you are not a designated recipient of this message, please do not read, copy, use or disclose this message or its attachments, notify the sender by replying to this message and delete or destroy all copies of this message and attachments in all media. Thank you.

TREASURY DEPARTMENT CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the Treasury Department, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**Eakin, Jeb**

| | |
|---|---|
| **From:** | Leslie J. Nordin <lnordin@mmmlaw.com> |
| **Sent:** | Thursday, March 07, 2013 6:46 PM |
| **To:** | Eakin, Jeb; Catharine B. Wooten; Jason D'Cruz |
| **Cc:** | Rust, Dana; DiMattia, Michael J.; Goldstein, Philip A.; Schwartz, Micah B. |
| **Subject:** | RE: Rule 34 inspection of property [MMM-mmmdms1.23998.78053] |

Jeb,

As we've stated previously, our responses to Defendants' request to inspect Mr. Brittingham's property is not due until March 11, 2013. We will respond to that request on or before the March 11, 2013 deadline. Therefore, it would be premature for you to take this issue up with the Court.

Leslie

---

**From:** Eakin, Jeb [mailto:jeakin@mcguirewoods.com]
**Sent:** Thursday, March 07, 2013 1:48 PM
**To:** Leslie J. Nordin; Catharine B. Wooten; Jason D'Cruz
**Cc:** Rust, Dana; DiMattia, Michael J.; Goldstein, Philip A.; Schwartz, Micah B.
**Subject:** RE: Rule 34 inspection of property

Leslie – Mr. Kapelsohn's schedule for the month is quickly filling up. Would you please let us know by COB tomorrow if any of the dates below work? We are not asking you to waive your right to any objections you may have to our request; rather, we would like to get a date on the books that suits all of our schedules. If we don't hear back from you, we will take this issue up with the Court. I am available to discuss this matter between now and tomorrow. My direct dial phone number is 804.775.1153. If I don't answer the phone, ask for my secretary and she will find me.

Thank you.

Jeb

---

**From:** Eakin, Jeb
**Sent:** Wednesday, March 06, 2013 2:36 PM
**To:** Leslie J. Nordin (lnordin@mmmlaw.com); cwooten@mmmlaw.com; Jason D'Cruz [rjd@mmmlaw.com] (rjd@mmmlaw.com)
**Cc:** Rust, Dana; DiMattia, Michael J.; Goldstein, Philip A.; Schwartz, Micah B.
**Subject:** Rule 34 inspection of property

As we previously mentioned, and given the various scheduling and timing issues in the case, we seek to get a date on the calendar for our Rule 34 inspection of property. The individual from our side who will conduct the inspection is Manny Kapelsohn. His bio and CV are attached. Mr. Kapelsohn is available to conduct the inspection on March 15th, 21st, and 25th. Please let us know if these dates work. Thank you.

Jeb

Edward M. Eakin III
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
804.775.1153 (Direct Line)
804.440.7730 (Direct FAX)
eeakin@mcguirewoods.com
http://www.mcguirewoods.com



EXHIBIT
**B**

1

*This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

## Eakin, Jeb

| | |
|---|---|
| **From:** | Leslie J. Nordin <lnordin@mmmlaw.com> |
| **Sent:** | Friday, March 15, 2013 8:05 PM |
| **To:** | Eakin, Jeb |
| **Subject:** | Discovery Follow-Up [MMM-mmmdms1.23998.78053] |

Jeb,

Below are our responses concerning the various open matters we have discussed this week since the Court's conference:

**1. Rule 34 Inspection of Property:** We stand by our objection to the inspection of property Defendants request. We are willing to confer with you on this issue by phone. Please let us know if you would like to schedule a call on Monday to discuss.

**2. AT&T Subpoena:** We propose that all texts retrieved from the AT&T subpoena, not just those that are "personal and embarrassing," be turned over to a neutral partner at each firm who is not involved in this case. Further, these neutral parties will not only remove those text that are personal and embarrassing, but they will identify and produce only those texts that concern this action. If there are any disputes, the neutral partners will submit them to the Court for in camera review.

**3. Random Ventures' Deposition:** We are not able to schedule Random Ventures' 30(b)(6) deposition on April 3rd but propose April 5th as an alternative.

**4. Silent Island Bound Book.** As we discussed at length this afternoon, we still need the Bound Book for FFL # 1-58-02617 from **Silent Island.** The information on the disk that was provided to Mr. Brittingham after his termination did not come off of Silent Island. As I stated today, it is extremely easy for AAC to log into Silent Island, run a report for that FFL for a particular time period (we propose 1/1/97 - present), export that report in Excel format, and e-mail it to us. I know firsthand that the whole process would take approximately three minutes. This Bound Book is, and has always remained, Mr. Brittingham's property, and AAC is obligated to return it to him in the format in which he maintained it as soon as possible. Further, the Bound Book is responsive to Plaintiffs' document requests. You indicated today that you are looking into the matter. Given the ease with which this information can be obtained and provided to us, AAC should be able to provide it to us by Monday. If you fail to do so, we will contact the court.

Thanks.

Leslie

Leslie J. Nordin
Of Counsel, Employment Law Group
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
(404) 495-8476 (direct dial)
lnordin@mmmlaw.com



For information on Morris, Manning & Martin, LLP, please visit our Web site at http://www.mmmlaw.com. This e-mail message and its attachments are for the sole use of the designated recipient(s). They may contain confidential information, legally privileged information or other information subject to legal restrictions. If you are not a designated

1

recipient of this message, please do not read, copy, use or disclose this message or its attachments, notify the sender by replying to this message and delete or destroy all copies of this message and attachments in all media.  Thank you.

TREASURY DEPARTMENT CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the Treasury Department, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RANDOM VENTURES, INC., KEVIN
BRITTINGHAM, and LYNSEY THOMPSON,

                                 Plaintiffs,

          - against -

ADVANCED ARMAMENT CORP., LLC, and
REMINGTON ARMS COMPANY, LLC,

                               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

: ECF Case
:
: No. 12-CV-6792 (KBF)
:
: KEVIN BRITTINGHAM'S AND
: RANDOM VENTURES, INC.'S
: RESPONSE TO DEFENDANT
: ADVANCED ARMAMENT
: CORP., LLC'S SECOND
: REQUESTS FOR PRODUCTION
: OF DOCUMENTS AND THINGS
: AND FIRST REQUEST FOR
: ENTRY ONTO LAND OR
: OTHER PROPERTY FOR
: INSPECTION OF OBJECTS OR
: OTHER PROPERTY

Plaintiffs Kevin Brittingham ("Brittingham") and Random Ventures, Inc. ("Random Ventures"), by and through their undersigned counsel, hereby serve their Responses to Defendant Advanced Armament Corp., LLC's ("AAC") Second Requests for Production of Documents and Things (the "Requests").

## GENERAL RESPONSES AND OBJECTIONS

A.      Brittingham and Random Ventures object to the Requests to the extent they purport to impose obligations beyond those permitted under the Federal Rules of Civil Procedure (the "Federal Rules") and/or the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules").

B.      Brittingham and Random Ventures object to the definitions set forth in the Requests to the extent they contradict, conflict with, or purport to broaden the definitions and rules of construction set forth in Local Civil Rule 26.3 of the Local Rules.

EXHIBIT
D

C.      Brittingham and Random Ventures object to the Requests to the extent they seek responses, information, and/or documents that are not in the possession, custody, or control of Brittingham and/or Random Ventures or seek to impose any obligation on Brittingham and/or Random Ventures to provide responses or documents on behalf of any person or entity other than Brittingham or Random Ventures.

D.      Brittingham and Random Ventures object to the Requests to the extent that they call for responses, information, and/or the production of documents that were prepared in anticipation of litigation, are protected by the attorney-client privilege, the work product doctrine, the business strategy privilege, the common interest or joint defense privilege, or any other applicable privilege, doctrine or immunity. By responding and objecting to the Requests, Brittingham and Random Ventures do not waive, intentionally or otherwise, their attorney-client privilege, work product protection, business strategy privilege, common interest or joint-defense privilege, or any other applicable privilege, doctrine or immunity protecting their communications, transactions, or records from disclosure. Accordingly, any response or objection inconsistent with the foregoing is wholly inadvertent and shall not constitute a waiver of any such privilege or protection.

E.      Brittingham and Random Ventures object to the Requests to the extent they seek responses, information and/or documents and materials that are not relevant to the claims or defenses asserted in this action and/or are not reasonably calculated to lead to the discovery of admissible evidence.

F.      Brittingham and Random Ventures object to the Requests insofar as they seek responses, information, and/or documents that are a matter of public record, have been previously provided to Defendants, are otherwise in Defendants' possession and/or are available

- 2 -

through Defendants' own efforts.

G.      Brittingham and Random Ventures object to the Requests to the extent they seek responses, information, and/or documents that are unduly burdensome to obtain.

H.      Brittingham's and Random Ventures' response to any request set forth shall not be deemed an admission or acknowledgment that such request calls for material relevant to the subject matter of this action, and is without prejudice to Brittingham's and/or Random Ventures' right to contend at trial or any other stage of this or any other action that the requested responses, information, and/or documents are inadmissible, irrelevant, immaterial or otherwise objectionable.

I.      Brittingham's and Random Ventures' search for documents is ongoing. Brittingham and Random Ventures therefore reserve the right to rely on any facts, documents, or other evidence that may develop or come to their attention subsequent hereto. Brittingham's and Random Ventures' responses, as set forth herein, are based on information presently known to Brittingham and Random Ventures and their attorneys and are without prejudice to their right to assert additional objections or supplemental responses, should Brittingham and/or Random Ventures discover additional information or grounds for objections. Brittingham and Random Ventures reserve the right to supplement or amend these responses at any time prior to a trial of this action, and Brittingham and Random Ventures will supplement these responses to the extent required by the Federal Rules.

J.      Any statement that Brittingham and Random Ventures will provide non-privileged responses and/or produce non-privileged documents in its possession sought by a particular request in no way constitutes an admission that Brittingham and/or Random Ventures actually possess the document(s) requested or that any such document(s) exist.

- 3 -

## SPECIFIC RESPONSES AND OBJECTIONS

The response to the specific request set forth below shall be deemed to incorporate, and shall not be deemed a waiver of, the General Responses and Objections.

**Request No. 1**:

Any and all documents or photographs of Kevin Brittingham and/or a member of his family that contains an AAC suppressor or silencer or an AAC suppressor or silencer attached to a firearm.

**Response**:

Brittingham and Random Ventures object to the request on the grounds that it is overly broad, unduly burdensome, and seeks the production of documents that are not relevant to the claims or defenses asserted in this litigation and are not reasonably calculated to lead to the discovery of admissible evidence.  Brittingham and Random Ventures further object to the request on the grounds that it is harassing.

**Request No. 2**:

AAC requests entry onto any and all land or real property owned, rented, or occupied by Kevin Brittingham or Random Ventures for inspection, photograph, testing, and/or sampling of such land or real property to determine if Brittingham possesses the items listed below:

    a) Remington 51 .380 ACP Serial number L92660;
    b) HK P30 9mm serial number 129-029618;
    c) Sig Sauer Pink Mosquito (serial # F090636);
    d) HK416 .223 (serial # HK002271);
    e) Remington 7 (serial # 7845022);
    f) S&W M&P 22LC (serial # DWC38);
    g) Marketing Items for the Farm: Crossbow, Hunting Sight, Ultra Rest, Arrow Quiver, Bowbat, Buckle Strap, Rinehart Target, Buck Target, Mayhem Hunter Camo Shaft;
    h) Riflemaster Ladder Deer Stand;
    i) Riflemaster Ladder Deer Stand;
    j) Big Buddy 2 person Deer Stand;
    k) R&D gun;
    l) Camera—2 Flip MinoHD, Canon Powershot, FLIP Slide HD;
    m) Outdoor Heater and "Range Supplies";

    n)  Target used at Silencer Shoot;
    o)  Nightscopes;
    p)  Ammunition used for R&D;
    q)  Remington Modular Sniper Rifle (MSR);
    r)  .300 AAC Blackout Low Visibility Assault Weapon; or
    s)  Any other property of AAC, Remington Arms Company, LLC, or The Freedom Group, Inc. including, but not limited to firearms, silencers, or other weapons.

**Response:**

Brittingham and Random Ventures object to this request because: (1) Defendants do not have good cause to perform the requested inspection; (2) this request is overly broad, vague, unduly burdensome, unlimited, unconditional, and seeking information not relevant to the claims or defenses asserted in this litigation and not reasonably calculated to lead to the discovery of admissible evidence; (3) this request fails to designate a specific time or place for the inspection; (4) this request is premature, unreasonable, harassing and requested for an improper purpose; (5) this request seeks inspection of private, residential property, the inspection of which will unnecessarily and unreasonably compromise the security and privacy of such property; (6) the information Defendants seek can be properly and easily obtained by other means less troublesome, less burdensome, and far less intrusive and/or invasive of Mr. Brittingham and his family's privacy, including, but not limited to, by interrogatory to Brittingham and/or Random Ventures, and/or by deposition of Brittingham and/or Random Ventures; (7) neither Mr. Brittingham nor Random Ventures is in possession of the items sought for inspection; and (8) Defendants' mere suspicion that Mr. Brittingham and/or Random Ventures possess the items sought for inspection is not sufficient to support such inspection. Brittingham and Random Ventures further state that, on February 15, 2013 – after Plaintiffs' counsel repeatedly requested since February 2012 that AAC pick up its property – Mr. Brittingham delivered the following property to AAC, and AAC acknowledged the receipt of such property from Mr. Brittingham:

- 5 -

(1) two Riflemaster Ladder Deer Stands; (2) one Big Buddy 2-person Deer Stand; (3) three

MGM targets; and (4) two archery targets (the Rinehart Target and Buck Target from Buck N

Bass).

This 11th day of March 2013.

MORRIS, MANNING & MARTIN, LLP

/s R. Jason D'Cruz

R. Jason D'Cruz
Admitted pro hac vice September 14, 2012
rjd@mmmlaw.com
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
(404) 233-7000
(404) 365-9532 (f)

O'HARE PARNAGIAN LLP

Robert A. O'Hare Jr.
Michael Zarocostas
Andrew C. Levitt
82 Wall Street, Suite 300
New York, NY 10005-3686
(212) 425-1401
(212) 425-1421 (f)
rohare@ohareparnagian.com
mzarocostas@ohareparnagian.com
alevitt@ohareparnagian.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy "Plaintiffs Kevin Brittingham's and Random Ventures, Inc.'s Response to Defendant Advanced Armament Corp., LLC's Second Requests for Production of Documents and Things and First Request for Entry Onto Land or Other Property for Inspection of Objects or Other Property" was served via electronic mail to the following attorneys of record:

Michael J. DiMattia
Philip A. Goldstein
McGuire Woods LLP
1345 Avenue of the Americas, 7th Floor
New York, NY 10105

Dana L. Rust
Edward M. Eakin, III
McGuire Woods LLP
901 East Cary Street
Richmond, Virginia 23219

This 11th day of March 2013.        By:    /s R. Jason D'Cruz
                                           R. Jason D'Cruz
                                           Admitted pro hac vice September 14, 2012
                                           rjd@mmmlaw.com
                                           Morris, Manning & Martin, LLP
                                           1600 Atlanta Financial Center
                                           3343 Peachtree Road, N.E.
                                           Atlanta, GA 30226
                                           Telephone: (404) 233-7000
                                           Facsimile: (404) 365-9532
                                           *Attorney for Plaintiffs*

**Bulls-Eye Indoor Range & Gun Shop**
221 West Crogan Street
Lawrenceville, GA 30046
(770) 963-6556

Kevin Brittingham

A HuntingsDIV. A

# INVOICE

| our order no | Invoice no | Date 06/28/11 | | |
|---|---|---|---|---|
| Quantity | Description | Unit price | Amount | |
| 1 | Remington Seven 7=08 | | 549 | 99 |
| | Ser# 7845022 | | | |
| 1 | S+W M+P 22LR | | 469 | 99 |
| | Ser# DWC38 | | | |
| 1 | Mag | | 24 | 99 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | SUB TOTAL | | |
| | | TAX | | |
| | | TOTAL $1044.97 | | |



O R _ .        ' ' '        I P T

Kick N Chicken
(706) 565-5151
10/13/2010

200ml RED BULL SUGAR FREE 4 PKS
1    4pk sku 19961              7.69
VOID-200ml RED BULL SUGAR FREE 4 PKS
-1    4pk sku 19961             -7.69
200ml RED BULL SUGAR FREE 4 PKS
3    4pk sku 19961 @7.69        23.07
                               --------
        3 ITEMS SUBTOTAL        23.07
    7% GA tax on   23.07         1.61
                               ========
        ID # 115      TOTAL     24.68

                     VISA       24.68

Approval: 488770
Card # XXXXXXXXXXXX1887

TroutD : 192732
Ref(



BUY #426
GA 30519
614-0533
Keep your receipt!

Val #: 1348-8807-3235-7184

0426 003 5960 10/13/10      11:01 0778307

                                      179.99
1159339   M3160S
  FLIP MINOHD 1 HOUR SILVER  (3
  ITEM TAX 10.80                      179.99
1159339   M3160S
  FLIP MINOHD 1 HOUR SILVER  (3
  ITEM TAX 10.80                      329.99 *
1218465   .43468001.
  CANON POWERSHOT SD4500 SILVER
  REG $349.99  20.00 SALE DISC
  ITEM TAX 19.80                      249.99
9853456   S1240W
  FLIP SLIDE HD    CAMCORDER
  ITEM TAX 15.00                        2.29
9365135   73842
  MONSTER ENERGY LOCARB
  ITEM TAX 0.05                         0.00 N
6094193   RZ SILVER -
  REWARD ZONE PREMIER SILVER
  MEMBER ID 0601228810 .
                               ----------
              SUBTOTAL         942.25
        SALES TAX AMOUNT        56.45
                               ==========
                    TOTAL      998.70

XXXXXXXXXXXX1006       AMEX    998.70
KEVIN T BRITTINGHAM
APPROVAL 624386

KEVIN,
THANKS FOR              TODAY!

ORIGINAL

*Remington Arms Company, Inc.*

Madison, NC 27025

| | |
|---|---|
| | Seller's Invoice Date |
| Purchase Order No. | Seller's Invoice No |
| Kevin Brittingham | |
| Name of Person Originating APV | Pay To    Kevin Brittingham |
| Location/Extension of Originator | Street and No    2168 Town Manor Court |
| 8/30/2011 | |
| Date Prepared | City    Dacula    State    GA    Zip Code    30019 |

| %    Days; Net    Days or | Vendor Code |
|---|---|
| Desired Pay Date | Pmt Method |

| | | |
|---|---|---|
| 6/14 - 1022 R&D Parts - AGP Arms | $ | 212.58 |
| 7/21 - Camo Gun Dip - Rifles for The Farm - Jason Towe | $ | 1,675.00 |
| 7/21 - Hunting and Gun Magazines - Market Research - Publix | $ | 42.89 |
| 7/22 - Dealer Lunch - Ted's | $ | 84.00 |
| 7/29 - The Farm hunting division Marketing Materials for Hunts - Buck 'N Bass | $ | 1,916.90 |
| 7/31 - Dinner with Trey Knight - Paul's Smokehouse | $ | 193.76 |
| 8/2 - Employee Morale Gifts - Family World Citgo | $ | 46.68 |
| 8/2 - Employee Morale Gifts - Family World Citgo | $ | 69.85 |
| 8/3 - Ethan Transition Discussions - Ted's | $ | 53.16 |
| 8/5 - R&D Ammo - Oakwood Outdoors | $ | 295.00 |
| 8/6 - Buck A Rama Trade Show Dinner - Talay Asian Cuisine | $ | 78.54 |
| 8/8 - Sales Discussion Lunh - Ted's | $ | 48.97 |
| 8/10 - Michael Bane Shooting Gallery TV Show Dinner - Ted's | $ | 421.04 |
| 8/11 - Michael Bane Shooting Gallery TV Show Dinner - Ted's | $ | 395.45 |
| 8/12 - AMU Visit Lunch - 3 People - Ted's | $ | 132.46 |
| 8/23 - Replacement iPad Charger - Apple Store | $ | 31.35 |
| 8/30 - ATF Meeting Breakfast - Chick Fil A | $ | 13.08 |
| 8/30 - ATF Meeting Lunch - Chick Fil A | $ | 13.99 |

Wire Transfer Information

Bank:

ABA:

Pay to:

Acct #:

Distribution

| The approval signature(s) shown below attest that all required verifications and extensions have been properly made and that Accounts Payable Section can make payments without further checks as to correctness. | Gross | $ | 5,714.70 |
|---|---|---|---|
| Signed: | Discount | | |
| Signed: | Net | $ | 5,714.70 |
| Date: | | | |

| For Treasury Use Only |
|---|
| Date Paid |
| Reference No. |
| Bank Acct |
| USD Amt (if in Foreign Currency) |

RECEIVED
SEP 0 8 2011
BY: 9.14.11

G-408
Revised   9/7/97

*Employee Morale Gifts*

```
4301 SUMMER OAK DR
BUFORD, GA. 30518
770-904-2905
erchant ID: 8915503561
erm ID: 000556600801550356100
```

S-1

*ne Farm Division of AAC Marketing/Hunts*

Register:1

e:2:39:50 PM

ARD
OMPLETE

| Qty | Description Price | Subtotal |
|---|---|---|
| 230915 | Z7 XTREME | |
| | 749.99 | 749.99  T |
| X-463LC | GLZ3 STABILIZER 3INCH | |
| | 59.99 | 59.99  T |
| BE-SNP-LC-RISNIPER LC HUNTING SIGHT-RH | | |
| | 189.99 | 189.99  T |
| QURHDXCMD | ULTRA REST HDX MATHEWS LOST C | |
| | 139.99 | 139.99  T |
| 7157 | EP Z7.RED EYE PEEP 3/16" RED | |
| | 9.99 | 9.99  T |
| 18122917532 | RAMCAT BROADHEADS 100gr | |
| | 32.99 | 32.99  T |
| 20770000061 | T3 ARROW QUIVER 1PC | |
| | 106.99 | 106.99  T |
| T-AP2 | BOWBAT, AP2010- TREESTAND PACI | |
| | 89.99 | 89.99  T |
| 15588997744 | TRUGLO STRAP BRAKET | |
| | 12.50 | 12.50  T |
| 5987463217 | BUCK-N-BASS BOW WRIST STRAP | |
| | 12.50 | 12.50  T |
| T-1305 | MAYHEM HUNTER 350 CAMO SHAFT | |
| 10 | 10.75 | 107.50  T |
| RWQ11634 | QUICKIE 1. w/BUCKLE STRAP | |
| | 95.99 | 95.99  T |
| 53595000579 | RINEHART 18-1 TARGET | |
| | 99.99 | 99.99  T |
| 39608 | SHOOTER BUCK TARGET | |
| | 99.99 | 99.99  T |

—————— Payment History ——————
| Payment Desc | Tend | Paid | Change |
|---|---|---|---|
| Credit Card | 1916.90 | 1916.90 | 0.00 |

^^^^^^^^^^^ Credit/Debit ^^^^^^^^^
Credit Card # XX
...........

SUBTOTAL(taxed):   1808.39
SUBTOTAL(un-taxed):    0.00
TAX:   108.51

**TOTAL:1916.90**

**TOTAL TENDERED:1916.90**

**CHANGE DUE:    0.00**

CHANGE TYPE:   NONE

---

WELCOME TO
FAMILY WORLD CITGO
1975 OLD COFFEE RD
CECIL,GA.31627

```
00015/43005 01     FAMILY WORLD CITGO
1975 OLD COFFEE RD            CECIL GA
```

| Desc | qty | amount |
|---|---|---|
| <CUSTOMER COPY> | | |
| 1 GROC 7% | 1 | 23.99 |
| 1 GROC 7% | 1 | 14.99 |
| 1 GROC 7% | 1 | 15.99 |
| T GROC 7% | 1 | 9.99 |

```
              Sub Total     64.96
                    Tax      4.89
       TOTAL              69.85
                 CREDIT     69.85
PAYMENT TIME: 03:12:54
CARD TYPE: VISA
```

*Kevin, Lynsey, Ethan — Transition*

Ted's Montana Grill
1680 Mall of Georgia Blvd
Buford, GA 30518
(678) 546-3631

```
Server: Liz              DOB: 08/03/2011
01:07 PM                       08/03/2011
56/7/1                          2/20007

               SALE

Visa
Card #XXXXXXXXXXXX1964           2097155
Magnetic card present: BRITTINGHAM KEVIN
Card Entry Method: S

Approval: 01937B
```

Amount:     $ 44.30

+ Gratuity:    20 00

= Total:    64 30

= $53.16

ORIGINAL

# ℛemington Arms Company, Inc.
Madison, NC 27025

| | | Seller's Invoice | |
|---|---|---|---|
| Purchase Order No. | Seller's Invoice No | Date | |
| Name of Person Originating APV | Pay To | Knox Williams | |
| Location/Extension of Originator | Street and No | 6755 Laurian Wood Drive | |
| 7/12/2011 | | | |
| Date Prepared | City      Atlanta     State   GA     Zip Code   30328 | | |

| % | Days; Net | Days or | |
|---|---|---|---|
| | | Desired Pay Date | |

| Vendor Code |
|---|
| Pmt Method |

| | | |
|---|---|---|
| 8/1 - Three Deer Stands for AAC Farm - Bass Pro Shop | $ | 540.57 | (A) |
| 8/1 - Eight Button Down Shirts to be Embroidered for The Farm - Old Navy | $ | 211.49 | A |
| 8/9 - Lunch for John Hollister and Knox en route to range - McCrays | $ | 30.35 | B |
| 8/9 - Dinner for John Hollister and Knox on return from range - Longhorn | $ | 28.28 | B |
| 8/10 - Water and Gatorade for range day w/Michael Bane - Costco | $ | 38.23 | B |
| 8/10 - Ice for cooler at range w/Michael Bane - Chevron | $ | 10.66 | B |
| 8/11 - Meal for all of AAC, and Michael Bane's Crew - Chick-Fil-A | $ | 174.27 | C |
| 8/11 - Monster energy drinks for Kevin - RaceTrac | $ | 29.53 | B |

Wire Transfer Information

Bank:

ABA:

Pay to:

Acct #:

Distribution

The approval signature(s) shown below attest that all required verifications and extensions have been properly made and that Accounts Payable Section can make payments without further checks as to correctness

| | |
|---|---|
| Gross | $  1,063.38 |
| Discount | |
| Net | $  1,063.38 |

Signed:

Signed:

Date:

| For Treasury Use Only |
|---|
| Date Paid |
| Reference No. |
| Bank Acct |
| USD Amt (if in Foreign Currency) |

Ⓐ = 60000  MkT⁻        752.0J
Ⓑ - meals  office  61340    137.0J

Ⓒ meals  SaleS - 60060    174.27
                              1,063.3J

EXHIBIT
14
Stafford

McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Phone: 804.775.1000
Fax: 804.775.1061
w.mcguirewoods.com

Dana L. Rust
Direct: 804.775.1082

drust@mcguirewoods.com
Direct Fax: 804.698.2158

# McGuireWoods

February 3, 2012

**VIA EMAIL & FEDERAL EXPRESS**

R. Jason D'Cruz, Esq.
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia  30326

**Kevin Brittingham**

Dear Mr. D'Cruz:

I am writing this letter:  1) to demand that your client remedy immediately certain breaches of the Asset Purchase Agreement between AAC Acquisitions LLC, ("AAC"), Advanced Armament Corp. and Kevin Brittingham dated October 2, 2009 ("the APA"); 2) to demand that he transfer certain firearms and other property to AAC; 3) to remind Mr. Brittingham of certain important continuing obligations he has to AAC, and 4) to respond to your letter of January 12, 2012.

Paragraph 6.10 of the APA prohibits Mr. Brittingham and Advanced Armament Corp. from using or allowing an affiliate to use any name, slogan, logo, trademark, service mark, trade name or internet domain name that is similar to or reasonably likely to cause confusion with AAC's business.  This provision also required Advanced Armament Corp. to file a certificate with the State of Georgia and all states in which Advanced Armament Corp. was qualified to do business changing its name to Random Ventures, Inc.  It is my understanding that Mr. Brittingham still controls an entity known as AAC, Inc. and this entity continues to have a federal firearms license.  The name of this entity is obviously very similar to and likely to cause confusion with AAC.  This is a breach of the APA.  If Mr. Brittingham has not already changed the name of Advanced Armament Corp. to Random Ventures, Inc., this is a separate breach.  Mr. Brittingham is obligated under the Paragraph 6.10 of the APA to cease using the names AAC, Inc. and Advanced Armament Corp. immediately.  If Mr. Brittingham plans for AAC, Inc. to continue to exist and have a federal firearms license, he must change its name to something not confusing with or similar to AAC and amend his federal firearms license to reflect the new name of this entity.

Article 1.1 of the APA provides that Advanced Armament Corp. and Mr. Brittingham sold the rights, title and interest in all product inventory to AAC except for certain assets described in a Schedule 1.2(i), which is not applicable here.  Section 6.9(f) of the APA required Advanced

**EXHIBIT**

**F**

February 3, 2012
Page 2

Armament Corp. to apply to ATF for the transfer and registration of all NFA purchased firearms in its acquisition and disposition records and further required it to terminate its federal firearms license. AAC has conducted a comprehensive inventory since Mr. Brittingham's termination and identified 514 firearm silencers which were conveyed to AAC through the APA but were never properly transferred to AAC by Mr. Brittingham and Advanced Armament Corp. This is another breach of the APA. A spreadsheet listing the firearms silencers in question is attached. To complete the transfer of these firearms to AAC, Mr. Brittingham must promptly execute the Form 3 transfer application, which is also attached. I note that these 514 firearm silencers are currently locked and secured in a cage at AAC to which only you and/or your client has the key.

Similarly, AAC purchased 14 "post-sample" machine guns from Advanced Armament Corp. and Mr. Brittingham through the APA. It is my understanding that Mr. Brittingham had discussions regarding the transfer of these firearms to AAC before his termination and we ask that he cooperate as we complete this process. We will be in touch with you in the near future to identify the additional steps that need to be taken to complete this transfer. A list of these firearms is also attached.

ACC's recently completed inventory also revealed three NFA firearms which do not appear in either AAC, Inc.'s or AAC's bound books. They are identified in an attachment to this letter. If Mr. Brittingham believes that these silencers belong to him, he should produce proof of ownership and registration within 72 hours. If we do not hear from you during this time period, ACC will either destroy the silencers or abandon them to ATF.

We have also corresponded several times regarding certain firearms which were located at ACC and identified immediately after Mr. Brittingham's termination as belonging to him. I understand Mr. Brittingham attempted to retrieve these weapons recently but did not bring his key with him. As you know, since his termination Mr. Brittingham alone controls access to these firearms and AAC does not have a key to the cage where they have been stored. If Mr. Brittingham has not yet retrieved his weapons by the time you receive this letter, he should make arrangements to do so promptly and remember to bring the appropriate paperwork and key with him.

Next, AAC has reconciled expense reports that Mr. Brittingham has previously submitted with its inventory. This reconciliation demonstrates that Mr. Brittingham purchased additional firearms and equipment while he worked for AAC and then sought reimbursement for these purchases, but he retains the property today. This property belongs to AAC because Mr. Brittingham requested and received reimbursement for all of these purchases. These firearms and other property need to be returned by Mr. Brittingham to AAC immediately.

I also write to remind Mr. Brittingham of certain obligations he has to AAC under the APA and his Employment Agreement. Specifically, Section 1.1 of the APA provided that AAC purchased all of Advanced Armament Corp.'s intellectual property. Section 6 of the APA includes a confidentiality provision, non-compete provision and non-disparagement provision. Mr. Brittingham's Employment Agreement also contains confidentiality, non-competition, non-solicitation and non-disparagement provisions. Both contracts allow AAC to obtain immediate injunctive relief, as well as damages, in the event he violates these provisions. Mr. Brittingham needs to understand that if he attempts to use AAC's intellectual property and/or compete against AAC, the Company stands ready to enforce its rights under these agreements to the

February 3, 2012
Page 3

maximum extent possible. The same holds true if Mr. Brittingham fails to remedy the existing breaches described above.

Turning to your letter of January 12, 2012, AAC denies that it breached Mr. Brittingham's Employment Agreement or the APA. The grounds for Mr. Brittingham's termination are set forth in his original termination letter. I will not repeat everything here, but suffice it to say that he committed flagrant compliance violations and repeatedly ignored the ATF regulations and federal statutes governing AAC's operations. He was given a second chance when he was put on probation in lieu of termination, but he squandered that opportunity. All of this clearly justified terminating him for cause.

With respect to his computer, Mr. Brittingham was given a business computer to use, but chose instead to use his personal computer for business purposes. This was a clear violation of the Company's Computer Network Acceptable Use policy, which Mr. Brittingham agreed to follow on October 3, 2009. Had he complied with the Company policy and used his personal computer for personal purposes and his business computer for business purposes, there would have been no need for the company to have an independent consultant image the hard drive. AAC promptly returned the computer to Mr. Brittingham after the image was made and it was confirmed he had violated Company policy by commingling business and personal information on the computer. AAC paid to have the independent consultant install a new operating system for him. As soon as Mr. Brittingham identifies the personal information he wants on the computer, it will be returned to him and deleted from the imaged hard drive and none of the personal information will be shared with AAC. AAC will only retain the business information.

I understand Mr. Brittingham submitted three expense reports on December 8, 2011. Two of these have been approved and he can expect reimbursement for these expense reports next week. The third one is being reviewed now. We understand that Mr. Brittingham has been paid for all of his accrued but unused vacation pay. If Mr. Brittingham disputes this, he should submit a detailed account of any vacation he took and unpaid vacation days to which he claims he is still entitled. There was never an agreement between AAC and FN and therefore no royalty payments are due to Mr. Brittingham.

You have also requested various documents from AAC. Mr. Brittingham was given copies of most of these documents, made copies himself or had access to them while he worked for AAC and knows very well what they state. While the company has no obligation to provide Mr. Brittingham a copy of his personnel file, I attach it to this letter.

Please let me know if Mr. Brittingham will voluntarily comply with the demands I have made in this letter by Friday, February 10, 2012.

Sincerely,

Dana L. Rust

Enclosures

## MORRIS, MANNING & MARTIN, LLP
ATTORNEYS AT LAW

February 13, 2012

**VIA FIRST CLASS MAIL AND**
**VIA EMAIL (DRUST@MCGUIREWOODS.COM)**

R. Jason D'Cruz
404-504-7601
rjd@mmmlaw.com
www.mmmlaw.com

Dana Rust
One James Center
901 East Cary Street
Richmond, Virginia   23219-4030

Re: Kevin Brittingham/Advanced Armament Corp., LLC ("AAC")

Dear Mr. Rust:

This letter is written to follow up on the items raised in my letter dated January 12, 2012 (the "January Letter") and to respond to your letter dated February 3, 2012 (the "February Letter").

Despite my request in the January letter, AAC refused to specify the AAC policies and procedures Mr. Brittingham allegedly violated or the compliance initiatives that Mr. Brittingham allegedly attempted to undermine. Accordingly, we conclude that no such policies or initiatives exist. AAC also failed to provide a list of firearms that Mr. Brittingham allegedly brought onto or transported off the AAC premises and/or when Mr. Brittingham allegedly did so. As such, we conclude that these contentions have no basis either.

Mr. Brittingham denies that he violated AAC's Computer Network Acceptable Use Policy.

Mr. Brittingham has not yet received payment for the two approved expense reports dated December 8, 2011. Mr. Brittingham is also awaiting payment for the third expense report submitted December 8, 2011, as well as the January 12, 2012 expense reports mentioned in my January Letter. Mr. Brittingham's final expense reports are enclosed. Please ask AAC to promptly reimburse Mr. Brittingham for these additional expenses.

Mr. Brittingham has not been paid for approximately 80 hours of accrued vacation pay. It is my understanding that a time spreadsheet was forwarded to AAC's controller each month. The December 2011 spreadsheet should confirm that Mr. Brittingham is entitled to approximately 80 hours of accrued vacation. Please promptly forward Mr. Brittingham's accrued vacation pay.

AAC failed to provide signed copies of any documents it alleged Mr. Brittingham signed, including, but not limited to, Term Sheet, Acknowledgement, and First Amended and Restated Employment Agreement. Therefore, we conclude that they do not exist.

EXHIBIT
**G**

MORRIS, MANNING & MARTIN, LLP

Dana Rust
Page 2

Mr. Brittingham requests that AAC promptly send him copies of the firearms inventories for both Mr. Brittingham and Random Ventures as maintained in the Silent Island program. Please forward these two inventories in both electronic and hard copy form. Please also forward a copy of the modification log for both inventories. After copying the Silent Island inventories and modification logs, please ask AAC to destroy the data on the Silent Island program for these inventories. They do not belong to AAC.

In response to the requests in your February Letter, please note that Mr. Brittingham did in fact change the name of his business to Random Ventures, Inc.

Next, regarding the 514 silencers purportedly owned by AAC (February Letter, Ex. A), Mr. Brittingham maintains that the following weapons were not transferred to AAC under the APA: (1) Ruger 220-69118 , (2) Ruger Mark II 223-91531, (3) AAC TF-0001, an "Excluded Asset" on APA Schedule 1.2 (i); (4) AAC TF-0003, an "Excluded Asset" on APA Schedule 1.2 (i); (5) AAC TF-0005, an "Excluded Asset" on APA Schedule 1.2 (i); (6) AAC TF-0009, an "Excluded Asset" on APA Schedule 1.2 (i). Moreover, Mr. Brittingham is unable to transfer the 14 post-sample machine guns (February Letter, Ex. C) until AAC has obtained a Law Enforcement Letter. AAC knows this. Mr. Brittingham will promptly complete the Form 3 application and transfer these firearms after AAC provides the appropriate Law Enforcement Letters.

Regarding the three (3) NFA firearms not included in AAC's books (February Letter, Ex. B), those firearms do not belong to Mr. Brittingham.

Finally, please forward a list of the specific firearms and equipment for which AAC contends Mr. Brittingham was reimbursed. Mr. Brittingham believes that any firearms for which he received reimbursement are in the possession of AAC.

I will look forward to your prompt response.

Sincerely,

R. Jason D'Cruz

Enclosures

cc: Kevin Brittingham
    Scott Allen

McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Phone: 804.775.1000
Fax: 804.775.1061
www.mcguirewoods.com

Dana L. Rust
Direct: 804.775.1082 | **McGuireWoods**

drust@mcguirewoods.com
Direct Fax: 804.698.2158

February 15, 2012

**VIA EMAIL & FEDERAL EXPRESS**

R. Jason D'Cruz, Esq.
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326

<u>Kevin Brittingham – Return of AAC Property</u>

Dear Jason:

I write to provide the information you requested in the last paragraph of your February 13, 2012 letter. As I previously mentioned, AAC has reconciled the expense reports Mr. Brittingham submitted with AAC's current inventory of firearms and related accessories. The enclosed chart (Exhibit A below) lists reimbursements Mr. Brittingham received for purchases he made of items that he removed from AAC premises. Since the items on this list clearly belong to AAC, Mr. Brittingham needs to promptly return them to my client. Please notify me of Mr. Brittingham's intentions on this matter as soon as possible.

Sincerely,

Dana Rust/rwt

Dana L. Rust

Enclosures



**EXHIBIT**

**H**

## Exhibit A

| Receipt Date | Amount Reimbursed | Vendor | Description |
|---|---|---|---|
| 8/27/2010 | $ 519.98 | Hyatt Gun Shop | Remington 51 .380 ACP serial number L92660 |
| 10/1/2010 | $ 1,153.93 | Bulls Eye Indoor Range | HK P30 9mm serial number 129-029618 |
| 10/13/2010 | $ 1,316.92 | Bulls Eye Indoor Range | Sig Sauer Pink Mosquito (serial # F090636) and HK416 .223 (serial # HK002271) |
| 6/28/2011 | $ 1,044.97 | Bulls Eye Indoor Range | Remington 7 (serial # 7845022) and S&W M&P 22LC (serial # DWC38) |
| 7/29/2011 | $ 1,916.99 | Buck N Bass | Marketing Items for the Farm, a division of AAC: Crossbow ($749.99), Hunting Sight ($189.99), Ultra Rest ($139.99) Arrow Quiver($106.99), Bowbat ($89.99), Buckle Strap ($95.99), Rinehart Target ($95.99), Buck Target ($99.99), Mayhem Hunter Camo Shaft ($107.50) and other miscellaneous items |
| 8/1/2011 | $ 540.57 | Bass Pro | Riflemaster Ladder Deer Stand ($159.99), Riflemaster Ladder Deer Stand ($159.99), Big Buddy 2 person Deer Stand ($189.99) |
| 5/25/2011 | $ 1,811.76 | In Range LLC | R&D gun |
| 10/13/2010 | $ 998.70 | Best Buy | Cameras--2 Flip MinoHd (179.99 ea), Canon Powershot (329.99), FLIP Slide HD (249.99) |
| 11/7/2010 | $ 514.96 | Home Depot | Outdoor Heater and "Range Supplies" |
| 5/5/2011 | Various | MGM Targets | Targets used at Silencer Shoot |
| 11/3/2011 | $ 2,178.00 | Nightforce Scopes | Nightscopes |
| Various | undetermined | Various | Ammunition used for R&D |

*Property to be Returned*

\37106094.1

# MORRIS, MANNING & MARTIN, LLP
ATTORNEYS AT LAW

February 17, 2012

**VIA FIRST CLASS MAIL AND**
**VIA EMAIL (DRUST@MCGUIREWOODS.COM)**

R. Jason D'Cruz
404-504-7601
rjd@mmmlaw.com
www.mmmlaw.com

Dana Rust
One James Center
901 East Cary Street
Richmond, Virginia  23219-4030

Re:  Kevin Brittingham/Advanced Armament Corp., LLC ("AAC")

Dear Mr. Rust:

This letter is written to respond to your letter dated February 15, 2012 regarding the AAC property purportedly in the possession of Kevin Brittingham (the "February Letter"). Mr. Brittingham has reviewed the items listed on Exhibit A to the February Letter. AAC delivered the Bass Pro tree stands and the MGM targets to his farm for AAC use. AAC should arrange a convenient time with Mr. Brittingham to pick up these items. The remaining listed items should be in AAC's possession, not Mr. Brittingham's.

In addition, please promptly return all data taken from Mr. Brittingham's personal computer.

Sincerely,

R. Jason D'Cruz

Enclosures

cc:  Kevin Brittingham
     Scott Allen



Buckhead Office | 1600 Atlanta Financial Center
(404) 233-7000 | 3343 Peachtree Road, N. E.
              | Atlanta, Georgia 30326
              | Fax: (404) 365-9532

With offices in

Washington, DC
Raleigh-Durham, N.C.     5980129

**MORRIS, MANNING & MARTIN, LLP**
ATTORNEYS AT LAW

February 24, 2012

R. Jason D'Cruz
404-504-7601
rjd@mmmlaw.com
www.mmmlaw.com

**VIA FIRST CLASS MAIL AND**
**VIA EMAIL (DRUST@MCGUIREWOODS.COM)**

Dana Rust
One James Center
901 East Cary Street
Richmond, Virginia  23219-4030

Re:     Kevin Brittingham/Advanced Armament Corp., LLC ("AAC")

Dear Dana:

This letter summarizes the outstanding non-firearm property issues between Mr. Brittingham and AAC raised in my letters dated January 12, February 13, and February 17, 2012,  as well as your letters dated February 3 and February 15, 2012.

Mr. Brittingham is awaiting the prompt return of all data taken from his personal computer.

Mr. Brittingham has received expense reimbursements in the amounts of approximately $200 and $600.   Please let me know which expense requests these checks are meant to reimburse. Mr. Brittingham has not yet received payment for the two approved expense reports dated December 8, 2011. Mr. Brittingham is also awaiting payment for the third expense report submitted December 8, 2011, expense reports submitted January 12, 2012, and  expense reports submitted February 13, 2012.  Please ask AAC to promptly reimburse Mr. Brittingham for these outstanding expenses.

Mr. Brittingham also has not been paid for approximately 80 hours of accrued vacation pay mentioned in my February 13, 2012 letter.  Please promptly forward Mr. Brittingham's accrued vacation pay.

AAC failed to forward copies of the firearms inventories and modification logs for both Mr. Brittingham and Random Ventures as maintained in the Silent Island program and as requested in my February 13, 2012 letter.  Please forward the requested inventories and logs and destroy the Silent Island program data for the inventories.



EXHIBIT

J

MORRIS, MANNING & MARTIN, LLP

Dana Rust
Page 2

Finally, as stated in my February 17, 2012 letter, AAC may pick up the Bass Pro and MGM targets previously delivered to Mr. Brittingham's farm.  AAC has all of the remaining items listed on the attachment to your February 15, 2012 letter.

Sincerely,

R. Jason D'Cruz

cc: Kevin Brittingham
    Scott Allen

6174978

McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Phone: 804.775.1000
Fax: 804.775.1061
www.mcguirewoods.com

Dana L. Rust
Direct: 804.775.1082

# McGUIREWOODS

drust@mcguirewoods.com
Direct Fax: 804.698.2158

March 22, 2012

**VIA EMAIL & FEDERAL EXPRESS**

R. Jason D'Cruz, Esq.
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia  30326

**Kevin Brittingham**

Dear Mr. D'Cruz:

I am writing in response to your February 13, February 17 and February 24, 2012 letters concerning Kevin Brittingham.

Mr. Brittingham's termination letter clearly spells out the reasons for his dismissal, and Mr. Brittingham is well aware of his numerous compliance and policy violations. While the list is long and his transgressions were numerous, Mr. Brittingham should know the firearms he brought or removed improperly from AAC, LLC ("AAC") during his employment with the company.  These were, after all, firearms Mr. Brittingham directly handled during a 12-month probationary period in which, as Mr. Brittingham acknowledged, he would be immediately terminated if, among other things, he brought his firearms to AAC without the advance written approval of the Chief Human Resources Officer.  Knowing that he never had such approval, and knowing that he could be fired for doing it, I would have thought Mr. Brittingham would have refrained from such conduct or, at a minimum, remembered it when he chose to act so recklessly.  While the evidence of Mr. Brittingham's misconduct is overwhelming, one of the most damaging pieces of evidence is likely the video footage of Mr. Brittingham at AAC the night before his termination (after sending emails in which he asked if he was going to be fired the following day) where he is seen changing the angle of the surveillance camera in an effort to conceal the fact he was removing a machine gun, not registered under the National Firearms Act ("NFA") to AAC, he had brought to AAC in violation of his probation.  There is much more in terms of evidence but this picture is truly worth a thousand words.

Your letters reference five different expense reports submitted by Mr. Brittingham.  He submitted three of these reports on December 8, 2011.  On February 6, 2012, AAC sent Mr. Brittingham reimbursements for two of the three December 8 reports.  The amounts paid were $760.86 and $213.09 for a total of $973.95.  The third expense report will be reimbursed this week with an offset with respect to one firearm for which Mr. Brittingham was already

Atlanta | Austin | Baltimore | Brussels | Charlotte | Charlottesville | Chicago | Houston | Jacksonville | London
Los Angeles | New York | Norfolk | Pittsburgh | Raleigh | Richmond | Tysons Corner | Washington, D.C. | Wilmington


EXHIBIT
K

March 22, 2012
Page 2

reimbursed. Thus, AAC is denying the second submission for the same weapon and deducting the amount he was already paid.

With respect to the January expense report, we have multiple questions we need answered before we can reimburse Mr. Brittingham. The questions are as follows:

1) Can he submit the original receipts?
2) Was the hunting trip approved and if so by whom?
3) His parking receipt is for 7 days but the trip was for 2 days. Why the extra 5 days?
4) He purchased a tripod. Has he returned it yet?
5) Can he identify the persons (by full name and company) who joined him for meals and entertainment and the detailed business purpose for the expense?

Finally, you have referenced a February expense report. No one recalls receiving such an expense report so please submit it to me.

AAC is under no obligation to pay Mr. Brittingham for the alleged 80 hours of accrued but unused vacation pay. Mr. Brittingham took vacations and received vacation pay during the year. In addition, Mr. Brittingham's employment was terminated on December 21, but AAC paid him for the remainder of the year even though it had no obligation to do so under Mr. Brittingham's employment agreement. Thus, by our calculations, Mr. Brittingham was actually overpaid and we reject your client's demand for vacation pay.

Your letter requests that we produce several employment-related documents for Mr. Brittingham, including a term sheet, an acknowledgement form, an amended employment agreement and his original employment agreement. Your client should have copies of these documents. If he lost them, please let me know and we will provide him with copies.

You also requested that we provide you with certain firearm inventory records for both Mr. Brittingham and Random Ventures as maintained in the Silent Island program. The Gun Control Act of 1968 ("GCA") and its implementing regulations at 27 C.F.R. Parts 478 and 479 require Random Ventures to maintain certain firearms acquisition and disposition records at its FFL licensed premises. To the extent AAC has reasonable access to such records in electronic and/or paper format, AAC will provide them to you.

Additionally, pursuant to Section 11 of the October 2, 2009 Asset Purchase Agreement (the "APA"), AAC will also exercise its right to retain a copy of any and all such records in connection with the Silent Island program it provides to you or dispose of such records as its sees fit. AAC will address the paper and electronic conveyances on an expeditious schedule so that Random Ventures/Mr. Brittingham can have the required paper or electronic records in its possession as required by 27 C.F.R. Parts 478 and 479. However, at this time, we do not know how long it will take to copy the paper records; thus, we will advise under separate cover when the copies have been made. AAC will provide invoices for costs associated with the copying of same to you for forwarding to Mr. Brittingham and/or Random Ventures.

Moreover, AAC has already provided some records pertaining to Random Ventures/Mr. Brittingham to your client, including all paper NFA firearm records, but AAC did not copy these records before sending them to your client. Thus, AAC reserves the right to seek or compel

March 22, 2012
Page 3

production of these documents in the future. By retaining any copies, as authorized by the APA, of Random Ventures/Mr. Brittingham firearms records, AAC does not assume, for any purpose or reason, successor recordkeeping liability under 27 C.F.R. § 478.127.

With regard to your assertion that Mr. Brittingham has changed the name of his business to Random Ventures, LLC, that appears not to be the case. Enclosed is a copy of an FFL clearly demonstrating that as of March 20, 2012, Mr. Brittingham has not changed the name on his FFL in the form of an amended FFL. The enclosure contains a new business address, but no name change. Additionally, the ATF FFL EZ check system confirms that Mr. Brittingham continues to use AAC's name in violation of the APA.

Please confirm the address of the amended FFL so that the parties to the APA can continue to perform under that agreement, especially with respect to undertaking the process of obtaining the transfer of the Post-86 Sales Sample machineguns. This process will require AAC to obtain the needed law enforcement demonstration request letters and Random Ventures/Mr. Brittingham to execute and submit the required ATF Form 3 transfer forms. The anticipated time frame for this process will be a minimum of six months.

We have confirmed that the six firearms listed in your letter of February 13 (four Ti-Fighter silencers (TF-0001, TF-0003, TF-0005, TF-0009) and the two Ruger .22 handguns (220-69118 and 223-91531)) are listed on the APA Excluded Assets and belong to Mr. Brittingham. These six firearms are currently stored in a locked storage cage at AAC premises, to which only Mr. Brittingham and you have access. With regard to these six firearms, and the remainder of Mr. Brittingham's firearm assets that were previously addressed (i.e. 1 pistol with an attached silencer, 1 AOW, 1 submachine gun and two barreled rifle actions, all belonging to Mr. Brittingham), please advise when Mr. Brittingham will be able to remove these assets from AAC's facility.

Recently, we were advised that Brittingham gave five additional silencers to Hunter Terhune which, like the other silencers, should have been, but were not, transferred to AAC after the APA was executed. These silencers are now being stored in the same locked storage cage and should also be transferred to AAC through an ATF Form 3. Please also advise when Mr. Brittingham will be able to submit the required ATF Form 3 transfer form(s) for the remaining 510 NFA firearms that AAC purchased so that AAC will be able to take lawful possession of these assets. For your reference, I enclose a revised serial number list detailing the foregoing firearms stored in separate, locked cages at AAC for which a Form 3 should be executed in favor of AAC, as well as the firearms list excluded from the APA. As I mentioned in our phone call on Friday, February 24, 2012, Mr. Brittingham is free to inspect these firearms at a mutually convenient time if he is genuinely concerned about their security and his exclusive dominion and control over these weapons.

We understand from your February 13 letter that Mr. Brittingham does not own the three (3) NFA firearms (February 3rd Letter, Ex. B). These have been disposed of in accordance with federal law.

Please let us know a time when Mr. Brittingham is available to return the tree stands and MGM targets to an AAC representative.

March 22, 2012
Page 4

Regarding the firearms and other items Mr. Brittingham claims not to possess, your vague assertion that the "remaining listed items should be in AAC's possession," is untrue. Your client purchased the items. He then sought reimbursement for them. With some limited exceptions, to the best of our knowledge, AAC never had physical possession of these items. Rather, it appears they were always kept by Mr. Brittingham, even after he obtained reimbursement for them. If Mr. Brittingham claims he returned the items, he needs to provide specific details about when he returned them and to whom, but we have no reason to believe that ever occurred. Accordingly, Mr. Brittingham needs to reimburse AAC for the guns he has retained, return the guns to AAC, or specifically identify the AAC employee to whom he transferred the guns. Set forth below are some additional details regarding these firearms:

a. Remington 51 .380 ACP: We have determined the correct serial number is PA24524, and it is correctly logged into the AAC bound book and is located in our vault. Accordingly, no further demand or action is made or requested with regard to this firearm.

b. Sig Sauer Pink Mosquito SN: F090636: this firearm was booked out to AAC from Bulls eye Indoor range. It was then booked out of AAC's bound book to Mr. Brittingham's personal FFL. As this firearm is properly not reflected in AAC's bound book records, Mr. Brittingham, not AAC, is responsible for filing an ATF Lost/Stolen Report for this firearm.

c. Remington Model 7 SN: 7845022: This rifle was not disposed of by the relevant FFL dealer to AAC and AAC does not possess it. As this firearm was never acquired by AAC, AAC it not responsible for filing an ATF Lost/Stolen Report for this firearm. If Mr. Brittingham purchased this firearm with his FFL and he has lost this weapon, he needs to file an ATF Lost/Stolen Report for this firearm

d. Smith & Wesson 22LC SN: DWC38: It was not disposed of by the relevant FFL dealer to AAC LLC and AAC, LLC does not possess it. As this firearm was never acquired by AAC, AAC is not responsible for filing an ATF Lost/Stolen Report for this firearm. If Mr. Brittingham purchased this firearm with his FFL and he has lost this weapon, he needs to file an ATF Lost/Stolen Report for this firearm

e. H&K P30 9mm. SN: 129-029618: This handgun was not disposed of by the relevant FFL dealer to AAC and AAC does not possess it. As this firearm was never acquired by AAC, AAC is not responsible for filing an ATF Lost/Stolen Report for this firearm. If Mr. Brittingham purchased this firearm with his FFL and he has lost this weapon, he needs to file an ATF Lost/Stolen Report for this firearm

f. Umarex HK416 .22cal SN: HK002271: This firearm was disposed of by the relevant FFL dealer to AAC, but this firearm is not present at the AAC facility. Nor did Mr. Brittingham cause it to be entered into the AAC, bound book. As Mr. Brittingham was the last person known to acquire this firearm from the dealer and possess this AAC firearm, Mr. Brittingham is responsible for returning it to AAC so that it can be properly entered into our required federal recordkeeping. AAC will file an ATF Lost/Stolen Report for it if not returned by March 26, 2012.

March 22, 2012
Page 5

To the extent Mr. Brittingham misplaced any of the foregoing weapons for which he also received reimbursements from AAC, he needs to remit to AAC the amount used to acquire such firearms.

As I previously mentioned, Mr. Brittingham comingled personal and AAC data on his personal computer and used his personal computer to conduct business affairs related to AAC. These actions were clear violations of AAC's Computer Network Acceptable Use Policy and created a significant risk that unauthorized individuals would be able to access confidential AAC data. AAC will not give Mr. Brittingham the business information on the computer, which includes hundreds of business emails. Nevertheless, my client remains willing to provide Mr. Brittingham with all personal data located on the computer. Please provide a list of such data, and it will be promptly returned. If Mr. Brittingham is having difficulty identifying the personal data based upon the file directory we provided, he could speak directly to the forensic computer expert to obtain his assistance in identifying relevant personal information.

Sincerely yours,

Dana L. Rust / anelth

Dana L. Rust

Enclosures

# MORRIS, MANNING & MARTIN, LLP
### ATTORNEYS AT LAW

April 24, 2012

R. Jason D'Cruz
404-504-7601
rjd@mmmlaw.com
www.mmmlaw.com

**VIA FIRST CLASS MAIL AND**
**VIA EMAIL (DRUST@MCGUIREWOODS.COM)**

Dana Rust
One James Center
901 East Cary Street
Richmond, Virginia  23219-4030

Re:   Kevin Brittingham/Advanced Armament Corp., LLC ("AAC")

Dear Dana:

This letter is in response to your letter dated March 22, 2012 (the "March Letter"). I also write to follow up on the items raised in my letters dated January 12, February 13, February 17, and February 24, 2012.

Regarding Mr. Brittingham's expense reports, please note that Mr. Brittingham has received from AAC reimbursements of about $900.00. We assume that these correspond with the two December 8, 2011 expense reports specified in your March Letter. However, Mr. Brittingham has received no further reimbursements and is still awaiting payment of the third December expense report. As to the January expense report, please explain why AAC needs the information specified in questions 1-5 on page 3 of the March Letter. While Mr. Brittingham is prepared to collect such information, we are unaware of any policy or contract provision which requires him to do so. Finally, the February expenses were attached to my February 13, 2012 letter to you. I reattach these expenses for your reference. Please ask your client to reimburse Mr. Brittingham promptly for all outstanding expense reports.

Mr. Brittingham maintains that he is owed for approximately 80 hours of outstanding unused vacation pay. Please specify the exact amounts, dates, and hours of vacation for which AAC allegedly reimbursed Mr. Brittingham for vacation time. AAC has failed to forward or reference the December 2011 spreadsheet that Ms. Thompson forwarded to AAC's controller each month which was mentioned in my February 13, 2012 letter. That spreadsheet quantifies the unused vacation time owed to Mr. Brittingham.

We also note that, despite repeated requests, AAC failed to provide signed copies of any documents it alleged Mr. Brittingham signed, including, but not limited to, Term Sheet, Acknowledgement, Employment Agreement and First Amended and Restated Employment Agreement. Accordingly, unless you provide fully executed documents before May 4, 2012, we must conclude that no executed versions of these documents exist.

Thank you for agreeing to provide Mr. Brittingham copies of the firearm inventory records for both Mr. Brittingham and Random Ventures, as maintained in the Silent Island Program. Note that we have also requested the modifications log for both inventories. Please promptly forward these inventories in both electronic and paper format, as promised. Regarding your refusal to destroy the Silent Island inventories after forwarding them to Mr. Brittingham, please identify the specific language of Section 11 of the October 2, 2009 Asset Purchase Agreement which entitles you to retain copies of these inventories. Finally, please



MORRIS, MANNING & MARTIN, LLP

Dana Rust

Page 2

identify the records "pertaining to Random Ventures/Mr. Brittingham" which you have allegedly already provided to Mr. Brittingham but failed to copy before doing so.

Regarding the change in Mr. Brittingham's business name to Random Ventures, LLC, Mr. Brittingham is amending the FFL so that it contains the new business name, as well as the new business address. This amendment should be complete by the May 7-8, 2012 mediation.

Regarding the firearms and silencers Mr. Brittingham purportedly must return to AAC, thank you for admitting that AAC erroneously included six (6) silencers on the spreadsheet forwarded with your February 3, 2012 letter (Ruger 220-69118, Ruger Mark II 223-91531, AAC TF-0001, AAC TF-0003, AAC TF-0005, and AAC TF-0009) and that these six (6) silencers indeed belong to Mr. Brittingham under the terms of the APA. We also note that seven (7) additional silencers have been added to the spreadsheet attached to your March Letter: (1) AAC Evolution E9-2443; (2) AAC M4-200 M9608; Pilot PLT2947; (3) Pilot PLT 3200; (4) Tirant TR-0483, listed twice; (5) Tirant TR0484, listed twice; (6) Tirant TR-0485, listed twice; and (7) Aviator WK-160). Please explain why these items have now been added to the list of silencers purportedly requiring transfer. Mr. Brittingham cannot execute a Form 3 transfer for the five (5) silencers purportedly given to Hunter Terhune or confirm that he gave those silencers to Mr. Terhune without more information regarding these silencers. Please identify them by make, manufacturer, and serial number. Finally, as to the five (5) guns for which Mr. Brittingham was allegedly reimbursed but has failed to return to AAC, Mr. Brittingham maintains these are in the possession of AAC. He does not recall the identity of each person to whom he returned the listed guns.

As advised in my February 17, 2012 letter, AAC should contact Mr. Brittingham directly to arrange a convenient time to pick up the tree stands and MGM targets.

Finally, we are still awaiting the return of all data taken from Mr. Brittingham's personal computer.

Sincerely,

R. Jason D'Cruz

cc: Kevin Brittingham
    Scott Allen

Enclosures

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RANDOM VENTURES, INC., KEVIN          :
BRITTINGHAM, and LYNSEY THOMPSON,     :
                                      :   ECF Case
                    Plaintiffs,       :
                                      :   No. 12-CV-6792 (KBF)
          - against -                 :
                                      :   SUPPLEMENTAL RESPONSE
ADVANCED ARMAMENT CORP., LLC, and     :   TO DEFENDANT ADVANCED
REMINGTON ARMS COMPANY, LLC,          :   ARMAMENT CORP., LLC'S
                                      :   FIRST SET OF
                    Defendants.       :   INTERROGATORIES TO
                                      :   PLAINTIFF KEVIN
                                      x   BRITTINGHAM

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Plaintiff Kevin Brittingham ("Brittingham"), by and through his undersigned counsel,

hereby serves his Supplemental Responses to Defendant Advanced Armament Corp., LLC's

First Set of Interrogatories (the "Interrogatories") to Plaintiff.

                        **GENERAL RESPONSES AND OBJECTIONS**

        A.      Brittingham objects to the Interrogatories to the extent they purport to impose

obligations beyond those permitted under the Federal Rules of Civil Procedure (the "Federal

Rules") and/or the Local Rules of the United States District Courts for the Southern and Eastern

Districts of New York (the Local Rules").

        B.      Brittingham objects to the Interrogatories as beyond the scope permitted by Local

Civil Rule 33.3 of the Local Rules.

        C.      Brittingham objects to the Interrogatories to the extent they seek responses,

information, and/or documents that are not in the possession, custody, or control of Brittingham

or seek to impose any obligation on Brittingham to provide responses or documents on behalf of


EXHIBIT
M

**Supplemental Response:**

Subject to and without waiving his General Objections or the specific objections set forth herein, Brittingham is producing the documents in his possession that are responsive to Request for Production No. 73 and refers Defendant to those documents.

**Interrogatory No. 21:**

Identify each and every item or thing for which Brittingham has sought or received reimbursement from or by AAC that he has removed from the premises of AAC from June 1, 2011 until the present.

**Response:**

Brittingham objects to this interrogatory on the grounds that it is beyond the scope of interrogatories permitted by Local Civil Rules 26.3(c)(3) and 33.3 of the Local Rules. Brittingham further objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and calls for discovery of information that is not relevant to the claims or defenses asserted in this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

**Supplemental Response:**

Subject to and without waiving his General Objections or the specific objections herein, Brittingham further responds as follows: AAC delivered Bass Pro tree stands and MGM targets to Brittingham's farm for AAC use during his employment. By letter from Brittingham's counsel dated February 17, 2012, Brittingham asked AAC to arrange a convenient time with him to pick up these items. Brittingham's counsel reiterated that AAC could pick up the tree stands and targets by letters to AAC's counsel dated February 24, 2012 and April 24, 2012; however, AAC has not picked up these items.

**Interrogatory No. 22:**

Identify each oral or written statement Brittingham has obtained from any person regarding the subject matter of this action, including the name and address of the person who gave the statement and the date the statement was obtained.

**Response:**

Brittingham objects to this interrogatory on the grounds that it is beyond the scope of interrogatories permitted by Local Civil Rules 26.3(c)(3) and 33.3 of the Local Rules. Brittingham further objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and calls for discovery of information that is not relevant to the claims or defenses asserted in this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

**Supplemental Response:**

Brittingham objects to this Interrogatory to the extent that it calls for information and/or documents that are protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving its General Objections and the specific objections herein, Brittingham states that no statements have been obtained from any person regarding the subject matter of this action.

This 31st day of January, 2013.

MORRIS, MANNING & MARTIN, LLP

*Leslie Nordin* by cbw with express permission

R. Jason D'Cruz
Admitted pro hac vice
rjd@mmmlaw.com
Leslie Nordin
Admitted pro hac vice
lnordin@mmmlaw.com

1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
(404) 233-7000
(404) 365-9532 (f)

O'HARE PARNAGIAN LLP

Robert A. O'Hare Jr.
Michael Zarocostas
Andrew C. Levitt
82 Wall Street, Suite 300
New York, NY 10005-3686
(212) 425-1401
(212) 425-1421 (f)
rohare@ohareparnagian.com
mzarocostas@ohareparnagian.com
alevitt@ohareparnagian.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing "Supplemental Response to Defendant Advanced Armament Corp., LLC's First Set of Interrogatories to Plaintiff Kevin Brittingham" was served via electronic mail to the following attorneys of record:

| | |
|---|---|
| Michael J. DiMattia | Dana L. Rust |
| Philip A. Goldstein | Edward M. Eakin, III |
| McGuire Woods LLP | McGuire Woods LLP |
| 1345 Avenue of the Americas, 7th Floor | 901 East Cary Street |
| New York, NY 10105 | Richmond, Virginia 23219 |

This 31st day of January, 2013.

By: _Leslie Nordin by CBW with appropriate permission_

R. Jason D'Cruz
Admitted pro hac vice
rjd@mmmlaw.com
Leslie Nordin
Admitted pro hac vice
lnordin@mmmlaw.com
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30226
Telephone: (404) 233-7000
Facsimile: (404) 365-9532
*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RANDOM VENTURES, INC., KEVIN     :
BRITTINGHAM, and LYNSEY THOMPSON,  :
                                 : ECF Case
             Plaintiffs,    :
                                 : No. 12-CV-6792 (KBF)
     - against -            :
                                 : SUPPLEMENTAL RESPONSE
ADVANCED ARMAMENT CORP., LLC, and  : TO DEFENDANT ADVANCED
REMINGTON ARMS COMPANY, LLC,    : ARMAMENT CORP., LLC'S
                                 : FIRST SET OF
            Defendants.   : INTERROGATORIES TO
                                 : PLAINTIFF KEVIN
                                x BRITTINGHAM

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Kevin Brittingham ("Brittingham"), by and through his undersigned counsel,

hereby serves his Supplemental Responses to Defendant Advanced Armament Corp., LLC's

First Set of Interrogatories (the "Interrogatories") to Plaintiff.

## GENERAL RESPONSES AND OBJECTIONS

      A.     Brittingham objects to the Interrogatories to the extent they purport to impose

obligations beyond those permitted under the Federal Rules of Civil Procedure (the "Federal

Rules") and/or the Local Rules of the United States District Courts for the Southern and Eastern

Districts of New York (the Local Rules").

      B.     Brittingham objects to the Interrogatories as beyond the scope permitted by Local

Civil Rule 33.3 of the Local Rules.

      C.     Brittingham objects to the Interrogatories to the extent they seek responses,

information, and/or documents that are not in the possession, custody, or control of Brittingham

or seek to impose any obligation on Brittingham to provide responses or documents on behalf of

currently does not have access to AAC's Bound Book for its Federal Firearms License(s).

**Interrogatory No. 21:**

Identify each and every item or thing for which Brittingham has sought or received reimbursement from or by AAC that he has removed from the premises of AAC from June 1, 2011 until the present.

**Response:**

Brittingham objects to this interrogatory on the grounds that it is beyond the scope of interrogatories permitted by Local Civil Rules 26.3(c)(3) and 33.3 of the Local Rules. Brittingham further objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and calls for discovery of information that is not relevant to the claims or defenses asserted in this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

**Supplemental Response:**

Subject to and without waiving the foregoing objections and the General Objections set forth herein, Mr. Brittingham states that he has produced correspondence with Dana Rust concerning the subject matter of this interrogatory.

**Interrogatory No.22:**

Identify each oral or written statement Brittingham has obtained from any person regarding the subject matter of this action, including the name and address of the person who gave the statement and the date the statement was obtained.

**Response:**

Brittingham objects to this interrogatory on the grounds that it is beyond the scope of interrogatories permitted by Local Civil Rules 26.3(c)(3) and 33.3 of the Local Rules and seeks the production of information that was prepared in anticipation of litigation and/or is protected by the attorney-client privilege, the joint defense privilege, and/or the work product doctrine.

7844921 v2

Brittingham further objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad, and calls for discovery of information that is not relevant to the claims or defenses asserted in this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

**Supplemental Response:**

Subject to and without waiving the foregoing objections and General Objections set forth herein, Mr. Brittingham states:  None.

This 20th day of February, 2013.

MORRIS, MANNING & MARTIN, LLP

 /s  R. Jason D'Cruz
R. Jason D'Cruz
Admitted pro hac vice September 14, 2012
rjd@mmmlaw.com
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
(404) 233-7000
(404) 365-9532 (f)

O'HARE PARNAGIAN LLP

Robert A. O'Hare Jr.
Michael Zarocostas
Andrew C. Levitt
82 Wall Street, Suite 300
New York, NY 10005-3686
(212) 425-1401
(212) 425-1421 (f)
rohare@ohareparnagian.com
mzarocostas@ohareparnagian.com
alevitt@ohareparnagian.com

*Attorneys for Plaintiffs*

7844921 v2

## VERIFICATION

I, Kevin Brittingham, have read the foregoing Supplemental Response to Defendant Advanced Armament Corp., LLC's First Set of Interrogatories to Plaintiff Kevin Brittingham and am familiar with its contents. I affirm that the answers are true to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____2/20/13_____.

_____
Kevin Brittingham

7844921 v2

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing "Supplemental Response to Defendant

Advanced Armament Corp., LLC's First Set of Interrogatories to Plaintiff Kevin Brittingham"

was served via electronic mail to the following attorneys of record:

| | |
|---|---|
| Michael J. DiMattia | Dana L. Rust |
| Philip A. Goldstein | Edward M. Eakin, III |
| McGuire Woods LLP | McGuire Woods LLP |
| 1345 Avenue of the Americas, 7th Floor | 901 East Cary Street |
| New York, NY 10105 | Richmond, Virginia 23219 |

This 20th day of February, 2013.

By:   /s R. Jason D'Cruz
　　　　R. Jason D'Cruz
　　　　Admitted pro hac vice September 14, 2012
　　　　rjd@mmmlaw.com
　　　　Morris, Manning & Martin, LLP
　　　　1600 Atlanta Financial Center
　　　　3343 Peachtree Road, N.E.
　　　　Atlanta, GA 30226
　　　　Telephone: (404) 233-7000
　　　　Facsimile: (404) 365-9532
　　　　*Attorney for Plaintiffs*

In The Matter Of:
**Random Ventures vs. Advanced Armament**

---

## Darin Stafford 30(b)(6)
*01/31/2013*

---

Tiffany Alley Reporting & Video
3348 Peachtree Road
Tower Place 200, Suite 700
Atlanta, GA 30326

770.343.9696
www.tiffanyalley.com



TIFFANYALLEY
REPORTING & VIDEO



EXHIBIT
N

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

RANDOM VENTURES, INC., KEVIN
BRITTINGHAM and LYNSEY THOMPSON,

               Plaintiffs,

- against -

ADVANCED ARMAMENT CORP, LLC, and
REMINGTON ARMS COMPANY, LLC,

              Defendants.

EFC Case
No. 12-CV-6792 (KBF)

30(b)(6) DEPOSITION of DARIN STAFFORD

January 31, 2013

9:00 a.m.

McGuire Woods, LLP

201 N. Tryon Street, Suite 3000

Charlotte, NC  28202

Lucy C. Rateau, CCR, RPR

1   the rest of the stuff.

2          MR. RUST:  On what issue?

3          MR. D'CRUZ:  On conversion.  We've got

4   reimbursement, but who would be the person --

5          MR. RUST:  We made a demand.  We haven't

6   been given it back.  What else do you need to know on

7   the property?

8          MR. D'CRUZ:  What evidence do they have

9   that he has it?

10          MR. RUST:  He's your guy.

11   BY MR. D'CRUZ:

12     Q.  What evidence does the company have that

13   Mr. Brittingham currently is in possession of the

14   five guns-- actually the six guns that you've just

15   identified for me?

16     A.  We have the reimbursement of the items

17   either directly or the company paid for and then

18   we -- as part of this exercise, we had individuals --

19   John Day had individuals at AAC to review the

20   facility to identify if these items were in

21   possession of the facility.  They were deemed not to

22   be and accordingly deemed to be in the possession of

23   Mr. Brittingham.

24     Q.  So the fact that AAC doesn't have these is

25   the company's evidence that Mr. Brittingham must have

1  them; is that correct?

2      A.  That, and the discussions with John Day who

3  had indicated that he knew the targets and the deer

4  stands and ammunition were at those locations, as

5  well as other -- as well as potentially other

6  property.

7      Q.  Let's go into that then.  As well as other

8  property, what did he tell you?

9      A.  The other property that was listed in the

10  counterclaim.

11      Q.  What did he tell you?  What other property?

12      A.  The items that are listed in the

13  counterclaim.

14      Q.  So you're the corporate representative now,

15  correct?

16      A.  Correct.

17      Q.  And Mr. Rust has now identified you as the

18  person who would have the evidence that Mr.

19  Brittingham, in fact, stole this equipment.  And what

20  you're telling me is that based on a conversation

21  with John Day where he said that the targets, the

22  stand, which have been tendered back on at least

23  three occasions to the company, are at the farm,

24  correct?

25      A.  Yes.

1          Q.  And he said as well as other property.

2     What did he mean by that?

3          A.  I said as well as other property.  I'm

4     alluding to the property in the counterclaim that

5     indicates --

6          Q.  I want to talk about your discussion with

7     Mr. Day which is forming the basis for the claim that

8     Mr. Brittingham has stolen at least $12,000 from the

9     company.

10              MR. RUST:  I'm going to object on the

11     grounds that you're mischaracterizing his testimony

12     completely.  He's testified Mr. Brittingham bought

13     the items, sought reimbursement for them, was

14     reimbursed for them.  We've made a demand.  He hasn't

15     returned it.  We've done an inventory.  We don't have

16     it.  That's it.

17     BY MR. D'CRUZ:

18          Q.  That's your whole case?

19          A.  Correct.

20          Q.  And that's based on something from Mr. Day

21     and you don't know whether Mr. Day has ever been to

22     the farm, correct?

23          A.  I am not aware.  I believe that he has, but

24     I am not -- based on the recollection of my

25     conversation six months ago as part of that, I can't

1    say definitively that I asked him specifically have

2    you set foot on the farm.

3         Q.   You're the corporate designee, right?

4         A.   Yes.

5         Q.   Do you know that Mr. Day has been to the

6    farm?

7         A.   I do not know.

8         Q.   Do you know whether Mr. Grovijohn has been

9    to the farm?

10        A.   I do not believe he has.

11        Q.   Do you know who Mr. Torbeck is?

12        A.   Ted Torbeck, yes.

13        Q.   Who is that?

14        A.   Former CEO of the Freedom Group.

15        Q.   Did you check with him on any of this

16   information?

17        A.   I did not.

18        Q.   Did you check with him about any of these

19   guns?

20        A.   I did not.

21        Q.   Did you check with his secretary about any

22   of these guns?

23        A.   I did not.

24        Q.   Are you familiar with Cerberus?

25        A.   I am.

1          Q.   Do you know that they have a shooting

2    facility?

3          A.   I am not aware that they have a shooting

4    facility.

5          Q.   Are you familiar that they own Tier 1

6    Group?

7          A.   I am familiar that they own Tier 1 Group.

8          Q.   Does Tier 1 Group have a shooting facility?

9          A.   I am not -- I do not know what another

10   portfolio company Cerberus owns or not.  I can't

11   testify to the property or the facility of Tier 1.

12   I'm not familiar with it.

13         Q.   But you didn't check with anyone at

14   Cerberus about any of these allegations, did you?

15              MR. RUST:  Let's go on the record, that I

16   haven't seen anything in any letters you've written

17   or pleadings you've filed that would suggest that Ted

18   Torbeck with Tier 1 Group knows where this property

19   is.  If you've got it, tell us about it and we'll go

20   look.  But I don't believe you ever told us anything

21   in any of the papers so far to suggest we should have

22   done that.

23   BY MR. D'CRUZ:

24         Q.   You can answer the question.

25         A.   I did not.

1      Q.  I now hand you what's been marked as

2   Exhibit 13 and ask you to look at page two.

3      A.  Uh-huh (affirmative).

4      Q.  On page two, where does it say that that

5   equipment was shipped to?

6      A.  To Tier 1 Group.

7      Q.  Why didn't you check with Tier 1 Group to

8   find out where that equipment was?

9      A.  Because in my discussion with Mr. Day I

10   believe these targets were items that were used as

11   part of a shooting demonstration for which I'm not

12   aware where that shooting demonstration was.

13   Apparently it was at Tier 1 Group.  And at the

14   conclusion of that, those items were returned both

15   to, I think, the Remington Defense Group, a portion

16   of them, and a portion of them to Kevin Brittingham.

17      Q.  How do you know that?

18      A.  Through my discussion with Mr. Day.

19      Q.  Did you review any e-mails concerning this

20   issue?

21      A.  I did not.

22      Q.  Did you look at any e-mails between

23   Mr. Brittingham, Mr. Day, and Mr. Knox Williams?

24      A.  I did not.

25      Q.  Why not?

1        A.  I didn't feel the need to.

2        Q.  They weren't at AAC, so they must be with

3    Mr. Brittingham, correct?

4            MR. RUST:  Objection; asked and answered.

5        A.  I guess I'm unclear as to why this is an

6    issue since -- now that you've provided the items

7    that indicate that he's willing to provide these back

8    to us, because they're at the farm.  I'm not sure I

9    understand the question.

10   BY MR. D'CRUZ:

11       Q.  I didn't say he's willing to provide all of

12   those.  There are some of those, right?

13       A.  Right.

14       Q.  The ones that he has in his possession he

15   has tendered.

16       A.  Correct.  He has agreed via these letters

17   to provide back.  And there is a portion -- as I

18   mentioned, there is a portion of these that were --

19   that he had in his possession and there were a

20   portion that Mr. Day had indicated that Remington

21   Defense had in their possession.  They had removed

22   them, I guess, after they had had this shooting

23   demonstration.

24       Q.  Let's look at the --

25           MR. RUST:  But our counterclaim doesn't

1   cover the ones that he just described.  It only

2   covers the ones in Mr. Brittingham's possession.

3   BY MR. D'CRUZ:

4       Q.  May I see the letters again?

5       A.  Yeah.

6       Q.  Let's go through this allegation that

7   Brittingham often kept equipment for which he had

8   obtained reimbursement and then used it for his

9   personal benefit.  Did you also learn that through

10  Mr. Day?

11      A.  Yes, and Mr. Grovijohn.

12      Q.  And Mr. Grovijohn.  Upon information and

13  belief, Mr. Brittingham continues to have custody

14  and/or control of this property.  Did you learn that

15  from Mr. Day and/or Mr. Grovijohn?

16      A.  Correct.

17      Q.  Other than the statements from Mr. Day and

18  Mr. Grovijohn, does the company have any other

19  evidence that Mr. Brittingham currently possesses the

20  property listed in paragraph one of the counterclaim?

21          MR. RUST:  Other than all the receipts and

22  documents that you just went through?  In addition to

23  that, is that what you're referring to, all the

24  backup materials?  I don't want you to

25  mischaracterize his testimony, because the first hour

1    of this deposition was covering --

2    BY MR. D'CRUZ:

3        Q.  Let's answer that question then.  Mr. Rust

4    raises a very good question.  Do these documents,

5    Exhibits 7 through 15, prove in your mind that Mr.

6    Brittingham has possession of that property?

7        A.   I believe that they prove that he was

8    provided reimbursement for them.  And I believe,

9    based on the work that we did in relation to

10   preparing this list, that they were not on-site at

11   AAC.  I think it's reasonable to believe that they

12   are in his possession.

13       Q.  Do you have any evidence that they are in

14   his possession?

15           MR. RUST:  You mean like eyewitness

16   testimony?

17           MR. D'CRUZ:  Correct.

18           MR. RUST:  People that have been in his

19   house since we've terminated his employment?

20       A.  I do not.

21   BY MR. D'CRUZ:

22       Q.  So other than it's reasonable to believe

23   that it may be in his possession, you've got no other

24   evidence, correct?

25       A.   Other than reviewing those documents and

Random Ventures vs. Advanced Armament Darin Stafford 30(b)(6)                     1/31/2013

1       the discussions for which I've had.

2              MR. D'CRUZ:   I think that's all I have.

3    Thank you.

4              (Signature reserved.)

5              (Deposition concluded at 10:30 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Phone: 804.775.1000
Fax: 804.775.1061
www.mcguirewoods.com

Edward M. Eakin, III
Direct: 804.775.1153

# McGuireWoods

jeakin@mcguirewoods.com
Direct Fax: 804.440.7730

February 4, 2013

**VIA OVERNIGHT DELIVERY AND EMAIL**

R. Jason D'Cruz, Esq.
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA  30326

Re:   *Random Ventures, Inc. et al., v. Advanced Armament Corp., LLC, et al.*
*Civil Action No. 12-CV-6792 (KBF)(GWG)*

Dear Jason:

Enclosed are AAC's Second Requests for Production to Lynsey Thompson and AAC's Second Requests for Production and First Request for Entry Onto Land or Other Property for Inspection to Kevin Brittingham and Random Ventures.

Very truly yours,

Edward M. Eakin, III

EME:db
Enclosures

cc:   Dana L. Rust, Esq.
Michael J. DiMattia, Esq.
Philip A. Goldstein, Esq.
Leslie J. Nordin, Esq.
Robert A. O'Hare, Jr., Esq.
Michael Zarocostas, Esq.
Andrew C. Levitt, Esq.

/45530432v1



Atlanta | Austin | Baltimore | Brussels | Charlotte | Charlottesville | Chicago | Houston | Jacksonville | London
Los Angeles | New York | Norfolk | Pittsburgh | Raleigh | Richmond | Tysons Corner | Washington, D.C. | Wilmington

Michael J. DiMattia (MJD-0473)
Philip A. Goldstein (PAG-0908)
McGuireWoods LLP
1345 Avenue of the Americas, 7th Floor
New York, NY 10105
(212) 548-2100
(212) 548-2150 (fax)
mdimattia@mcguirewoods.com
pagoldstein@mcguirewoods.com

Dana L. Rust (*pro hac vice*)
Edward M. Eakin, III (*pro hac vice*)
McGuireWoods LLP
901 East Cary Street
Richmond, Virginia 23219
(804) 775-1000
(804) 775-1061 (fax)
drust@mcguirewoods.com
jeakin@mcguirewoods.com

*Counsel for Defendants Advanced Armament Corp., LLC &
Remington Arms Company, LLC*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RANDOM VENTURES, INC., <br> KEVIN BRITTINGHAM, and <br> LYNSEY THOMPSON, <br><br>       Plaintiffs, <br><br><br> ADVANCED ARMAMENT CORP., LLC, and <br> REMINGTON ARMS COMPANY, LLC, <br><br>       Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | **ECF Case** <br><br> Case No. 12 CV 6792 (KBF)(GWG) |

### DEFENDANT ADVANCED ARMAMENT CORP., LLC'S
### SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS AND
### FIRST REQUEST FOR ENTRY ONTO LAND OR OTHER PROPERTY FOR
### INSPECTION OF OBJECTS OR OTHER PROPERTY TO PLAINTIFFS KEVIN
### BRITTINGHAM AND RANDOM VENTURES, INC.

The undersigned attorney for Defendant Advanced Armament Corp., LLC ("AAC"),

pursuant to Rule 34 of the Federal Rules of Civil Procedure, requests that Plaintiffs Kevin

Brittingham and Random Ventures, Inc. produce and make available for inspection and, where applicable, copying the documents and things requested herein and provide entry onto land or other real property for inspection, photograph, testing, or sampling of objects on the land or real property. AAC requests that Plaintiffs Kevin Brittingham and Random Ventures, Inc. provide a written response to these requests within thirty (30) days of service.

### INSTRUCTIONS

AAC incorporates by reference and restates the Instructions set forth in its First Requests for Production individually served on Kevin Brittingham and Random Ventures, Inc.

### DEFINITIONS

AAC incorporates by reference and restates the Definitions set forth in its First Requests for Production individually served on Kevin Brittingham and Random Ventures, Inc.

### DOCUMENTS OR THINGS TO BE PRODUCED

The foregoing Instructions and Definitions are incorporated by reference into each of the following requests.

1.      Any and all documents or photographs of Kevin Brittingham and/or a member of his family that contain an AAC suppressor or silencer or an AAC suppressor or silencer attached to a firearm.

### ENTRY ONTO LAND OR OTHER PROPERTY FOR INSPECTION

The foregoing Instructions and Definitions are incorporated by reference into each of the following requests.

1.      AAC requests entry onto any and all land or real property owned, rented, or occupied by Kevin Brittingham or Random Ventures for inspection, photograph, testing, and/or

sampling of such land or real property to determine if Brittingham possesses the items listed
below:

a) Remington 51 .380 ACP serial number L92660;

b) HK P30 9mm serial number 129-029618;

c) Sig Sauer Pink Mosquito (serial # F090636);

d) HK416 .223 (serial # HK002271);

e) Remington 7 (serial # 7845022);

f) S&W M&P 22LC (serial # DWC38);

g) Marketing Items for the Farm:  Crossbow, Hunting Sight, Ultra Rest, Arrow
Quiver, Bowbat, Buckle Strap, Rinehart Target, Buck Target, Mayhem Hunter
Camo Shaft;

h) Riflemaster Ladder Deer Stand;

i) Riflemaster Ladder Deer Stand;

j) Big Buddy 2 person Deer Stand;

k) R&D gun;

l) Cameras--2 Flip MinoHd, Canon Powershot, FLIP Slide HD;

m) Outdoor Heater and "Range Supplies";

n) Targets used at Silencer Shoot;

o) Nightscopes;

p) Ammunition used for R&D;

q) Remington Modular Sniper Rifle (MSR);

r) .300 AAC Blackout Low Visibility Assault Weapon; or

s) Any other property of AAC, Remington Arms Company, LLC, or The Freedom
Group, Inc., including, but not limited to firearms, silencers, or other weapons.

3

3.      The aforementioned inspections will occur at a time to be determined by the
parties.


Dated: February 4, 2013


                                        McGUIREWOODS LLP

                                        _____
                                        Michael J. DiMattia (MD-0473)
                                        Philip A. Goldstein (PAG-0908)
                                        McGuireWoods LLP
                                        1345 Avenue of the Americas, 7th Floor
                                        New York, New York 10105-0106
                                        mdimattia@mcguirewoods.com
                                        pagoldstein@mcguirewoods.com

                                        Dana L. Rust (VSB 28408) *Pro Hac Vice*
                                        Edward M. Eakin, III (VSB 70964) *Pro Hac Vice*
                                        McGuireWoods LLP
                                        901 East Cary Street
                                        Richmond, Virginia 23219
                                        (804) 775-1000
                                        (804) 775-1061 (fax)
                                        drust@mcguirewoods.com
                                        jeakin@mcguirewoods.com

                                        *Counsel for Defendants Advanced Armament
                                        Corp., LLC & Remington Arms Company, LLC*

4

## CERTIFICATE OF SERVICE

This is to certify that I have caused a true and correct copy of Defendant Advanced Armament Corp. LLC's Second Request for Production of Documents and Things and Entry onto Land or Other Property for Inspection of Objects on Land or Other Property to Plaintiffs Kevin Brittingham and Random Ventures, Inc. via email and by overnight delivery to:

Robert A. O'Hare, Jr., Esq.
Michael Zarocostas, Esq.
Andrew C. Levitt, Esq.
O'Hare Parnagian LLP
82 Wall Street, Suite 300
New York, NY 10005-3686

R. Jason D'Cruz, Esq. (*pro hac vice*)
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30326

Dated: February 4, 2013