# Exhibit 22

Execution Version

## PERSONAL GOODWILL ACQUISITION AGREEMENT

THIS PERSONAL GOODWILL ACQUISITION AGREEMENT (this "*Agreement*") is dated as of October 2, 2009 by and between AAC ACQUISITIONS, LLC, a Delaware limited liability company ("*Buyer*"), and KEVIN BRITTINGHAM ("*Seller*"). Buyer and Seller are referred to herein collectively as the "*Parties*."

### WITNESSETH:

WHEREAS, Advanced Armament Corp., a Georgia corporation ("*AAC*"), is engaged in the business of designing, manufacturing, marketing and selling silencers and other component parts of firearms for government and consumer markets (the "*Business*");

WHEREAS, Seller is the sole owner of AAC and the founder and principal operator of the Business;

WHEREAS, concurrently with the consummation of the transactions contemplated hereby, Buyer shall purchase substantially all of the assets of AAC, pursuant to that certain Asset Purchase Agreement, dated October 2, 2009 by and among Buyer, AAC, Seller and Remington Arms Company, Inc. (the "*Asset Purchase Agreement*");

WHEREAS, each capitalized term that is used, but not otherwise defined herein, shall have the meaning assigned to it in the Asset Purchase Agreement; and

WHEREAS, Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, the personal goodwill and other intangibles owned by Seller and used in connection with the Business.

NOW, THEREFORE, in consideration of the mutual premises herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Purchase and Sale.** Upon the terms and subject to the conditions of this Agreement, Buyer shall purchase from Seller, and Seller shall sell, transfer, assign and deliver to Buyer, the personal goodwill and other intangibles owned by Seller and used in connection with the Business (collectively, the "*Goodwill and Intangibles*"), free and clear of all Encumbrances.

2. **Purchase Price.** Subject to the terms and conditions of this Agreement, in consideration of the sale and assignment of the Goodwill and Intangibles by Seller to Buyer, Buyer agrees that on or prior to January 2, 2015 (such date, the "*Payment Date*"), provided that on that date Seller (i) is an employee of Buyer or an Affiliate of Buyer, (ii) is not an employee of Buyer or an Affiliate of Buyer by reason of death or permanent disability or (iii) is not an employee of Buyer or an Affiliate of Buyer as a result of termination of employment by Buyer or an Affiliate of Buyer other than for "cause" or termination of employment by Seller for "good reason", in each case as defined in the Employment Agreement to be entered into by Buyer and Seller pursuant to Section 5.5(e) of the Asset Purchase Agreement (each of the foregoing, an "*Employment Condition*"), Buyer shall pay to Seller four million dollars ($4,000,000) (the "*Purchase Price*") in cash by wire transfer to an account designated by Seller at least two (2) Business Days prior to the Payment Date; subject to Buyer's right of setoff set forth in Section 9.8 of the Asset Purchase Agreement.

3. **Closing.** The closing of the purchase and sale of the Goodwill and Intangibles (the "*Closing*") shall take place concurrently with the consummation of the transactions contemplated by the Asset Purchase Agreement.

4. **Representations and Warranties of Seller.** Seller hereby represents and warrants to Buyer that:

(a) The execution, delivery and performance by Seller of this Agreement and the consummation by Seller of the transactions contemplated hereby are within Seller's legal power and authority. This Agreement constitutes a valid and binding agreement of Seller, enforceable against Seller in accordance with its terms, except as the enforceability of this Agreement may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or affecting generally the enforcement of creditors' rights and except as the remedy of specific performance and other equitable relief may be unavailable in certain cases.

(b) The execution, delivery and performance by Seller of this Agreement and the consummation of the transactions contemplated hereby and thereby do not and will not (i) contravene or conflict with the Articles of Incorporation or Bylaws of AAC, (ii) contravene or conflict with or constitute a material violation of any provision of any law, regulation, judgment, injunction, order or decree binding upon or applicable to Seller, or (iii) result in the creation or imposition of any lien, claim or encumbrance on the Goodwill and Intangibles or any portion thereof. Without limiting the generality of the foregoing, Seller is not a party to any agreement or understanding that limits in any way the ability of (A) Seller to enter into this Agreement and perform their respective obligations hereunder or (B) Seller to sell the Goodwill and Intangibles to Buyer on the terms and subject to the conditions set forth herein.

(c) No consent, approval, waiver or other action by any person under any material contract, agreement, indenture, lease, instrument or other document to which Seller is a party or by which it is bound is required or necessary for the execution, delivery and performance by Seller of this Agreement or the consummation of the transactions contemplated hereby.

(d) Seller is the sole record and beneficial owner of all of the shares of the common stock, no par value per share, of AAC.

(e) Seller has good and marketable title to the Goodwill and Intangibles, free and clear of all Encumbrances.

(f) The representations and warranties contained in Articles II and III of the Asset Purchase Agreement are true and correct in all material respects.

5. **Representations and Warranties of Buyer.**

(a) Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware.

(b) The execution, delivery and performance by Buyer of this Agreement and the consummation by Buyer of the transactions contemplated hereby are within Buyer's legal power and authority and have been duly authorized by all necessary corporate action on the part of Buyer. This Agreement constitutes a valid and binding agreement of Buyer, enforceable against Buyer in accordance with its terms, except as the enforceability of this Agreement may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or affecting generally the enforcement of creditors'

rights and except as the remedy of specific performance and other equitable relief may be unavailable in certain cases.

(c) The execution, delivery and performance by Buyer of this Agreement and the consummation of the transactions contemplated hereby do not and will not (i) contravene or conflict with the Certificate of Incorporation or Bylaws of Buyer or (ii) contravene or conflict with or constitute a material violation of any provision of any law, regulation, judgment, injunction, order or decree binding upon or applicable to Buyer.

(d) No consent, approval, waiver or other action by any person under any material contract, agreement, indenture, lease, instrument or other document to which Buyer is a party or by which it is bound is required or necessary for the execution, delivery and performance by Buyer of this Agreement or the consummation of the transactions contemplated hereby.

(e) The representations and warranties contained in Article IV of the Asset Purchase Agreement are true and correct in all material respects.

6. **Conditions to Closing.**

(a) The obligations of Buyer and Seller to consummate the Closing are subject to the satisfaction of the following conditions:

(i) No provision of any applicable law or regulation and no judgment, injunction, order or decree shall prohibit the consummation of the Closing.

(ii) All actions by or in respect of or filings with any governmental body, agency, official or authority required to permit the consummation of the Closing shall have been obtained.

(iii) The transactions contemplated by the Asset Purchase Agreement shall be consummated simultaneously with the Closing hereunder.

(b) The obligation of Buyer to consummate the Closing is subject to the satisfaction of the following further conditions, each of which is for the benefit of Buyer and any one or more of which may be waived by Buyer:

(i) The representations and warranties of Seller contained in this Agreement shall have been true and correct in all material respects at and as of the date hereof, and they shall be true and correct in all material respects at and as of the Closing Date with the same force and effect as though made at and as of that time. Seller shall have performed and complied with all of its obligations required by this Agreement to be performed or complied with at or prior to the Closing Date.

(c) The obligation of Seller to consummate the Closing is subject to the satisfaction of the following further conditions, each of which is for the benefit of Seller and any one or more of which may be waived by Seller:

(i) The representations and warranties of Buyer contained in this Agreement shall have been true and correct in all material respects at and as of the date hereof, and they shall be true and correct in all material respects at and as of the Closing Date with the same force and effect as though made at and as of that time. Buyer shall have performed and complied with all of its obligations required by this Agreement to be performed or complied with at or prior to the Closing Date.

7. **Termination.** This Agreement shall be terminated automatically upon termination of the Asset Purchase Agreement.

8. **Indemnification.** Buyer and Seller each acknowledge that any inaccuracy in any of their respective representations and warranties contained in this Agreement and any default in the performance of their respective covenants or agreements contained in this Agreement shall be subject to the indemnification provisions contained in Article IX of the Asset Purchase Agreement.

9. **Tax and Audit Procedures.**

(a) Tax Treatment of Payments. It is the intention of the parties hereto, subject to the advice of their respective independent auditors, to treat any payment made under this Agreement as the purchase of personal goodwill by Buyer from Seller and Buyer and Seller shall each file all respective income and other tax returns consistent with such treatment for the tax year in which this Agreement is executed and Buyer and Seller shall report all tax consequences of the transactions contemplated by this Agreement in a manner consistent with such treatment, and not take any position inconsistent therewith upon examination of any tax return, in any refund claim, in any litigation or investigation or otherwise.

(b) Tax Cooperation. After the Closing Date, Seller and Buyer will cooperate with the preparation of all Tax Returns and will provide (or cause to be provided) any records and other information either party reasonably requests, and will provide access to, and the cooperation of its auditors. Buyer and Seller will further cooperate in connection with any Tax investigation, audit or other proceeding relating to the payments provided for under this Agreement (an "*Audit*").

(c) Participation and Settlement of an Audit. In the event of an Audit, Seller or Buyer, as applicable, may participate in any such proceeding with counsel of his or its choice and at his or its expense. Neither the Buyer nor the Seller may settle or compromise any such Audit without the written consent of the other party, such consent may not to be unreasonably withheld or delayed.

10. **Miscellaneous.**

(a) The parties hereto may amend, modify and supplement this Agreement in such manner as may be agreed upon by them in writing.

(b) The rights of a party under this Agreement shall not be assignable by such party without the written consent of the other parties hereto; provided, however, that (a) Buyer may assign this Agreement and its rights and obligations hereunder to an Affiliate of Buyer and (b) Seller may assign its rights to any payments hereunder to any Immediate Family Member or trust established for benefit of Seller or any Immediate Family Member of Seller. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

(c) This Agreement contains the entire agreement of the parties hereto with respect to the transfer of the Goodwill and Intangibles and the other transactions contemplated herein, and supersede all prior understandings and agreements of the parties with respect to the subject matter hereof.

(d) In this Agreement, unless a clear contrary intention appears:

(i) the singular number includes the plural number and vice versa;

          (ii)    reference to any person includes such person's successors and assigns but, if applicable, only if such successors and assigns are not prohibited by this Agreement, and reference to a person in a particular capacity excludes such person in any other capacity or individually;

          (iii)    reference to any gender includes each other gender;

          (iv)    reference to any agreement, document or instrument means such agreement, document or instrument as amended or modified and in effect from time to time in accordance with the terms thereof;

          (e)    This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together will constitute one and the same instrument.

          (f)    All notices, requests and other communications hereunder must be delivered in accordance with the terms of the Asset Purchase Agreement.

          (g)    This Agreement and any disputes hereunder shall be governed by and construed in accordance with the internal laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of Laws of any jurisdiction other than those of the State of New York.

          (h)    If a dispute arises between the parties relating to this Agreement other than as provided in Section 9, the procedures set forth in Article IX of the Asset Purchase Agreement shall be implemented before any party pursues other available remedies except that each party may seek injunctive relief from a court where appropriate in order to maintain the status quo while the applicable procedure is being followed.

          (i)    Nothing in this Agreement shall constitute or be deemed to constitute a partnership between the parties or constitute or be deemed to constitute any party hereto as agent of another party hereto, or its affiliates, for any purpose whatever, and no party hereto shall have authority or power to bind any other party, or its affiliates, or to contract in the name of or create a liability against any party hereto or its affiliates, in any way or for any purpose.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

**IN WITNESS WHEREOF,** the parties hereto here caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

"Seller" _____
Kevin Brittingham

"Buyer"
AAC ACQUISITIONS, LLC

By:_____
Name:
Title:

#4842-8736-6660

IN WITNESS WHEREOF, the parties hereto here caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

"Seller"

_____
Kevin Brittingham

"Buyer"
AAC ACQUISITIONS, LLC

By: _____
Name: Stephen P. Jackson, Jr.
Title: CFO