# Exhibit 88

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RANDOM VENTURES, INC., KEVIN   :
BRITTINGHAM, and LYNSEY THOMPSON, :
                :   ECF Case
        Plaintiffs,  :
                :   No. 12-CV-6792 (KBF)
   - against -     :
                :   **DECLARATION OF ETHAN**
ADVANCED ARMAMENT CORP., LLC, and :   **LESSARD**
REMINGTON ARMS COMPANY, LLC,  :
                :
        Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :
                x

1.

I hereby authorize this, my sworn Declaration, to be submitted in connection with a cause of action that Kevin Brittingham ("Brittingham"), Random Ventures, Inc., (formerly known as Advanced Armament Corp.; "Random-AAC"), and Lynsey Thompson (collectively, "Plaintiffs") filed against Advanced Armament Corp., LLC ("AAC") and Remington Arms Company, LLC ("Remington")(collectively, "Defendants") in the United States District Court for the Southern District of New York, Civil Action Number 12-CV-6792 (the "Civil Action").

2.

I am over twenty-one (21) years of age and am competent to testify to the matters contained herein. This Declaration is based upon my personal knowledge.

3.

I have no personal or professional interest in the outcome of the Civil Action. Brittingham has not offered me any money and/or favors in connection with the Civil Action.

4.

I am currently employed by Sig Sauer in Exeter, New Hampshire.

1

5.

Beginning in or around December 1, 2009, AAC employed me as its Research and Development ("R&D") Manager. In this position, I oversaw AAC's R&D Department.

6.

During my employment at AAC, the following employees worked in the R&D Department (in addition to myself): Eric Burt (Research Engineer); Michael Smith (Research Engineer); Robert Silvers (Director of R&D who worked off-site); Hunter Terhune (machinist); Tyler Crawford (machinist), and Wade Knowlton (machinist). I supervised all of these employees except for Mr. Silvers, who worked off-site.

7.

When I began my employment with AAC, the company maintained its operations in Norcross, Georgia. AAC did not segregate any of the firearms in the Norcross facility based upon whether they were owned by AAC, Random-AAC, or Brittingham, or based upon whether they were registered under the federal firearms license ("FFL") held by AAC, Random-AAC, or Brittingham.

8.

It was customary and common for employees in the R&D Department to use various types of firearms located at the Norcross facility in the performance of their duties. For example, R&D employees used firearms as reference examples when designing new products, to perform a wide variety of testing (including, but not limited to, performance testing, sound testing, accuracy testing, sound comparisons), and to perform demonstrations off-site. In addition, Mr. Smith completed models or drawings of certain firearms for use in publications or in the design of new products. Accordingly, these firearms were a valuable asset to the R&D Department's

ability to design and develop new products for the commercial and military markets and to fulfill AAC's military contracts.

9.

No one informed me which firearms were owned by AAC, or which firearms were still owned by Random-AAC or Brittingham.  Nor was I ever informed of which firearms were registered under which FFL.  The employees in the R&D Department just used the firearms we needed to perform our jobs.

10.

In or around July 2010, AAC moved its operations to a facility in Lawrenceville, Georgia (the "Move").

11.

During the Move, some firearms were physically moved to the vault at AAC's Lawrenceville facility.  Other firearms remained in the vault at the Norcross facility.

12.

I participated in moving firearms from Norcross to the Lawrenceville facility in or around July 2010.  I did not receive specific guidance as to what firearms should be moved to Lawrenceville and what firearms were staying in Norcross.

13.

It was my understanding that any AAC-manufactured firearms were either purchased by AAC in the acquisition of Random-AAC (the "Acquisition") or manufactured by AAC after the Acquisition, and, therefore, supposed to be moved to Lawrenceville.  To my knowledge, no one prepared an inventory of the firearms that were actually moved from the Norcross facility to Lawrenceville as part of the Move.

3

14.

During the course of the Move and following the Move, there was a lot of confusion among AAC employees as to which firearms were supposed to be at the Lawrenceville facility and which firearms were supposed to remain in Norcross.  There was also a lot of confusion among AAC employees as to which firearms had been transferred to AAC's Norcross FFL, which firearms had been transferred to AAC's Lawrenceville FFL, which firearms were supposed to be transferred to one of AAC's FFL but had not been, and which firearms were not included in the Acquisition.

15.

Following the Move, employees in the R&D Department continued to use various types of firearms to perform their duties as set forth in Paragraph 8 above.  If we needed a firearm for a project that we were working on and the firearm was located in Norcross, an R&D employee (generally, Mr. Burt or myself) would pick up the particular firearm at Norcross and bring it back to the Lawrenceville facility.  The firearms used by R&D employees were either stored in the R&D Department or the Lawrenceville vault.  They were not logged in and out of the Lawrenceville vault.

16.

In 2011, I personally brought the majority (approximately 75%) of the firearms used in the R&D Department from Norcross to the Lawrenceville facility.  Specifically, I brought 95-100% of the belt-fed machineguns used in the R&D Department from Norcross to Lawrenceville in 2011.  Mr. Burt brought approximately 20% of the firearms used in the R&D Department from Norcross to Lawrenceville in 2011.  Mr. Smith was less motivated to bring firearms over from Norcross to Lawrenceville for ongoing projects; however, I did observe him bring older

4

firearms to Lawrenceville for use in modeling and sketching.  Mr. Smith also brought firearms in to the Lawrenceville facility for ongoing projects.  These firearms were either kept in Norcross or at his home.

17.

Brittingham did not direct me to go to Norcross to pick up any firearms to use in R&D at Lawrenceville nor did I seek to obtain Brittingham's permission to do so.

18.

Employees of Remington and/or Freedom Group, Inc. ("FGI") – including Roger Mustian, Chad Parment, and Trevor Shaw – were aware that employees in the R&D Department were transporting all kinds of firearms from Norcross to Lawrenceville for R&D purposes.  On at least one occasion, I spoke to Mr. Mustian about the difficulty of having to transport machineguns back and forth from Norcross to Lawrenceville.  In 2011, I also spoke to Messrs. Mustian, Parment, and Shaw about bringing certain types of firearms from Norcross to Lawrenceville to fulfill certain military contracts we were working on.

19.

It was a very cumbersome and time consuming process to log a firearm in to AAC's Bound Book which was maintained in AAC's DBA system (the "Log-In Process").  First, a particular AAC employee needed to create a part number for the firearm.  Then, another AAC employee, William Hewitt, needed to assign a cost number to the firearm.  Finally, one of two employees authorized to complete acquisitions and dispositions in the DBA system (Cory Weisnicht and Michael Kojan) needed to enter a serial number into the DBA system against the part number just created.  The Log-In Process could take approximately 30 minutes for each firearm.  We were unable to log machine guns into the AAC Bound Book at all because AAC

5

did not have the proper ATF paperwork to do so.

20.

In the beginning of 2011, Mr. Hewitt was deployed to the National Guard in Afghanistan. For a period of time during Mr. Hewitt's absence, I did not even know how to complete the Log-In Process.

21.

I generally: (1) tried to keep machineguns in Lawrenceville for a short period of time (less than 24 hours) because we could not complete the Log-In Process for the machineguns, or (2) kept the firearm in Lawrenceville but chose not to log it into AAC's Bound Book.

22.

If someone walked around AAC's Lawrenceville facility on any given day in 2011, they could have found numerous firearms that employees in the R&D Department brought to the facility from Norcross and did not enter in to AAC's Lawrenceville Bound Book, including, but not limited to, firearms that I brought to Lawrenceville on that particular day and intended to return to Norcross at the end of the day, or firearms that I kept in Lawrenceville for more than one day.

23.

No one at AAC told me to log firearms that stayed in Lawrenceville from Norcross for more than 24 hours in to AAC's Lawrenceville Bound Book. No one ever told me that R&D employees were doing anything wrong by bringing firearms from Norcross to Lawrenceville to use in the performance of their work nor did we hide what we were doing. We thought that, as AAC employees, we were simply moving the firearms from one AAC location to another, and that AAC employees were always in possession of the firearms. No one at AAC assisted or

guided us with respect to any rules concerning the movement of firearms from Norcross to Lawrenceville, nor did we seek that guidance.  In 2011, Mr. Mustian was not at AAC's office more than one or two days at a time and then only rarely.  Mr. Mustian never reviewed the process with me for entering the Norcross firearms into the DBA system.  Thus, we continued to do what we needed to do to get our job done and no one gave us any problems about it.

24.

In February 2011, I attended a compliance training conducted by Mark Barnes.

25.

In the summer and fall of 2011, employees in the R&D Department were working long hours to complete demanding military contracts that required a significant amount of testing.  At one point, driving back and forth between Norcross and Lawrenceville became so time consuming that I stopped bringing some firearms, including machineguns, back to Norcross at the end of the day.  No one bothered me about this.

26.

During the fall of 2011, AAC's R&D Department worked on a variety of military contracts and commercial projects, including but not limited to:

(1)  the Family of Muzzle Brakes and Sound Suppressors military contract (the "FMBSS Contract") which required AAC to test every silencer manufactured on the machinegun on which it would be used;

(2)  a no-cost loan letter for the Army whereby the Army borrowed AAC's product to determine future contract specifications (the "Army Loan Letter");

(3)  a classified SOCOM contract for the Navy facility (the "Navy SOCOM Contract");

(4)  building firearms for preliminary trials of a classified solicitation from the Army to replace the MP5-SD (the "MP5-SD Replacement Solicitation") in August/September 2011;

7

(5)     the development of an integrally suppressed 0.22 pistol (the "Integral 0.22 Pistol Project");

(6)     the development of an integrally suppressed 0.22 rifle (the "Integral 0.22 Rifle Project");

(7)     exploring the development of a standard non-suppressed 9MM carry pistol (the "9MM Pistol Development").  As part of this project, I met with FGI executives for two days during which we reviewed 50-60 pistols, many of which I brought to Lawrenceville from the Norcross facility (the "9MM Pistol Development Meeting");

(8)     the development of a silencer for a 9MM sub-machinegun requested by Mike Haugen in International Sales for Remington Defense (the "9MM SMG Project"). This project was not complete when I left AAC in October 2011;

(9)     the development of a silencer to replace a customer's existing SureFire silencer (the "SR7 Project"); and

(10)    the modification of a Remington rifle to accept an AR-15 magazine (the "AR-15 Project").

The R&D Department used numerous firearms from Norcross to complete these and other projects and contracts.

27.

It was customary for the R&D Department to order firearms directly from manufacturers (such as Bushmaster, Marlin) to be sent to Lawrenceville for use in the performance of our duties, including testing and conducting demonstrations.  At one point, Remington sent a large number of firearms to AAC for use in a demonstration for FGI executives.

28.

During the summer of 2011, AAC hosted the "Silencer Shoot" event in Memphis.  The Silencer Shoot is a festival attended by silencer manufacturers, vendors, and commercial and military customers.  The event provides commercial and military customers an opportunity to see different types of products available in the marketplace and how they perform.  In summer 2011,

AAC brought numerous types of firearms to Silencer Shoot for displays and demonstrations, including firearms located in Norcross. Many of the people responsible for packing the firearms brought to Silencer Shoot left the event early. As a result, there was a lot of confusion as to where each firearm should return. R&D employees ended up packing all firearms in one truck and returning them to Lawrenceville, even though some of the firearms may have originated in Norcross.

29.

Exhibit A attached to this Declaration sets forth a list of firearms that AAC's R&D Department used to complete projects and contracts in 2011, including, but not limited to, the projects and contracts set forth in Paragraph 26 above.  Exhibit A also details the firearms I brought from Norcross to Lawrenceville, including firearms that I took back and forth between the Norcross and Lawrenceville and firearms that I left in Lawrenceville.  This list is not all-inclusive.

30.

I never met John Stevens.  No one – including Mr. Stevens, Mark Barnes, or Knox Williams – ever asked me any questions about the presence of any firearms at AAC's Lawrenceville facility.  No one ever asked me why certain firearms were at the facility, why I brought them there, or how long I kept them there.

31.

In 2011, I never saw Brittingham bring any of the firearms on the attached Exhibit A to AAC's Lawrenceville facility.

32.

On October 14, 2011, I voluntarily resigned from AAC because I relocated my family.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this _30_ th day of April, 2013.

_____

Ethan Lessard

EXHIBIT A

Capitalized terms used in this Exhibit A shall be defined as set forth in the Declaration of Ethan Lessard (the "Lessard Declaration") to which this Exhibit is attached and incorporated by reference.

|   | Serial Number | Mfr | Model | Type | Caliber | Comments |
|---|---|---|---|---|---|---|
| 1. | SAW003 | AAC | SAW | Machinegun | | I brought this firearm to the Lawrenceville facility for testing for the FMBSS Contract, the Navy SOCOM Contract, and the Army Loan Letter. |
| 2. | 157-000285 | | 40 MM Launcher | Launcher | 40MM | I brought this firearm to Remington's R&D Department in Elizabethtown, Kentucky on at least one occasion. This firearm also went to the Silencer Shoot event in Memphis in the summer of 2011. I believe this firearm was mistakenly brought back to the vault in Lawrenceville instead of being brought back to the Norcross facility after Silencer Shoot. |
| 3. | S3710 | Sterling | | Machinegun | 9MM | I brought this firearm to the Lawrenceville facility to use as a design reference for the 9MM SMG Project. |
| 4. | HT006563 | Colt | 9MM AR | Sub Machinegun | 9MM | I brought this firearm to the Lawrenceville facility to use as a prototype for the 9MM SMG Project. |
| 5. | S96727 | HK | MP5-SD | Machinegun | 9MM | I brought this firearm to the Lawrenceville facility on a regular basis because I and other R&D employees used this firearm for testing all the time (at least once per week, more than any other firearm), including, but not limited to, testing for the 9MM SMG Project and the MP5- |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | SD Replacement Solicitation. |
| 6. | K11145 | Knights Armament | SR25 | Rifle | .308 | I brought this firearm to the Lawrenceville facility for comparative testing for the Navy SOCOM Contract and the SR7 Project. |
| 7. | LMT33068 | LMT | | AR Lower | 5.56 | I frequently used this firearm for testing for almost all of the contracts and projects set forth in Paragraph 26 of the Lessard Declaration, including, but not limited to, the FMBSS Contract and the MP5-SD Replacement Solicitation. For this reason, this firearm was left in Lawrenceville. |
| 8. | A0106420 | Colt | | Carbine Machinegun | 5.56 | I brought this firearm to the Lawrenceville facility because I and other R&D employees frequently used this firearm for testing for almost all of the contracts and projects set forth in Paragraph 26 of the Lessard Declaration, including, but not limited to, the FMBSS Contract. For that reason, I did not bring this firearm back and forth from Norcross to Lawrenceville every day, but instead left it in Lawrenceville. |
| 9. | G6461605 | Remington | M24 | Rifle | 0.308 | I believe this firearm was brought to Lawrenceville as part of the Move and remained there. |
| 10. | G6385047 | Remington | | Rifle | 0.308 | I brought at least one example of this firearm to AAC's Lawrenceville facility to work on the AR-15 Project. |
| 11. | 225-93551 | Ruger | | Pistol (Mark II) | 0.22 | R&D employees would have used this firearm in Lawrenceville in the fall of 2011 for the Integral 0.22 Pistol Project. |
| 12. | L078778 | Bushmaster | | AR Lower | 5.56 | I frequently used this firearm for testing (on a |

2

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | daily basis) for many of the contracts and projects set forth in Paragraph 26 of the Lessard Declaration, including, but not limited to, the FMBSS Contract and the 9MM SMG Project. Therefore, a lot of these types of firearms were kept in the R&D Department in Lawrenceville. |
| 13. | 386197410 | FN | 5.7 | Pistol | | I brought this firearm to AAC's Lawrenceville facility to use at the 9MM Pistol Development Meeting. I would not have made a special trip to return this firearm to Norcross. I and other R&D employees also used this firearm frequently for testing multiple types of AAC silencers. |
| 14. | 126 048 | H&K | P9S | Pistol | 9MM | I brought this firearm to AAC's Lawrenceville facility to use at the 9MM Pistol Development Meeting. I would not have made a special trip to return this firearm to Norcross. R&D employees also used this firearm to test sound levels of a 9MM silencer without a recoil booster. It was very useful to test silencers because it works differently than other pistols. |
| 15. | 182242 | HI Standard | | Pistol | | I used this firearm at the 9MM Pistol Development Meeting. R&D employees also would have used this firearm in Lawrenceville for the Integral 0.22 Pistol Project. |
| 16. | FN93932 | FN Herstal | MAG 58 | Machinegun | | I brought this firearm to AAC's Lawrenceville facility on multiple occasions in the spring, summer, and fall of 2011 to use for testing for the FMBSS Contract, the Army Loan Letter, and the Navy SOCOM contract. R&D employees also used this firearm to conduct demonstrations. |
| 17. | 20190 | Knights Armament | | Rifle | 0.308 | I brought this firearm to the Lawrenceville facility in the summer and fall of 2011 for use in |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | the SR7 Project. |
| 18. | 164-002718 | H&K | | Machinegun | 4.6MM | I brought this firearm to the Lawrenceville facility to use to build prototypes for the MP5-SD Replacement Solicitation. |
| 19. | 88-002207 | H&K | 416 | Machinegun | | I brought this firearm to the Lawrenceville facility on multiple occasions in the summer and fall of 2011 for testing for almost all of the contracts and projects set forth in Paragraph 26 of the Lessard Declaration, including, but not limited to, the FMBSS Contract. |
| 20. | 740-10827 with AAC Rhino integral silencer (serial # 7744-007). | Ruger | | Rifle | 0.44 | This firearm would have been brought to the Lawrenceville facility as part of the Move because it has an AAC-manufactured integral silencer. (See Lessard Dec., ¶ 13). |
| 21. | AVR-1047 | AAC | | Silencer | 9MM | This firearm would have been brought to the Lawrenceville facility as part of the Move because it was manufactured by AAC. (See Lessard Dec., ¶ 13). In addition, R&D employees used this silencer for the 9MM SMG Project. |
| 22. | TS-05031 | Tactical Solutions | | Pistol | 0.22 | R&D employees would have used this firearm in Lawrenceville for testing for the Integral 0.22 Pistol Project. |
| 23. | R0251 | AAC | Ranger 2 | Silencer | 5.56 | This firearm would have been brought to the Lawrenceville facility as part of the Move because it was manufactured by AAC. (See Lessard Dec., ¶ 13). |

| 24. | 252-95554 and integral silencer (serial # 1022-074) | Ruger | | Rifle | 0.22 | R&D employees would have used this firearm in Lawrenceville for testing for the Integral 0.22 Rifle Project. |
| --- | --- | --- | --- | --- | --- | --- |
| 25. | 88-001692 | H&K | 416 | Machinegun | 5.56 | I brought this firearm to the Lawrenceville facility on multiple occasions in the summer and fall of 2011 for testing for almost all of the contracts and projects set forth in Paragraph 26 of the Lessard Declaration, including, but not limited to, the FMBSS Contract. |
| 26. | E01992 | Noveske | | AR Lower | 5.56 | Random-AAC received this firearm from Noveske on July 27, 2009 (approximately two months before the Acquisition) to be given away in a Silencer Shoot or Shot Show raffle, but the raffle winner never claimed it. I believe it was brought to the Lawrenceville facility as part of the Move. |
| 27. | NV2157 | FN | MK 46 | Machinegun | 5.56 | I brought this firearm to AAC's Lawrenceville facility on multiple occasions in the spring, summer, and fall of 2011 to use for testing for the FMBSS Contract, the Army Loan Letter, and the Navy SOCOM Contract. R&D employees also used this firearm to conduct demonstrations. |